# <u>EXHIBIT 3</u>

```
 1                      UNITED STATES BANKRUPTCY COURT
                        SOUTHERN DISTRICT OF NEW YORK
 2
                                      .   Case No. 05-17923 (ASH)
 3       IN RE:                       .
                                      .   (Jointly Administered)
 4
         DELTA AIR LINES, INC., et al, .  White Plains, New York
 5                                    .   Monday, May 21, 2007
                            Debtors.  .
 6       . . . . . . . . . . . . . . .

 7                    TRANSCRIPT OF TELEPHONE CONFERENCE
                      BEFORE THE HONORABLE ADLAI S. HARDIN
 8                      UNITED STATES BANKRUPTCY JUDGE

 9       TELEPHONIC APPEARANCES:

10       For the Debtors:             Michael E. Wiles, Esq.
                                      DEBEVOISE & PLIMPTON, LLP
11                                    919 Third Avenue
                                      New York, New York 10022
12
                                      Kristopher Hansen, Esq.
13                                    STROOCK & STROOCK & LAVAN, LLP
                                      180 Maiden Lane
14                                    New York, New York 10038

15       For the Official Committee
         of Unsecured Creditors:      David H. Botter, Esq.
16                                    Mitchell P. Hurley, Esq.
                                      AKIN, GUMP, STRAUSS, HAUER
17                                     & FELD, LLP
                                      590 Madison Avenue
18                                    New York, New York 10022

19

20       Audio Operator:              Electronically Recorded
                                      by Court Personnel
21
         Transcription Company:       Rand Transcript Service
22                                    80 Broad Street, Fifth Floor
                                      New York, New York 10004
23                                    (212) 504-2919
                                      www.randtranscript.com
24
         Proceedings recorded by electronic sound recording, transcript
25       produced by transcription service.
```

```
 1   TELEPHONIC APPEARANCES:  (Continued)

 2   For the DFO Partners:          Richard G. Smolev, Esq.
                                    KAYE SCHOLER, LLP
 3                                  425 Park Avenue
                                    New York, New York 10022
 4
     For Northwestern Mutual,
 5   et al:                         Lisa Hill Fenning, Esq.
                                    DEWEY BALLANTINE, LLP
 6                                  333 South Grand Avenue
                                    Suite 2600
 7                                  Los Angeles, California 90071

 8   For Wilmington Trust
     Company and Cargill:           Mark M. Elliott, Esq.
 9                                  BINGHAM MC CUTCHEN, LLP
                                    399 Park Avenue
10                                  New York, New York 10022

11   For Strategic Value
     Partners:                      Michael J. Edelman, Esq.
12                                  VEDDER, PRICE, KAUFMAN
                                     & KAMMHOLZ, P.C.
13                                  805 Third Avenue
                                    New York, New York 10022
14
                                    Jonathan H. Bogaard, Esq.
15                                  VEDDER, PRICE, KAUFMAN
                                     & KAMMHOLZ, P.C.
16                                  222 North LaSalle Street
                                    Chicago, Illinois 60601
17
     For Bank of New York
18   as Indenture Trustee:          Leo T. Crowley, Esq.
                                    Eric Fishman, Esq.
19                                  Margot P. Erlich, Esq.
                                    PILLSBURY, WINTHROP, SHAW
20                                   & PITTMAN, LLP
                                    1540 Broadway
21                                  New York, New York 10036

22   For Verizon Capital, et al:    Peter S. Partee, Esq.
                                    HUNTON & WILLIAMS, LLP
23                                  200 Park Avenue
                                    New York, New York 10166
24

25
```

```
 1   TELEPHONIC APPEARANCES:   (Continued)

 2   For PNC Leasing, LLC:        Claudia A. Springer, Esq.
                                  REED SMITH, LLP
 3                                2500 One Liberty Place
                                  1650 Market Street
 4                                Philadelphia, Pennsylvania 19103

 5                                Kurt F. Gwynne, Esq.
                                  REED SMITH, LLP
 6                                1201 Market Street
                                  Suite 1500
 7                                Wilmington, Delaware 19801

 8   For BNY:                     David A. Rosenzweig, Esq.
                                  FULBRIGHT & JAWORSKI, LLP
 9                                666 Fifth Avenue
                                  New York, New York 10103
10
     For ALF5, LLC:              Jason M. Torf, Esq.
11                               SCHIFF HARDIN, LLP
                                 6600 Sears Tower
12                               Chicago, Illinois 60606

13   For Fifth Third Bank:        Amish R. Doshi, Esq.
                                  PITNEY HARDIN, LLP
14                                7 Times Square
                                  New York, New York 10036
15
     For Marriott International:  Thomas R. Califano, Esq.
16                                Vincent J. Roldan, Esq.
                                  DLA PIPER
17                                1251 Avenue of the Americas
                                  New York, New York 10020
18
     For DaimlerChrysler:        Jeffrey S. Margolin, Esq.
19                               HUGHES, HUBBARD & REED, LLP
                                 One Battery Park Plaza
20                               New York, New York 10004

21   For Trilogy Entities:       Richard Kanowitz, Esq.
                                 COOLEY, GODWARD, KRONISH, LLP
22                               The Grace Building
                                 1114 Avenue of the Americas
23                               New York, New York 10036

24

25
```

4

1     (Proceedings commence at 4:51 p.m.)

2     (Call to order of the Court.)

3          THE COURT:  Okay.  Do I have a sheet on this?  Okay.

4  Who's on with regard to Delta?

5          MR. WILES:  Your Honor, this is Michael Wiles, from

6  Debevoise & Plimpton, on behalf of Delta.

7          THE COURT:  Okay.

8          MR. HANSEN:  Your Honor, it's Kristopher Hansen, with

9  Stroock & Stroock & Lavan, on behalf of Delta.

10          THE COURT:  Okay.

11          MR. BOTTER:  Good afternoon, Your Honor.  David Botter

12  and Mitchell Hurley, from Akin, Gump, Strauss, Hauer & Feld, on

13  behalf of the Post-Effective Date Committee.

14          THE COURT:  Okay.

15          MR. SMOLEV:  Your Honor, for DFO Partners, Richard

16  Smolev of Kaye Scholer.  We are in TIA/SLV Objection 1.

17          THE COURT:  Okay.

18          MS. FENNING:  Your Honor, Lisa Fenning of Dewey

19  Ballantine, on behalf of Northwestern Mutual Life.  We are the

20  claimants on the TIA Objection 2.

21          MR. ELLIOTT:  Your Honor, Mark Elliott and Mark Busey

22  (phonetic), for the Wilmington Trust Company and Cargill, SLV

23  plaintiffs.

24          THE COURT:  Okay.  And which objection?  One or two?

25          MR. ELLIOTT:  One, Your Honor.

1          THE COURT:  Okay.

2          MR. EDELMAN:  Good afternoon, Your Honor.  This is

3  Michael Edelman, along with my partner, John Bogaard, from

4  Vedder Price.  We're here for Strategic Value Partners on TIA

5  SLV No. 1, and Bank of America, on TIA SLV No. 2.

6          THE COURT:  Okay.

7          MR. CROWLEY:  Your Honor, Leo Crowley, Eric Fishman

8  and Margot Erlich, from Pillsbury, Winthrop, Shaw & Pittman,

9  for the Bank of New York, as Indenture Trustee, and we're here

10 on two of the aircraft and Objection No. 2.

11         THE COURT:  Okay.  Is that everybody?

12         MS. SPRINGER:  No, Your Honor.  This is Claudia

13 Springer, and with me is my partner, Kurt Gwynne.  We're on for

14 PNC Leasing.  We filed an administrative brief in the case.

15         THE COURT:  Okay.

16         MR. PARTEE:  And, Your Honor, Peter Partee, from

17 Hunton & Williams, here on behalf of Verizon, owner

18 participants.  We're also involved in the three respective

19 objection (indiscernible).

20         MR. ROSENZWEIG:  Your Honor, it's David Rosenzweig of

21 Fulbright & Jaworski on behalf of BNY, as owner and

22 participant.  We also filed amicus papers on -- over the lease

23 objection.

24         MR. TORF:  Your Honor, this is Jason Torf, appearing

25 on behalf of ALF5, LLC, with respect to two tail numbers

1    indicated by Objection 5(d).  We came in late, and did not file

2    an amicus on one and two, but are obviously interested parties

3    here.

4           THE COURT:  All right.

5           MR. DOSHI:  Good afternoon, Your Honor.  Amish Doshi,

6    with Day Pitney (sic), on behalf of Fifth Third Bank and the

7    Fifth Third Leasing Company, Inc.  We're not part of one and

8    two, but we're a party in interest in the objection that's been

9    filed with respect to our claims in 5(f).

10          THE COURT:  Okay.

11          MR. CALIFANO:  And, Your Honor, Tom Califano and Vince

12   Roldan, from DLA Piper, on behalf of Marriott, who is also an

13   owner participant.

14          MR. MARGOLIN:  Your Honor, Jeffrey Margolin, from

15   Hughes, Hubbard & Reed, representing DaimlerChrysler, a party

16   in interest, and (indiscernible).

17          MR. KANOWITZ:  This is Richard Kanowitz, Your Honor,

18   on behalf of certain Trilogy entities.  We, likewise, represent

19   the owner participants in Objections 3 and 5.

20          THE COURT:  Okay.  Is that it?  Well, that's a fine

21   big group.

22          Mr. Wiles, why don't you start the conversation and

23   tell me where we are?

24          MR. WILES:  Thank you, Your Honor.

25          I got a call last week from your clerks, both from

1  Rosemary and from Melanie, asking if we thought it would be

2  useful to have a conference to discuss whether anything

3  remained to be done on Test Cases 1 and 2, with what we

4  anticipated.  I know a lot of people on the phone are more

5  interested in what we're going to do with all of the other

6  TIA/SLV objections that we have, and I don't anticipate trying

7  to address any of that today.  A telephone conference seems

8  like an unruly and disorderly way to do that.

9          I asked the Court -- the scheduling clerk this morning

10  if there was a date when we might be able to have such a

11  conference to discuss broader issues and scheduling of what

12  issues we're going to take up next and how we're going to do

13  all this, and tentatively, she's told me June 6th, so I will be

14  sending a notice out to that and back.

15          But I did want to take the Court up on the offers that

16  Rosemary and Melanie, I think, last week, to at least tell you

17  what the parties to Test Cases 1 and 2 thought as to whether

18  there was something left to be done on those particular

19  objections.

20          THE COURT:  Yes.  I was concerned that I hadn't at all

21  covered the waterfront, and I probably haven't, in my case, to

22  get out a decision that I thought covered the -- hopefully the

23  principal issues, but tell me if I've let you down.

24          MR. WILES:  You certainly haven't let us down,

25  although I would have preferred to see rulings in my favor

1  across the board, but on Test Case 1, which is the one that I

2  speak for Delta on, there is an issue that I don't think you

3  needed to reach in light of what you ruled, since you ruled, I

4  guess, for the objectors.  But it was the issue of if there had

5  been a TIA claim, would the SLV claim have had to be reduced,

6  and I think, on Test Case 2, I have a conflict, so I have to

7  defer to Mr. Hansen to discuss the extent to which that issue

8  remains open on Test Case 2.

9        THE COURT:  In other words, the issue is -- let me

10  just see if I understand it.  In a situation where there had

11  been a TIA claim, for some reason, that did not trigger an SLV

12  claim, and the TIA claim had been paid, would that then reduce

13  the amount of the SLV claim pro tanto?  Is that the issue?

14        MR. WILES:  Yes.  I think I would put it slightly

15  differently.  We have TIA claims and SLV claims, so the issue

16  is -- I think I'll let Mr. Hansen speak further.  But to the

17  extent that you've ruled that the TIA claim isn't wiped out,

18  the other half of the issue is that the SLV claim needs to be

19  adjusted.

20        MR. HANSEN:  That's right, Your Honor.  It's Kris

21  Hansen at Stroock.  And with respect to Test Case 2, you have

22  (indiscernible) with respect to Tail No. 182DN, which was one

23  of the Bingham termsheet claims, and with respect to that

24  ruling, you had found that our objection, Delta's objection to

25  the TIA claim there was overruled.  And so, in that instance,

1   if there was a claim on behalf of the TIA that survived, that

2   SLV would have to be adjusted to the extent there was going to

3   be a payment with respect to the TIA.

4          MR. EDELMAN:  Your Honor, this is Michael Edelman from

5   Vedder Price.

6          I actually think that you have reached that ruling.

7   In your decision, you held that based upon the undisputed facts

8   of the case, the SLV readjustment provision of the

9   participation agreement is not applicable.  I think that's at

10  twelve.  And I think that reading closely your decision, you

11  have -- or you reason that because prior to the bankruptcy, the

12  owner/participant did not demand payment under the TIA, that --

13  I read that as the timing of the maturity of the SLV claim gave

14  rise to the fact that there was no ability for a later

15  readjustment, if a TIA claim, where (indiscernible).  So I

16  think you have made a ruling on the issue that the debtor

17  counsels have just stated.

18         THE COURT:  Okay.  I think you -- I think Mr. Edelman

19  is right, but I want to make sure that I really understand the

20  facts.  My understanding in Point C on the last page of my

21  decision concerning Tail No. 182DN was that there was no SLV

22  claim on that plane, one of what was it, eighty-nine planes

23  that were the subject of a settlement agreement, that resulted

24  in an agreement that Delta would allow a claim in an amount

25  calculated without any reference to SLV.  That was the

1    predicate of my ruling on 182DN, that there was no SLV claim

2    and no claim calculated or, quote, "determined by reference

3    to," stipulated loss value.

4          That being the case, construing the agreement, the

5    TIA, as written, there was no bar to a TIA claim, but there's

6    also no SLV claim.

7          MR. HANSEN:  Your Honor, it's Kris Hansen at Stroock

8    again.

9          We actually have a point that we wanted to raise to

10   Your Honor, as well with respect to Point B of your decision on

11   Tail 182DN.  The termsheet actually has a provision in it that

12   described a calculation of pre-petition damage

13   claims/unsupported claims.  In point one of that, it states

14   pretty clearly that in the case of an aircraft lease, and the

15   way you get to the claim is by starting from the stipulated law

16   and value, and it cites (indiscernible) in there a couple of

17   times, so I think that, you know, Delta's position with respect

18   to that is to say that the claims with respect to 182DN under

19   their termsheet are clearly calculated with respect to the

20   stipulated loss value.

21         MS. FENNING:  Your Honor --

22         THE COURT:  Okay.

23         MS. FENNING:  This is Lisa Fenning, for Northwestern

24   Mutual on Number 2.

25         Our argument was that the termsheet was a deal that

1    was contrary to the terms of the operative documents and,

2    therefore, it could not, as a matter of contract law or of

3    communal law, qualify as an SLV claim that's in the meaning of

4    the operative document, even if it mentioned the word SLV.

5            And by the way, I would note, Your Honor, that we were

6    quite concerned with the discussion of TIA Claim No. 2 because

7    you mentioned, in Footnote 3, that you did not have access to

8    the operative documents.  We, in fact, submitted all of the

9    relevant operative documents under seal.  You signed an order

10   allowing us to do so.  We submitted a batch of copies on the

11   open record, and we're quite concerned that perhaps you were

12   not aware that you actually had all the documents, because you

13   indicated that you couldn't refer to them or analyze them in

14   reaching the ruling.

15           THE COURT:  Okay.  Well, I said what I said in

16   Footnote 3, and I didn't have in front of me, as I was working

17   on this, those documents.  In any event --

18           MS. FENNING:  Well, they were submitted to the Court,

19   Your Honor, and you have a full set of the relevant documents,

20   and we had urged that you look at the documents as a whole, and

21   we're concerned that that may not have happened.

22           THE COURT:  Well, let me ask you this.  Is there

23   anything in my ruling that you think would be different, had I

24   looked at the documents?

25           MS. FENNING:  Yes, Your Honor.

1          THE COURT:  What?

2          MS. FENNING:  We believe that you failed to take into

3   account the fact of the survival language, it was not discussed

4   in your ruling at all, which required that it be paid in full,

5   and that the TIA agreement survived the termination of the

6   agreement.  We believe that you failed to fully consider the

7   effect on the interlocking provisions of how the payments are

8   to be made under the terms of the lease, and the fact that they

9   do call for payments in U.S. dollars, and I think it's just

10  important to read the document in substantial text, so that you

11  can see how they fit together and how they are negotiated, and

12  we're concerned the conclusions were being drawn without full

13  consideration of the documents, because you were not apparently

14  aware that you, in fact, have the full set of documents before

15  you.

16         THE COURT:  Let me ask this.  If you were to submit a

17  further piece by way of a motion to reconsider, and by the way,

18  I welcome motions to reconsider, I always reconsider when I get

19  a motion to reconsider, but if you were to file a piece of

20  paper saying, Judge, please reconsider, and when you do,

21  consider these passages from these documents, would you quote

22  anything other than you did in your -- in the submission that I

23  saw?

24         MS. FENNING:  Well, Your Honor, we're concerned that

25  you didn't read the submission that we made because we

13

1  repeatedly explained that we have submitted the operative

2  documents, and that raised concern when you did not mention

3  many of the provisions we cited to you in our brief, whether

4  you, in fact, had our brief in front of you at the time you

5  were working on the decision.

6          I'd be happy to do that, but I'm sure you can

7  appreciate my concern, because many subjects were not mentioned

8  here in your opinion.

9          THE COURT:  Yes.  Let me ask the question again,

10  because I think my question was unclear.

11          If you were to write a brief saying, Judge, please

12  reconsider, would you cite anything to me that you didn't cite

13  in the paper that I have already looked at?

14          MS. FENNING:  In general, or specifically with respect

15  to quotations out of the document?

16          THE COURT:  Would you quote anything from any of the

17  operative documents that you didn't quote already in the brief

18  that you submitted to the Court?

19          MS. FENNING:  Probably, yes.  We would have focused on

20  how some of the provisions link together with respect to the

21  calculations of the liquidated damages aspect of the TIA.

22  There would be a number of things.

23          We would also, more generally, have cited you to

24  Travelers Insurance Company, which is a Supreme Court case that

25  came down too late for us to include in our brief, given our

1  briefing deadline, which we think bears upon the -- directly

2  upon the issue of how the Bankruptcy Courts are supposed to

3  interpret documents and whether it's permissible to take into

4  account the fact that the interpretation that's occurring in

5  the Bankruptcy Court.  <u>Travelers</u>, in our view, stands for the

6  proposition and it reiterates prior case law, but clarifying

7  that the Court must interpret contracts as if they are being

8  interpreted, in effect, in state court or other state court

9  standards, rather than importing a concept of allowability or

10 other bankruptcy concepts into the actual interpretation of

11 what the contract is saying.

12        THE COURT:  Let me ask this.

13        MS. FENNING:  And we urge that that be considered, as

14 well, and we do intend to bring a motion for reconsideration on

15 that ground.

16        THE COURT:  Ms. Fenning, were you the party that made

17 the argument that I quoted at the top of Page 14, quote:

18        "The contention is that 'Section 6(c) of the TIA is

19        triggered only when the lessee actually pays all of

20        the SLV, or the termination value, or a payment

21        calculated with reference to either, in U.S.

22        Dollars.'"

23        MS. FENNING:  Yes.

24        THE COURT:  Okay.  well, I think I've paid rather

25 close attention to your brief and to the provisions that you

1 quoted.

2   Okay.  Going back to Mr. Hansen, I forget.  The

3 termsheet was part of the exhibits.  Is that correct?  Hello?

4   MR. SMOLEV:  Your Honor, this is Richard Smolev.

5   In the DFO exhibits that were the demonstrative aids,

6 a copy of the Bingham termsheet was included in that, with some

7 highlighted language.

8   THE COURT:  This is the termsheet that governed 182DN?

9   MR. SMOLEV:  Yes, sir.

10   THE COURT:  Okay.  Which of you is aggrieved by my

11 ruling under Paragraph C, as in Charlie, on Page 15?

12   MR. SMOLEV:  Page what, Your Honor?

13   THE COURT:  Fifteen.  The last page of my decision.

14   MR. SMOLEV:  Your Honor, the debtor and the committee

15 would be aggrieved by that ruling.

16   THE COURT:  Okay.

17   MR. HANSEN:  Yeah.  That's our position, Your Honor.

18 The debtor would be aggrieved by that ruling.

19   THE COURT:  Yeah.

20   MR. SMOLEV:  And, Your Honor, if I might, this is

21 Richard Smolev for DFO.  I don't know if this is the

22 appropriate time to talk about TIA/SLV Objection 1.

23   THE COURT:  No, no, it's not.  I'm trying to focus on

24 182.

25   MR. SMOLEV:  Okay.  No, no, no.  But I do have a

1  comment with respect to where some of my tails rank in relation

2  to 182, but I will stand down if you want me to discuss all of

3  the concerns about Objection 1 at the same time.

4          THE COURT:  I just want to know, what don't I have

5  right with regard to 182?  Where did I miss the boat?

6          MR. HANSEN:  Your Honor, it's Kris Hansen at Stroock

7  again.

8          I think that it was Exhibit 11, I believe, to our --

9  spoke to our objection, and if you look to Page -- you have to

10  go past the order that was previously entered with respect to

11  the termsheet.  If you look to the actual termsheets themselves

12  --

13          THE COURT:  Is that Exhibit 11?

14          MR. HANSEN:  That is Exhibit 11.  Yup.

15          THE COURT:  All right.

16          MR. HANSEN:  And as you go to Exhibit 1 of --

17          THE COURT:  Wait.  Wait a second.  Exhibit 11, Page

18  what?

19          MR. HANSEN:  Well, Your Honor, there's a number of

20  exhibits within Exhibit 11.  If you go to Page 2 of the

21  restructuring termsheet, which is pretty far in --

22          THE COURT:  Page 2 of the termsheet?

23          MR. HANSEN:  Page 2 of the termsheet.

24          THE COURT:  Okay.

25          MR. HANSEN:  You'll see, in bold text, on the bottom

1    left of that page, the language, calculation of pre-petition

2    damage claim/unsecured claim.

3              THE COURT:  Yeah.

4         MR. HANSEN:  And if you look down, what that says is

5    that the debtor, the plan parties (sic), and the committee

6    agree that the plan parties will have an unsecured, pre-

7    petition claim for the deficiency amount shall be calculated as

8    follows (indiscernible).

9              If you look at 1(a), it says:

10              "In the case an aircraft lease, the sum of (i)

11              stipulated loss value, calculated as of the filing

12              date, pursuant to the existing lease, as if a payment

13              of stipulated loss value, as the case may be, were to

14              be made on such date."

15              So it's our position that that's, as you read

16    (indiscernible) loss value again, but that triggers the payment

17    plan, and now, in reference to stipulated loss value.

18         THE COURT:  I see.  I'm sorry.  I'll have to look at

19    that again because I believe that must have gone over my head.

20    So just so I know where I'm looking, it's Exhibit 11, Page 2,

21    which is the termsheet, and it's Page 2.

22         MR. HANSEN:  That's right, Your Honor.  It's Page 2 of

23    the termsheet.  And in Exhibit 11, your order entering a

24    process by which the termsheets will be -- and the termsheet

25    modifications be undertaken, and how people will enter into

1   deals with those (indiscernible), it's listed as Exhibit 1

2   within Tab 11.

3           THE COURT:  What did he just say?

4           Say that again, will you please?

5           MR. HANSEN:  Sure, Your Honor.  My apologies.  The

6   exhibits are a little cumbersome.

7           Page 10 of 11 (sic) is Delta's reply to Objection No.

8   2.

9           THE COURT:  Oh, it's 10 of 11.

10          MR. HANSEN:  At Tab 11.

11          THE COURT:  Well, where in Tab 11 do you want me to

12  look?

13          MR. HANSEN:  There is an Exhibit 1 within Tab 11.

14          THE COURT:  Yeah?

15          MR. HANSEN:  See, there's a piece of, you know, a tab

16  sticking out that says "Exhibit 1."  When you flip to Exhibit

17  1, that's your order approving a modified termsheet and an

18  extension of the Section 1110 deadline with respect to the

19  eighty-eight aircraft.

20          THE COURT:  Is the termsheet attached to Exhibit 1

21  part of Tab 11?

22          MR. HANSEN:  Yes, it is.

23          THE COURT:  All right.  And it's -- I'll look at Page

24  2.  Well, I'll look at it.

25          MR. HANSEN:  Thank you, Your Honor.

1          MS. FENNING:  Your Honor, this is Lisa Fenning.

2          I would call your attention to, also, the copies of

3     the proofs of claim filed by the Bank of New York.  There were

4     submitted as part of our submission.  The proof of claim does

5     not state on its face that it was an SLV claim, and that was

6     the basis for our argument as far as the face of the document

7     is concerned, but the gist of our argument was that the

8     termsheet that -- the termsheet deals with, contrary to terms

9     of the contract, the underlying operative document, and that,

10    as you note in your opinion, Delta acknowledges that the amount

11    calculated under the termsheet formula is far lower than any

12    SLV amount would ever be calculated on a lease.

13         And so the termsheets themselves are contrary to the

14    terms of the operative documents and would be prohibited by the

15    terms of the operative documents, as we set forth in detail in

16    our response.  So that the mere fact that the termsheet has the

17    term SLV in it does not mean that the SLV calculated or

18    permitted or had contemplated, under the terms of the operative

19    document.

20         So we would urge that if you take a look at this issue

21    again, and we believe that you correctly decided it in the

22    first place, but if you look at this issue again, that you

23    consider whether the termsheets are, in fact, prohibited by the

24    operative documents themselves, and contrary to it.

25         THE COURT:  Why are they prohibited?

1          MS. FENNING:  As we set forth in our response, Delta

2     is not allowed to cut a deal with the debt on these claims to

3     keep the airplane, without the permission of the

4     owner/participant.  The idea, the way these deals are

5     structured is that at the end of the day, there will be an

6     objective calculation of the claim value by a foreclosure sale

7     or an assumption of the continued operation under the existing

8     lease, turning it back over to the owner/participant at the end

9     of the lease, but under no circumstances under the terms of the

10    operative documents is Delta allowed to cut a new deal, a new

11    lease with the debt directly, by which it keeps the plane.

12    Delta keeping the plane under a new lease and paying the debt

13    is a prohibited outcome under the terms of the contract, just

14    for the very purpose that it would entirely skew and upset the

15    negotiated economics of the deal and the terms that the parties

16    agreed on up front.

17          So it cannot be said that a deal that is contrary to

18    the provisions of the contract constitute the calculation of

19    SLV within the meaning of these documents.  So however they

20    want to -- whatever number they want to use to calculate their

21    claim, they can do that, but it doesn't make it qualify as an

22    SLV claim under the terms of the contract, and the number

23    doesn't bear the remotest relationship to what is on the SLV

24    table statement, you'll see attached to the lease when you look

25    at the operative documents.  The number bears no relationship

1    to the number that would be across the page from the date -- of

2    the petition date or whatever comparable date you use to try

3    and determine what the appropriate SLV amount --

4              THE COURT:  Ms. Fenning, that's very helpful.  May I

5    try to articulate what you just said, so you will know whether

6    I got it?

7              MS. FENNING:  Yes.

8              THE COURT:  Okay.

9              MS. FENNING:  Of course.

10             THE COURT:  You've just explained to me that the

11   termsheet deal is either prohibited by or totally inconsistent

12   with the remedies section, including this SLV provision,

13   because the SLV provision contemplates and provides that Delta

14   can't keep the plane, and has to basically sell the plane, as I

15   recall, and remit the proceeds to the lenders.  Is that part of

16   it?

17             MS. FENNING:  Yes.

18             THE COURT:  And --

19             MS. FENNING:  There are several alternatives.  That's

20   one of them.  Yes.

21             THE COURT:  Okay.  So that if you're going to rely on

22   an SLV provision, then the termsheet deal is simply not

23   consistent with that at all, and even if there's a reference to

24   SLV, it cannot be SLV because this central element of SLV

25   simply isn't present here, correct?

1          MS. FENNING:  Yes, Your Honor.  That's exactly what I

2    was trying to say.

3          THE COURT:  Okay.  That's extremely helpful.  I will

4    look back at the Tab 11, Exhibit 1, Page 2, and consider that

5    in light of what you've just articulated, and reconsider my

6    ruling on Page 15 on 182.

7          MS. FENNING:  Your Honor, our response walks you

8    through the pertinent terms of the various operative documents

9    that relate to this issue, and gives you a road map for that

10   analysis.

11         THE COURT:  That's right.  And what tab number is your

12   response?

13         MS. FENNING:  Your Honor, I don't have access to the

14   tab numbers.  The debtor will have to tell you where they put

15   our response.

16         MR. HANSEN:  Your Honor, it's Kris Hansen.

17         We'll find that tab for you.  Just two points I wanted

18   to address with you when you're --

19         THE COURT:  Okay.  I will find it.  I remember the

20   submission, Ms. Fenning, very well.

21         MS. FENNING:  All right.  Thank you, Your Honor.

22         THE COURT:  Thank you.  Go ahead, Mr. Hansen.

23         MR. HANSEN:  Just a few points I wanted to bring to

24   Your Honor's attention while you're considering the issues

25   regarding Point (p) (sic) and Ms. Fenning's argument.

1      You know, the first one is, again, we live and die by

2  the language that's in this contract, and the contract says

3  pays, particularly the loss value were an amount determined by

4  reference thereto.  So when we picked out that language, it's

5  extraordinarily important in this situation because again, when

6  you're entering into this termsheet, it is an amount that's

7  determined by reference to stipulated loss value; at least

8  that's the starting point.

9      The second point I just wanted to make, and again,

10 Your Honor, when you're looking at that, make sure that you

11 look at Section 15(g) of the lease, because it specifically

12 states that upon the occurrence of any event of default, the

13 lessor may exercise any right or remedy which may be available

14 under applicable law, made by appropriate actions to force the

15 terms, et cetera.

16      So it's our opinion that we do have the right, or

17 really, the indenture trustee has the right to do what it's

18 doing with respect to the termsheet, and entering into a new

19 agreement with us, and we do believe that those remedies are

20 available to the indenture trustee, especially in the situation

21 here, you know, where there is the defense, and then to default

22 (indiscernible) that has occurred and is continuing.

23      And then I guess the third point would just be that

24 obviously, with respect to your termsheet, parties are entering

25 into new restructuring agreements and new leases and

24

1  (indiscernible) documents (indiscernible) in furtherance of the

2  termsheet that Your Honor is expected to order, so we just

3  point those things out.

4         THE COURT:  Okay.

5         MS. FENNING:  And, Your Honor, if I may, just one

6  comment.

7         THE COURT:  Sure.

8         MS. FENNING:  We do not contend that the restructuring

9  agreements are somehow invalid contracts.  Rather, what we are

10 contending is that they're not consistent with the operative

11 documents and, therefore, they don't trigger the exclusion or

12 the dissent, if you will, against the TIA claim that says it's

13 being paid under the SLV.

14        I mean, if the debtors' argument were correct, the

15 letters should say the SLV in the agreement called for a

16 payment of $90 million.  We are paying 90 million, minus

17 89,999,000; and, therefore, that's a claim by reference -- and

18 not by reference to SLV.  That is not what these documents

19 contemplate.  They have formulas that have provisions for

20 certain offsets, and that is what my reference to the -- and we

21 would ask you to consider that as you look at this issue again.

22        THE COURT:  Yes.  I was going to say that I didn't

23 think that what Ms. Fenning was arguing was any different, was

24 that the termsheet was unlawful or unenforceable, but rather it

25 simply didn't fall within the trigger phrase language for an

1  exclusion under Section 6(c), and I -- and you've said it very

2  well.

3          All right.  I think I understand the issue.  I will go

4  back and look at that again, and get something out on that.

5  Okay?

6          MR. SMOLEV:  Your Honor, it's Richard Smolev.

7          Are we done with Objection 2?  Because if so, I'd like

8  to move back to Objection 1.

9          THE COURT:  Sure.

10          MR. SMOLEV:  Thank you.

11          I have three comments, the first of which is the

12  easiest comment you're going to get on this phone call, which

13  is my name was left off of the opinion.

14          THE COURT:  Oh, dear.  I apologize.

15          MR. SMOLEV:  That's okay.  So that's one.

16          My other comments are directed to a finding that you

17  made at Page 10.

18          THE COURT:  Okay.

19          MR. SMOLEV:  And specifically, it's the paragraph

20  below the quoted item.  At the end of that paragraph, you say

21  that the indenture trustee has demanded that Delta pay, and

22  Delta is required to pay SLV.  I have two things to say,

23  because that's not true.  That's no factually true.  Three of

24  my tails are on the Bingham termsheet.  So those three tails

25  are situated exactly as 182DN with respect to whether Delta is

1 | paying SLV.

2 |       Now, in fairness, those are three tails where the

3 | owner/participant interest was sold, and Wilmington Trust, in

4 | its objection, raised that as a second defense, and you might

5 | remember, we had a discussion when that point came up at the

6 | March 30th hearing, where both Mr. Wiles and Mr. Elliott agreed

7 | that that issue would be saved for another day.

8 |       So I don't want to comment on those three tails

9 | without letting you know what will be coming, either in a

10 | follow-on objection or, if you prefer, we can brief that in the

11 | context of this objection.  But three of my tails already are

12 | on the Bingham termsheet, so it's our position that just as

13 | 182DN is on the Bingham termsheet and Delta is not paying SLV,

14 | it's not paying SLV with respect to those three tails.

15 |       The second point deals with --

16 |       THE COURT:  Wait a second.

17 |       MR. SMOLEV:  I'm sorry.  Yes, sir?

18 |       THE COURT:  Let's just deal with that.

19 |       MR. SMOLEV:  Sure.

20 |       THE COURT:  You're right.  I did not attempt to focus,

21 | especially with regard to your client's situation, which I

22 | found very mystifying, on the specific arguments that might be

23 | made with regard to particular planes, because I thought that

24 | you had at least one or two planes that -- as to which the

25 | arguments you were making were applicable.  Maybe you don't.

1    But that's the premise of the decision that I made.

2           Now, to the extent that three of your planes are

3    similar to, or in the situation covered by the termsheet, that

4    is the same termsheet that covers 182DN, obviously I would

5    decide -- well, wait a second.  The language is different,

6    isn't it?  7(c) is different from 6(c).

7           MR. SMOLEV:  My language is required to pay.  There's

8    no "by reference to" (sic) in any of my tails.  So my point is

9    simply that they are --

10          THE COURT:  Well, I guess -- you know, I will

11   reconsider what I've written concerning 182DN and the

12   termsheet, but assuming that I don't change my view with regard

13   to 182DN and the termsheet, I would assume that all of you

14   would view that decision as applicable to any other tails that

15   are covered by the termsheet in the Bingham Group.  Is that

16   what it is?  The Bingham Group termsheet?

17          MR. SMOLEV:  Well, yes, sir, but if I might, it goes

18   beyond that, because after the March 30th argument, we received

19   notice from the debtor, and the debtor filed schedules.  Of its

20   plan schedules, 10.4(e), as in Edward, identified post-petition

21   restructuring agreements that the debtor has entered into.  All

22   eight of the DFO tails are on that schedule, and in all eight

23   instances, Delta is retaining the aircraft, just as it is under

24   the tails -- under the Bingham termsheet, and I believe is

25   paying some amount for lease protection damages that, as Ms.

1  Fenning said, bears no relationship to the contract definition

2  or construction of SLV.

3        With respect to those tails, Mr. Wiles and I have been

4  discussing access to those restructuring agreements because I

5  do not have them and Delta has agreed to make them available to

6  me, and I agreed to ask Your Honor to allow us to file them

7  under seal, so that my reconsideration would be along the

8  grounds, not only with respect to those three tails that are on

9  the Bingham termsheet, but with respect to all of my tails,

10  there are now agreements to which Delta is a party, under which

11  it's keeping the aircraft, paying a lesser amount than SLV, and

12  I would be asking Your Honor to make the ruling in the context

13  of facts which we just didn't have as of the March 30th

14  hearing.

15        THE COURT:  Well, two points.  One, you know, I don't

16  really do ceiling.  You do the ceiling.  Somebody else does the

17  ceiling.  All I care about is that I get the documents in full

18  text that I need to decide motions.  So get me documents in

19  full text that you want me to look at, and if you want to put a

20  big stamp on them that says, document filed under seal, fine,

21  but at least give me the document.  I'm not helped by having

22  exhibits in a binder that basically say, document withheld

23  under seal, or something like that.  That's point one.

24        MR. SMOLEV:  As soon as I get the documents, I will,

25  Your Honor.  Thank you.

1      THE COURT:  Point two, absolutely my decision is

2  addressed only to the points that I've addressed, and if you --

3  if it turns out that you have eight planes, tails, whatever you

4  call them, that fall under the rationale of what I wrote

5  concerning 182DN, why, you know, unless I'm persuaded to change

6  my views on 182DN, which I might be, or your facts are a little

7  different from the 182DN facts, yes, I would expect to rule in

8  the same way, and I would expect you to bring those to me if

9  it's still an issue that's open for litigation.  I realize that

10  everybody has the right to appeal from my rulings, but the

11  rulings that I make for 182DN are going to be the same rulings

12  I'm going to make on planes that are subject to the same

13  termsheet, and don't have some other facts that would dictate a

14  different result.

15      Now, as far as the fact that Section 7(c) is worded

16  differently from 6(c), I'm not sure that's going to make any

17  difference with regard to the 182DN termsheet situation, but

18  I'd be happy to hear argument or briefs on it.

19      But oh, by all means, bring those matters to my

20  attention if you feel that what I've written here doesn't cover

21  your situation.

22      MR. SMOLEV:  We will, Your Honor.  Thank you very

23  much.  That concludes the points for which DFO will be asking

24  for reconsideration with respect to Objection No. 1.

25      THE COURT:  Okay.  I really considered that I've dealt

1  only with three issues.  One is the so-called cosmic argument,

2  and I think that is going to cut across all of the lines.  My

3  view is that the contracts control, and that a generalized rule

4  of law is not going to be applied by me, anyway, to -- in a

5  manner that is inconsistent with what the contracts say.  So I

6  will be governed by the contracts.

7         As to -- the second point is that Section 7(c), I've

8  ruled on my views as to 7(c), and I've ruled on my views as to

9  Section 6(c), and I've given you my views with regard to the

10 termsheet airplanes, unless there are some facts with regard to

11 other planes that may be subject to the termsheet that I really

12 need to factor into my thinking.  And, of course, unless I

13 change my mind and realize that I've gone off the spoon on 182.

14 I don't think so, but I'm going to definitely look at it.

15        Anything else?

16    MS. FENNING:  Your Honor, this is Lisa Fenning.

17        May I inquire whether the notebooks that were provided

18 to you did include the operative -- unredacted, operative

19 documents for TIA 2?  As a creditor, we have no knowledge of

20 exactly what notebook was provided, and I want to verify that

21 before you look at these issues again, that you do, in fact,

22 have, at your fingertips, all of the operative documents that

23 were submitted for TIA 2.

24    THE COURT:  Let me put it this way.  I did have all

25 the operative documents annexed to one of the responses on

1   Objection 1.  I think I did, anyway.  I think I may not have

2   had the entirety of the documents on Objection 2, although

3   maybe I did, but I can tell you this.  I did focus very

4   carefully on the specific provisions that were brought to my

5   attention in the papers.

6          MS. FENNING:  The only question, Your Honor, is

7   whether we should submit another copy.  I do intend to file a

8   motion for reconsideration and address the Travelers issues

9   separately with respect to how it directs -- the contracts

10  ought to be interpreted and applied in bankruptcy, and will

11  submit an appropriate set of papers on that.

12         But I just wanted to make sure whether you wanted me

13  to submit another set of the operative documents in connection

14  with that, or whether you already had those available, as you

15  look at these issues again.

16         THE COURT:  Well, I probably don't.  It is the

17  practice, in my chambers, to discard motion papers because

18  otherwise, we would be moving around our office in little

19  runnels between tall stacks of documents that nobody could find

20  anymore.  We have too much paper on too many cases to keep

21  anything, really.  So I guess that answers your question.

22         MS. FENNING:  I'll be happy to resubmit the action.

23  Thank you, Your Honor.

24         THE COURT:  Okay.

25         MR. EDELMAN:  Your Honor, this is Mike Edelman from

1    Vedder Price.

2            THE COURT:  Yes, sir?

3            MR. EDELMAN:  Earlier in the conversation, I believe

4    that the debtors raised that they felt that your decision

5    hadn't addressed the SLV objections, and as I said earlier, I

6    thought your decision had, and I think your decision,

7    interspersed on 11 and 12, where you said that the -- there is

8    no basis for the objection to the SLV, that is undisputed, that

9    at the end -- I'm trying to look at the language, but -- so you

10   basically dismissed the objection to the SLV claim and I

11   believe the rationale was that because prior to the time on the

12   SLV claims arose, which was bankruptcy filing, there were -- no

13   J claim had been asserted.

14           THE COURT:  Yes.  I recall that.

15           MR. EDELMAN:  I just wanted to -- I don't think you

16   set that forth in your list of three items.

17           THE COURT:  Okay.  Well, I guess the bottom line is

18   that in terms of what was before me, objections to SLV claims

19   were overruled.  I believe that's the -- that was my

20   conclusion.

21           MR. EDELMAN:  Yes.

22           THE COURT:  All of the objections to SLV claims that

23   were before me have been overruled.

24           MR. WILES:  Your Honor, just a clarifying question.

25   And it's Michael Wiles.  I'm looking at Page 12 and I agree, on

1  the DFO claims, where you struck all of the TIA claims, you

2  said that Section 7(c) of the TIA is applicable, and Section

3  8(c) of the participation agreement is not.  I understood that

4  to mean that Section 8(c) of the participation agreement was

5  not applicable because there was no TIA claim to begin with.

6           THE COURT:  Right.

7           MR. WILES:  The question Mr. Hansen was raising about

8  the participation agreement adjustment provisions is if your

9  position stays the same on 182DN, where you did not strike the

10 TIA claim --

11          THE COURT:  Well --

12          MR. WILES:  -- then we don't have to get to that

13 issue.

14          THE COURT:  Is there an objection to -- I don't think

15 there's any objection by Delta to the claim based on the

16 termsheet in 182DN.  Is there?

17          MR. WILES:  You know, Your Honor, there's no

18 objection.  There is to the extent of the overlap.  There is on

19 the Section 8(c) of the participation agreement

20 (indiscernible).

21          THE COURT:  Well, okay.  I didn't understand that.  I

22 allowed -- I overruled the objection with regard to 182DN of

23 the TIA claim.  To the extent that that means that Delta is

24 objecting to its termsheet agreement, to the claim based on its

25 termsheet agreement on 182DN, I guess I would overrule that,

1   since my understanding is that it is, in fact, not an SLV

2   claim, it's a termsheet claim.

3           Now you have said that I'm wrong and that I have to --

4   do you want me to go back and look at Tab 11, Exhibit 1, Page

5   2, and look at the references to SLV, and I will do that.  But

6   if I -- if the bottom line is that I don't change my view with

7   regard to 182DN, then certainly, as it is implicit, and I can

8   make it explicit, that any objection to the claim that results

9   from Delta having agreed to and stipulated to a claim under a

10  termsheet, that's overruled.  I didn't understand that there

11  was any.

12          MR. BOTTER:  Your Honor, it's David Botter from Akin

13  Gump, and hopefully Mr. Hansen might have a reference, but in

14  the termsheet that you approved in February, which we all refer

15  to as the Bingham termsheet, both the debtors and committee

16  reserved all of their rights to object on the overlap grounds

17  identified by Mr. Wiles.  So while there may have been the

18  agreement as to how you would calculate the claim by reference

19  to SLV, the reservation was specific as to this particular

20  issue.

21          THE COURT:  Well, you know, you're going to have to

22  brief that.  If it's anything -- you're going to have to brief

23  the argument if the argument is based on anything other than

24  the cosmic argument, because I don't know what your argument

25  is, and I haven't -- I'm sorry, I just haven't focused on your

1    argument to the extent that your argument, on the Bingham

2    termsheet plane, 182DN, is anything other than a cosmic

3    argument.

4                UNIDENTIFIED:  Your Honor, what would be the course of

5    preference?  What's the most useful and helpful way we can

6    address all these issues for you?  Would you like additional

7    submissions on some of the points, all of the points?

8                THE COURT:  As I said before, I have never declined an

9    opportunity to reconsider or reargue, whatever you want to call

10   it.  I always grant motions to reargue.  I might not change the

11   outcome, but I will always hear the merits of anybody's request

12   to reconsider because the plain fact is, maybe I didn't get it

13   the first time around, and I'm grateful for an opportunity to

14   reconsider.

15               MR. SMOLEV:  Your Honor, it's Richard Smolev.  Might I

16   ask a scheduling question?

17               THE COURT:  Yes.

18               MR. SMOLEV:  Would the Court prefer to set a date by

19   which we all file whatever papers we want to file, and then a

20   simultaneous response date, or would you prefer that we do

21   separate motions for reconsideration?

22               THE COURT:  Gosh, you know, I would like you to do

23   whatever is easiest for you.  I really -- I don't care.

24               I don't know that it's going to be -- if you think --

25   unless I've really clearly overlooked something in your papers,

36

1    I have considered the arguments rather carefully that I have

2    addressed in -- from Page 13 on, with regard to number two.

3    Anybody is welcome to ask me to reconsider that.  I don't think

4    my view is going to change, but as I said, I'm happy to hear --

5    I'm happy to read anything you'd like to put before me very

6    concisely, and to the extent that you need me to look at

7    specific agreements in toto again, annex them, whether they're

8    sealed or not, okay?

9           MR. ELLIOTT:  Your Honor, if I could, this is Mark

10   Elliott with Bingham.  We represent certain SLV claimants on

11   Objection No. 1.

12          We will not be making a motion to reconsider because

13   we believe that, Your Honor, our Objection 1, both with respect

14   to the inclusion clause in the TIA, as well as your

15   interpretation of the relevant clause in the participation

16   agreement, got it exactly right, but we would request the

17   opportunity to respond to any reconsideration motion.

18          And in that regard, with respect to Mr. Smolev's

19   comments, regardless of whether or not Your Honor may change

20   his opinion or not with respect to 182, the language of Section

21   7(c), exclusion clause relevant to Objection No. 1, your

22   decision was based on that explicit language of SLV being

23   required to be paid, or required to pay, rather, which was

24   triggered by certain lease events, which event was the default

25   under the lease, which did occur here.

1          So regardless of how Your Honor sees the termsheet and

2     its interaction with Objection No. 2 and that language, there's

3     no question that under Objection No. 1, that inclusion clause

4     applies because of how Your Honor correctly interpreted that

5     lease and we, of course, would want the opportunity to respond

6     to any reconsideration of that.

7          THE COURT:  Okay.  Well, let me suggest this.  I'm

8     going to be away for about a week and a half.  Let me suggest

9     that on whatever schedule you like, but probably the sooner the

10    better, anybody that wishes for me to reconsider anything, or

11    that needs me to function on some issue that is within the

12    scope of Objections 1 or 2 that I didn't address, such as, for

13    example, the -- whatever it is, five tails or eight tails that

14    Mr. Smolev referred to, that he says are termsheet -- Bingham

15    termsheet planes.

16         Lay it out for me very tersely and concisely, and make

17    sure that you bring to my attention issues that I have not

18    addressed, that you need me to address.  Okay?

19         MR. SMOLEV:  Absolutely.  On behalf of DFO, thank you,

20    Your Honor.

21         MS. FENNING:  Your Honor, we will do so on behalf of

22    Northwestern Mutual, but let me just clarify something.  No

23    order has been entered on the objection, technically.  The

24    appeal here is not yet triggered, which means that while we can

25    reach agreement, we don't have to worry about a ten-day appeals

1    period, as I understand the situation.

2          THE COURT:  Oh, no.  I think that the appeal period --

3    let's wait until -- let's not have any order until you all are

4    persuaded that I'm either going to be right or wrong, but

5    you're not going to change my mind.

6          MS. FENNING:  I just was seeking clarification, to

7    make sure we all are on the same page.

8          THE COURT:  Oh, quite so.

9          UNIDENTIFIED:  I agree with that a hundred percent.

10          MR. CROWLEY:  Your Honor, it's Leo Crowley for the

11   Bank of New York, on Objection No. 2.

12          As to two of the aircraft on that objection, I haven't

13   heard anything  about a motion for reargument, but I'd like to

14   ask Your Honor to sever the objection as it relates to those

15   two aircraft.

16          MS. FENNING:  Mr. Crowley, this is Lisa Fenning.  I

17   indicated I do intend to file a motion to reconsider as to all

18   of the Northwestern Mutual claims.

19          MR. CROWLEY:  I didn't hear anything about anything,

20   other than N182, actually.

21          MS. FENNING:  I mean, I like N182.  I'm not asking for

22   reconsideration of that ruling.  I am seeking a reconsideration

23   on the other.

24          MR. CROWLEY:  Your Honor, in that case, I haven't

25   heard any basis for reconsideration.  I'm going to ask for a

1    final order on that because we've got tens of millions of

2    dollars of distributions on those tails being held up by Delta,

3    and a resolution of this issue.  I'm going to ask for a final

4    order on that.  I don't think I should have to wait for

5    completion of the motion or reargue.

6              MS. FENNING:  Your Honor, the issues are intertwined.

7    As I've indicated, I believe that Travelers Insurance, which

8    came down just days before our hearing and after we had an

9    opportunity to brief, should be considered, and that certain

10   parts of the opinion should be reconsidered in light of that

11   ruling.  And I would appreciate the opportunity to brief it

12   because it does have a very broad scope and effect.

13             MR. CROWLEY:  Your Honor, the reason I seek a final

14   order is my underlying bondholders are exposed to market risk

15   on Delta stock.

16             THE COURT:  Right.

17             MR. CROWLEY:  And if I have a final order, and if Ms.

18   Fenning wants to move for a stay pending appeal, and if she

19   wants to post on behalf of her clients, undertaking, securing

20   us against the risk of Delta stock declining in value, then

21   that's fine.

22             MS. FENNING:  Mr. Crowley, a motion for

23   reconsideration would say that, in any event, and it's my

24   intention to file it, so I don't know what would be served by

25   issuing a separate order prior to that, on that issue.

1    MR. BOTTER:  And, Your Honor, there is no integral

2   distribution case contemplated by the plan of reorganization

3   that you confirmed in this case, which was (indiscernible).

4    THE COURT:  Say that again.  I didn't get it.

5    MR. BOTTER:  Your Honor, this is the same issue that

6   we addressed on an emergency basis with respect to the Bingham

7   (indiscernible), and Your Honor said bring a motion, which was

8   (indiscernible) never brought -- it was brought with respect to

9   certain (indiscernible) of the plan contemplates interim

10  distribution.  The initial distribution was with respect to

11  claims that are allowed as of the effective date.  With respect

12  to claims that are just viewed -- just like any other claims

13  that are disputed, Mr. Crowley has disputed claims, they would

14  be resolved as they're resolved.  And ultimately, there are

15  interim distributions set up in the plan for six months from

16  now.  So it seems to me that there's plenty of time, and Mr.

17  Crowley would not have the opportunity to get any sort of

18  distribution, absent an amendment to the plan of

19  reorganization.

20    UNIDENTIFIED:  Well, we're going to move to have the

21  claim allowed, Your Honor, based on this ruling.  And as soon

22  as it were paid, it would be six months from now or six months

23  from the initial distribution date, which I believe was May 1st

24  or April 30th.

25    MR. CROWLEY:  But that's not the way we read the plan.

1          UNIDENTIFIED:  And that's also a subject that we have

2    a motion on file with the Court.

3          UNIDENTIFIED:  That's a whole different --

4          THE COURT:  Excuse me.  I'm sorry.  Who is it that

5    wants an immediate order?

6          MR. CROWLEY:  Leo Crowley, Your Honor, with respect to

7    tails and 803DE and 804DE.

8          THE COURT:  Okay.  I don't deal too well with tails.

9    Are you an SLV claim, or a TIA claim?

10         MR. CROWLEY:  SLV claim, Objection No. 2.  It's two

11   out of three aircraft on Objection No. 2.  It's an SLV claim.

12         THE COURT:  It's an SLV claim.

13         MR. CROWLEY:  Right.

14         THE COURT:  Who objects to the outcome on the SLV

15   claim?  Nobody.

16         MS. FENNING:  Your Honor --

17         THE COURT:  I mean other than the debtor.  The debtor

18   disagrees, I guess.

19         MR. BOTTER:  As does the creditors' committee, Your

20   Honor.

21         THE COURT:  Okay.  But this is -- the only objection

22   to the SLV claim, putting aside the termsheet -- we're not

23   talking about the termsheet claim, are we?

24         MR. CROWLEY:  We are not.

25         THE COURT:  We're talking about a real SLV claim,

1   right?

2           MR. CROWLEY:  That is correct, Your Honor.

3           THE COURT:  Well, why shouldn't Mr. Crowley have an

4   order on that, because the only objection to the SLV claim was

5   basically the cosmic argument, right?

6           MS. FENNING:  Your Honor, if I may, this is Lisa

7   Fenning.

8           We will be seeking reconsideration on the TIA claim,

9   and the concern, I believe, is that if our -- if the TIA ruling

10  has changed, you know, that the objection is overruled with

11  respect to those two tails, then if Mr. Crowley is allowed to

12  go ahead and get paid, then there would be no opportunity to

13  consider whether the adjustment issue is right because after

14  the TIA claim is allowed, if it is eventually allowed --

15          THE COURT:  No.

16          MS. FENNING:  And the two, I think, are linked

17  together and I would suggest that there is agreement that the

18  debtor and the committee, so to speak.  We would believe that

19  it's appropriate to consider the whole thing as a package,

20  because it may -- if you do change your mind and allow the two

21  TIA claims with respect to liability, then you may reconsider

22  the question of whether the SLV adjustment is necessary and

23  appropriate.

24          THE COURT:  The only basis on which I might reconsider

25  the SLV claim would be the cosmic argument, and I am not

1   changing my views on that.  The only other basis would be 8(c),

2   but 8(c) is not applicable, in my view, and I've ruled that,

3   and that is my view, whether or not I end up changing my views

4   on whether 7(c) bars a claim under the TIA.  I don't believe

5   there's any chance that I'm going to be changing my views on

6   that.

7           MS. FENNING:  If I may clarify, Your Honor, as to

8   these tails, it's 6(c) in the TIA inclusionary language,

9   it's --

10          THE COURT:  Oh, you're talking about Objection 2.

11  It's 6(c).

12          MS. FENNING:  Yes, Your Honor.  Okay.  I just wanted

13  to make sure --

14          THE COURT:  Yes.  No, I'm sorry.  I was in the

15  wrong --

16          MS. FENNING:  Okay, but I do not anticipate any

17  circumstance under which I would change my view that the

18  objection to the SLV claim in Objection 2, claim or claims,

19  with regard to whatever airplanes are covered, I don't see any

20  basis under which I would change that conclusion, namely that

21  the objection to the SLV claims, as opposed to the Bingham

22  termsheet claims, is overruled, and the reason for that is,

23  number one, the cosmic argument fails, as a matter of law, in

24  my view, as any basis to bar or reduce SLV claims.

25          Secondly, the analog for 8(c), under the participation

1  agreement in Objection 2, whatever it is, assuming that it is

2  substantially the same as 8(c) in Objection 1, is not the kind

3  of reduction to the SLV claim that would result where

4  previously there's a TIA claim which then results in an 8(c)

5  type reduction in SLV.  I'm not aware that there is any such

6  fact here.  Okay?

7         So I don't see why the overruling of the objection to

8  SLV claims in Objection 1 and 2 should not result in an

9  immediate order, because I cannot imagine any circumstance

10  under which I would change that ruling.  And it obviously does

11  matter, at least to the holder of SLV claims.

12         So is there any reason why, given the attitude that

13  I've just expressed on the SLV claims, those should not be

14  allowed now, and an order entered appropriately?

15         MR. WILES:  Your Honor, this is Michael Wiles.  I have

16  one procedural question that I haven't thought all the way

17  through, but it might make it a problem.

18         As it stands right now, let's say we had to issue a

19  separate order with regard to the SLV.  On claims where you

20  have presently ruled that our TIA claim goes away, in that

21  posture, I do not believe the debtors and the committee would

22  have a right to appeal because the orders and decision on file

23  would be in their favor as to the ultimate result.

24         THE COURT:  Right.

25         MR. WILES:  In other words, the TIA claim would go

1   away.  If you separate them and you allow the SLV claim and

2   then reconsider and then rule later on the TIA claim, it

3   creates a risk that if you were to change your mind on the TIA

4   claim going away, that the time to appeal would have expired on

5   the SLV claim, and that's a potential prejudice to the debtors

6   and the committee.

7           THE COURT:  Well, I do see that.  What's the answer to

8   that?  I will say that I envision almost no likelihood -- I

9   can't really envision any likelihood that I will change my view

10  on the TIA claims, on Objections 1 and 2.

11          Having said that, you're right.  You put your finger

12  on a problem.  I don't know that it's a real problem.

13          MR. SMOLEV:  Your Honor, this is Richard Smolev.  I

14  ask you not to pre-judge, particularly inasmuch as on all eight

15  of my tails now, Delta has the aircraft and the Court should

16  respectfully keep an open mind to determine if what it's paying

17  is SLV, because it very well may be that the facts now don't

18  support what the debtor is suggesting.

19          THE COURT:  Now, this is Mr. Smolev?

20          MR. SMOLEV:  Yes, sir.

21          THE COURT:  And you're now talking about the fact that

22  you're now telling me that all of your planes may be covered by

23  my ruling on 182DN.

24          MR. SMOLEV:  Yes, sir.

25          THE COURT:  And what is that?  Objection 1?

1        MR. SMOLEV:  My tail, yes.  My tail is in Objection 1.

2   Three of them are on the Bingham termsheet.  Five of them, --

3   and the other five, so all eight are now subject to

4   restructuring agreements.  And the --

5        THE COURT:  Okay.  I take your point.  I take your

6   point.  It's kind of too bad not to have had that information.

7   Maybe I did have it and it went over my head.

8        MR. SMOLEV:  No, no, no.  You didn't, Your Honor,

9   because the debtor did not file the schedule until after the

10  March 30th hearing, and I was completely in the dark about

11  those negotiations because I wasn't a party to them.  And those

12  are purely between Delta, on the one hand, and the SLV parties

13  on the other, so I could not have brought them to your

14  attention, nor could you have known about them because Delta

15  didn't file Schedule 10.4(e) until the eve of confirmation.

16       THE COURT:  Well --

17       MR. ELLIOTT:  Your Honor, this is Mark Elliott.  Mr.

18  Smolev is incorrect in a sense that he pointed out in his

19  brief, and we opposed it, that he pointed out that these were

20  termsheet planes, and we certain talked about the fact that

21  they were termsheet planes.  That doesn't change Your Honor's

22  ruling, as I pointed out before, because the language, the

23  critical language difference in Objection 1 excludes

24  (indiscernible), makes a great deal of difference because Your

25  Honor ruled as you did, I believe, because to -- with the event

1    of default under the lease, Delta was required to pay SLV.

2          What the parties may have done subsequently, in terms

3    of this agreement, which Your Honor so ordered, doesn't change

4    the fact that the event -- the lease event, whereby Delta was

5    required to pay SLV, didn't transpire, and that was the basis

6    of your ruling, I believe, Your Honor.

7          So with all due respect to Mr. Smolev, he did know

8    this was termsheet, this was litigated, and I believe Your

9    Honor properly decided it.

10          THE COURT:  Okay.  Well, it may be that I should have

11    decided it and should have realized it, but I didn't.  So, Mr.

12    Smolev is correct.  That remains open, as far as I'm concerned,

13    because I just didn't focus on it.  Sorry.

14          MR. SMOLEV:  Thank you, Your Honor.  I don't think --

15    Smolev is talking.

16          I don't think we're going to raise anything else in

17    this call with respect to TIA/SLV Objection 1, unless the Court

18    has any questions.

19          THE COURT:  Well, what this leaves, then, with regard

20    to Mr. Crowley's point, is only what?  A couple of airplanes

21    with respect to which I overruled an objection to their SLV

22    claims, and there's -- am I right, there's really nothing left

23    to litigate on that?

24          MR. EDELMAN:  Your Honor, this is Mike Edelman and

25    Vedder Price.  I think that on Mr. Crowley's suggestion, I

1    think it would be applicable to all the SLV claims.

2         THE COURT:  Well, not -- you mean all the SLV claims

3    in Objection 2?

4         MR. EDELMAN:  Well, I think he said that the two bases

5    for objection of the SLV, you thought that those were dead

6    issues, that there's no cause for argument and that since

7    there's no pre-existing TIA claim at the time of the SLV claim

8    arose, that the adjustment provision in the participation

9    agreement just is not applicable, and that applies to every SLV

10   in Objections 1 and 2.

11        THE COURT:  Well, no.  We're repeating ourselves here.

12   Mr. Smolev has said that there is a ground for changing my

13   ruling with regard to TIA because there's a Bingham termsheet

14   argument with regard to Objection 1 that I didn't focus on,

15   right Mr. Smolev?  Right or wrong?

16        MR. SMOLEV:  Yes, sir.  That is correct, Your Honor.

17   Thank you.

18        THE COURT:  So that being the case, I have to

19   entertain that argument, which may change the ruling, it may

20   not, with regard to TIA.  In Objection --

21        MR. EDELMAN:  I would think, for the final order for

22   the SLV, that's all I was saying, that that suggestion that

23   these are applicable to all the SLV claims, that's all I was

24   saying.

25        THE COURT:  Oh, I see.  All the SLVs?

1         MR. EDELMAN:  Yes.

2         MR. WILES:  The problem is a procedural issues that I

3    pointed out, though, Your Honor, this is Michael Wiles, is

4    still there.  Unlike everybody else, I don't really want to

5    argue the merits of all this.  I'm happy to get some papers

6    from you to point out our position, but I don't -- it may sound

7    superficially appealing to enter a separate order, but the

8    objection is based on the whole idea that one of them has to go

9    away, and in the context that we stand right now, we can't

10   really enter a separate order without prejudice to the debtor.

11        THE COURT:  What's the answer to that?

12        MR. CROWLEY:  This is Leo Crowley, Your Honor.

13        I don't see what the prejudice is, frankly, because

14   they never -- as I read the objection just now, I haven't seen

15   them really objecting to the SLV claim on those two aircraft.

16   The objection was to the TIA claim, and you overruled it.

17        MR. WILES:  That's just not true.  (Indiscernible.)

18        MR. CROWLEY:  Looking through their reply here, it

19   says:

20        "Point C of the TIA claim should be extinguished due

21        to the distribution that will be made to the holders

22        of the SLV claims."

23        MR. WILES:  Yes, and in the alternative, what --

24        MR. CROWLEY:  I'm looking for "in the alternative,"

25   and I don't see it.

1        THE COURT:  But, Mr. Wiles, the objection to the SLV

2   claim would be either the cosmic argument -- well, basically,

3   it would be the cosmic argument, wouldn't it?  Or an 8(c)

4   argument?

5        MR. WILES:  It would be both of those.  That's

6   correct.

7        MR. CROWLEY:  Well, Your Honor, Leo Crowley.

8        The cosmic argument, I think you've indicated that you

9   don't want to talk about it anymore, frankly, on these two

10  aircraft, the lease was rejected, as before, we discussed in

11  the oral argument, the lease was rejected at the beginning of

12  the case, so I don't see any basis for invoking any adjustment

13  mechanism on it at all.

14       Now I think these are the -- with respect to Mr.

15  Edelman, I mean, I think these two aircraft are in a unique

16  position.  I think there is a basis for finality as to these

17  two right now, and ultimately, as I said before, we'll be

18  seeking a prompt distribution on account of these.  The party

19  who agreed by the request for prompt distribution need to

20  persuade you not to order them, or they can put up an

21  undertaking, pending appeal.

22       THE COURT:  Why is that not so?

23       MR. WILES:  What's not so, Your Honor?

24       THE COURT:  Why is it not so that you can protect your

25  rights --

1          MR. WILES:  Well, let's say we have an order on those

2    planes in favor of Mr. Crowley's client, and at the moment,

3    your decision is in Delta's favor on the TIA claims, with

4    respect to the -- the relief Delta sought was that one of the

5    two claims should be adjusted or should go away, and at the

6    moment, we would be in a position where you would rule in

7    Delta's favor, throwing out one of the claims.

8          But, by entry of an order with respect to Mr. Crowley,

9    it would start the appeal time running at the same time that

10   you're reconsidering your order with respect to the TIA claim.

11   So what happens if you change your mind?

12         I think that there's a serious risk that I would have

13   a right to appeal, because you can only appeal if the

14   underlying judgment is against you, and as things would stand

15   on the record, the relief Delta requested would have been

16   granted.  The order wouldn't have been finalized, but the

17   relief entered would be in favor of Delta.

18         But if part of that being reconsidered, you can't

19   start the appeal time running on the other part.  It's just not

20   fair to Delta.

21         MR. CROWLEY:  I don't -- this is Leo Crowley, Your

22   Honor.

23         I'm not sure we really heard much of a basis for

24   reconsideration on this one, to tell you the truth, which is

25   what prompted me to ask for finality, and I think given that

1   -- you know, I come back to the proposition of the party who

2   has prevailed in litigation, as we have, is entitled to

3   finality and the benefits that go with finality.

4           THE COURT:  Well, let me ask you this, Mr. Crowley.

5   If I sign an order allowing your claim and overruling the

6   objection to it in respect of SLV on these claims, and Mr.

7   Wiles were to file an appeal, would you then argue, oh, you

8   can't file an appeal because you won?

9           MR. CROWLEY:  Your Honor, I think that's right.  On

10  this one, he did prevail.

11          THE COURT:  But his point -- his point is that I might

12  change my mind on the TIA.  He knows I'm not going to change my

13  mind on the cosmic argument, but I might change my mind and

14  rule that TIA can be paid, in which case he is aggrieved,

15  because he was objecting and saying there had to be an

16  allocation.  You can't pay them both.  Would you then argue --

17  no, you can't preserve that argument because at the time,

18  within the ten days, you won.

19          MR. CROWLEY:  No.  I mean, I think if you ultimately

20  entered a later order of the type you're describing, which I

21  have to say I think is virtually inconceivable, the entry of

22  that order, if he's aggrieved by it, would be final at that

23  time, if he's aggrieved by it.

24          But, you know, as a prevailing party now, I think I'm

25  entitled to whatever benefits there are associated with

1    finality, and one such benefit is using this as a stepping

2    stone to move to compel distribution.

3            I mean, the flip side is having prevailed in this, if

4    I move at this point, for me it allows this claimant to compel

5    distribution, he's going to come back and say there's no

6    finality in the TIA litigation.  I mean, I can only move

7    forward one step at a time.

8            MR. WILES:  It's not a final order, anyway, until the

9    appeals are exhausted.

10           THE COURT:  Yeah.

11           MR CROWLEY:  (Indiscernible.)

12           MR. WILES:  That's what the plan -- that's how the

13   definition is (indiscernible).

14           UNIDENTIFIED:  Your Honor, maybe this counts for a

15   very fast process on the reconsideration, because if --

16   obviously, the estate is essentially aggrieved, as Mr. Wiles

17   pointed out, in that once the reconsideration is considered,

18   then you are gong to get -- we -- I (indiscernible) so we could

19   get to the place where, in fact, Mr. Crowley can't file an

20   order and the estate can do whatever it is that it wishes to do

21   in connection with its appellate rights.

22           THE COURT:  Let me ask you this.  Who is going to ask

23   for a re-hearing with regard to my ruling on TIA in -- what,

24   Objection 2?

25           MS. FENNING:  Your Honor, this is Lisa Fenning on

1  behalf of Northwestern Mutual.

2          We will be filing a motion for reconsideration with

3  respect to the claim.  I understand you have not given me a

4  whole lot of hope for persuading you otherwise, but you've also

5  invited us to take a shot --

6          THE COURT:  Yeah.

7          MS. FENNING:  -- and we do believe we have grounds.

8          MR. HANSEN:  Your Honor, it's Kris Hansen at Stroock.

9          I mean, to the extent that we want you to reconsider

10  Section (indiscernible) in your ruling, we would file a motion

11  for reconsideration on behalf of the debtor with respect to

12  Point (c) (sic).

13          THE COURT:  You know, well, look, Mr. Crowley.  I

14  think we'll -- let me come back to this when we talk about

15  scheduling.  I think it would be appropriate for any request

16  for reconsideration to be on my -- in my chambers by a week

17  from this Friday.  Any problem with that?

18          MR. WILES:  Not on behalf of the debtors, Your Honor.

19  I think that's fine.

20          THE COURT:  Okay.  Together with, you know -- I want

21  you to quote from any documents and if you want to have the

22  entirety of any of these documents before me, give me copies.

23  I'm sorry that I won't -- I don't still have them.  Okay.

24          MR. SMOLEV:  Your Honor, excuse me.  It's Richard

25  Smolev.  Because the restructuring termsheets are not in my

1    possession, and I'm dependent upon Mr. Wiles to get them, I can

2    only comply with that schedule if I have the documents in

3    advance and right now, all we have is an agreement.  I have not

4    done a motion to compel.  I don't now if you want to direct the

5    debtor to provide me those documents by a date certain.  I

6    don't know, Mr. Wiles, if even that's necessary --

7              THE COURT:  Okay.

8              MR. SMOLEV:  -- if you can get the documents in the

9    next day or two.

10             THE COURT:  That's Objection 1, right?

11             MR. SMOLEV:  Yes, sir.

12             MR. WILES:  I've told you, Richard, I'll get them to

13   you --

14             MR. SMOLEV:  Okay.

15             MR. WILES:  I will honor that.

16             MR. SMOLEV:  All right.  Thank you.  All right.  We'll

17   leave it at that for now, Judge.

18             THE COURT:  Okay.

19             MR. SMOLEV:  And if there's a hang-up on time, I'll

20   advise chambers.

21             THE COURT:  All right.  I will look at these, any

22   requests for reconsideration, very promptly.  Including, by the

23   way, the debtors' request for me to reconsider on 182DN, right?

24             MR. WILES:  Yes.

25             THE COURT:  That's the debtors' request, isn't it?

56

1          MR. WILES:  That's correct.

2          UNIDENTIFIED:  Yes, Your Honor.

3          THE COURT:  All right.  Well, you do a brief

4   submission.  Annex the Tab 11 document that you want me to look

5   at, and I will function on that very swiftly, and I'll probably

6   function on all of these the following week, early in the

7   following week, and if I want submissions -- reply submissions

8   to any of these motions, I'll let you know before I do

9   anything.

10          If I am at all disposed to grant reconsideration and

11   change my views on any of these, I will certainly ask for

12   responses.  Otherwise, I won't burden you with a request for

13   responses.  Do you all understand?

14          MR. WILES:  Yes.

15          THE COURT:  In other words, it won't be necessary to

16   reply to motions for a re-hearing or reconsideration unless I

17   request it.

18          Okay?  And then, Mr. Crowley, hopefully I'll have a

19   situation where I can give at least you a final order with

20   regard to your SLV claims in Objection 2.

21          MR. CROWLEY:  Thank you, Your Honor.

22          THE COURT:  Okay?  Anything else?

23          MR. WILES:  Have a safe trip, and enjoy wherever

24   you're going.

25          THE COURT:  Okay.  Thanks a lot.

1          MR. WILES:  Thank you.

2          THE COURT:  My --

3          MR. EDELMAN:  Your Honor, just one last thing.  This

4    is Mike Edelman from Vedder Price.

5          THE COURT:  Yes?

6          MR. EDELMAN:  Earlier in the conversation, I think

7    Wiles said that there's going to be a June 6th status

8    conference on the -- on all the other SLV/TIA (indiscernible).

9          UNIDENTIFIED:  We don't need that date anymore.

10   That's (indiscernible).

11         MR. EDELMAN:  Given the reconsideration, I was going

12   to suggest maybe it would be (indiscernible).

13         UNIDENTIFIED:  Yeah.  I agree with that.  I set that

14   date earlier this morning, Your Honor, but I think after this

15   conversation, which was a lot more detailed than I thought it

16   would be, it just wouldn't make sense to have a

17   (indiscernible).

18         THE COURT:  Okay.

19      (Counsel speak simultaneously.)

20         THE COURT:  That's fine.  You can reschedule that.

21   Just so you're aware, if emergencies come up and you need to

22   have the Court function on anything when I'm away, let Rosemary

23   DeSalvo know, because she can reach me, or you can take it to a

24   Judge in New York if you want, but I frequently hear things

25   when I'm away.  I prefer not to, obviously, but I always will

1  if it's needful, to have anything heard when I'm away.  I'll

2  hear it.  Okay?

3          UNIDENTIFIED:  Your Honor, one other objection.  There

4  isn't going to be a generalized SLVJ conference.  Maybe June

5  6th would be a good idea to have it, just for these one and two

6  cases.  It's just a suggestion, and it seems like it might be

7  an appropriate time.

8          THE COURT:  I think I'd better call you and let you

9  know, because I'm going to function very quickly, but I may or

10 may not be able to function by the 6th.  But I certainly hope

11 by the end of the week, to be able to.  All right?

12         COUNSEL:  Thank you, Your Honor.  Thank you very much.

13         THE COURT:  Thank you all.

14         COUNSEL:  Thank you, Your Honor.  Thank you, Judge.

15         THE COURT:  Good day.

16    (Proceedings concluded at 6:16 p.m.)

17                                    *****

18

19

20

21

22

23

24

25

1               CONDITIONAL CERTIFICATION

2          I certify that the foregoing is a correct transcript

3   from the electronic sound recording of the proceedings in the

4   above-entitled matter produced to the best of my knowledge and

5   ability.*

6

7

8

_____        May 23, 2007

9   Jennifer Linnartz, AAERT Cert. No. 339
    Certified Court Transcriptionist

10  Rand Transcript Service, Inc.

11

    *Telephonic comments and arguments of counsel not adequately

12  recorded.

13

14

15

16

17

18

19

20

21

22

23

24

25