# **EXHIBIT 4**

```
 1                    UNITED STATES BANKRUPTCY COURT
                      SOUTHERN DISTRICT OF NEW YORK
 2


 3                                        .
        IN RE:                            .   Case No. 05-17923 (PCB)
 4                                        .
                                          .   New York, New York
 5      DELTA AIR LINES, INC., et al, .       Tuesday, July 10, 2007
                                          .   12:48 p.m.
 6                    Debtors.        .
        . . . . . . . . . . . . . . . .
 7
                      TRANSCRIPT OF TELEPHONE CONFERENCE
 8                BEFORE THE HONORABLE ADLAI S. HARDIN
                      UNITED STATES BANKRUPTCY JUDGE
 9
        APPEARANCES:
10
        For the Debtors:              Michael E. Wiles, Esq.
11                                    Karen Yumi Paik, Esq.
                                      DEBEVOISE & PLIMPTON, LLP
12                                    919 Third Avenue
                                      New York, New York 10022
13
                                      Jayme Goldstein, Esq.
14                                    STROOCK & STROOCK & LAVAN, LLP
                                      180 Maiden Lane
15                                    New York, New York 10038

16      For the Official Committee
        of Unsecured Creditors:       David H. Botter, Esq.
17                                    AKIN, GUMP, STRAUSS, HAUER
                                       & FELD, LLP
18                                    590 Madison Avenue
                                      New York, New York 10022
19


20
        Audio Operator:              Electronically Recorded
21                                   by Court Personnel

22      Transcription Company:       Rand Transcript Service
                                     80 Broad Street, Fifth Floor
23                                   New York, New York 10004
                                     (212)504-2919
24                                   www.randtranscript.com

25      Proceedings recorded by electronic sound recording, transcript
        produced by transcription service.
```

```
 1   A P P E A R A N C E S:   (Continued)

 2   For the Official Committee
     of Unsecured Creditors:        David P. Simonds, Esq.
 3                                  AKIN, GUMP, STRAUSS, HAUER
                                     & FELD, LLP
 4                                  2029 Century Park East
                                    Suite 2400
 5                                  Los Angeles, California 90067

 6   For DFO Partners:             Richard G. Smolev, Esq.
                                    KAYE SCHOLER, LLP
 7                                  425 Park Avenue
                                    New York, New York 10022
 8
     For Northwestern Mutual,
 9   et al:                         Lisa Hill Fenning, Esq.
                                    DEWEY BALLANTINE, LLP
10                                  333 South Grand Avenue
                                    Suite 2600
11                                  Los Angeles, California 90071

12   For Wilmington Trust
     Company and Cargill
13   Financial Services :          Joshua Dorchak, Esq.
                                    BINGHAM MC CUTCHEN, LLP
14                                  399 Park Avenue
                                    New York, New York 10022
15
     For Bank of American and
16   Strategic Value Partners:     Michael J. Edelman, Esq.
                                    VEDDER, PRICE, KAUFMAN
17                                   & KAMMHOLZ, P.C.
                                    805 Third Avenue
18                                  New York, New York 10022

19                                  Jonathan H. Bogaard, Esq.
                                    VEDDER, PRICE, KAUFMAN
20                                   & KAMMHOLZ, P.C.
                                    222 North LaSalle Street
21                                  Chicago, Illinois 60601

22   For Bank of New York
     as Indenture Trustee:         Leo T. Crowley, Esq.
23                                  Margot P. Erlich, Esq.
                                    PILLSBURY, WINTHROP, SHAW
24                                   & PITTMAN, LLP
                                    1540 Broadway
25                                  New York, New York 10036
```

1    (Proceedings commence at 12:48 p.m.)

2              THE CLERK:  You're on the record with <u>Delta</u>.

3              THE COURT:  This is Judge Hardin.  Who's on the

4    telephone, please?

5              MR. WILES:  Your Honor, this is Michael Wiles, for

6    Delta.

7              MR. CROWLEY:  Your Honor, it's Leo Crowley and Margot

8    Erlich, for Bank of New York, as Indenture Trustee.

9              MR. BOTTER:  Your Honor, David Botter and David

10   Simonds, Akin, Gump, Strauss, Hauer & Feld, for the Second

11   Phase Committee.

12             MR. GOLDSTEIN:  Your Honor, Jayme Goldstein, of James

13   Goldstein of Stroock & Stroock & Lavan, for Delta.

14             MR. EDELMAN:  Your Honor, Michael Edelman and John

15   Bogaard, on behalf of Bank of America and SVP, from Vedder

16   Price.

17             MR. DORCHAK:  Joshua Dorchak and Mark Busey

18   (phonetic), of Bingham McCutchen, on behalf of Wilmington Trust

19   Company and Cargill Financial Services.

20             THE COURT:  Anyone else?

21             MS. FENNING:  -- of Dewey Ballantine, on behalf of

22   Northwestern Mutual Life.

23             THE COURT:  Who is that?

24             MS. PAIK:  Your Honor, Karen Paik, at Debevoise &

25   Plimpton, on behalf of Delta.

1          THE COURT:  Who was here on --

2          MR. SMOLEV:  I'm Richard Smolev, from Kaye Scholer, on

3   behalf of DFO Partnership.

4          THE COURT:  Who is here on behalf of Northwestern?

5          MS. FENNING:  Lisa Fenning of Dewey Ballantine.

6          THE COURT:  Okay.  Is that it?

7          Okay.  Now, I've asked for this conference call, and

8   thank you very much for attending, and I'm sorry to have kept

9   you waiting so long.  I had a matter that dragged on, I would

10  say fairly unnecessarily.  Can you all hear me?

11         MR. WILES:  Yes.

12         THE COURT:  Okay.  I would ask anybody that is going

13  to speak to get right next to the phone so I can hear you, and

14  speak with a loud, if not boisterous voice.

15         MR. BOTTER:  Your Honor, excuse me.  Could I ask you

16  to come closer to the speaker.  We're having trouble hearing

17  you.

18         THE COURT:  Okay.  Thanks.  Is that better?  Is that

19  better?

20         MR. BOTTER:  A little bit.

21         THE COURT:  Okay.  I'll try to keep my voice up, too.

22         We're here on the several motions for reconsideration.

23  There were three:  One motion by DFO, one by Delta, and one by

24  Northwestern Mutual.  Am I right about that?

25         MR. WILES:  Yes.

1          THE COURT:  Okay.  Am I correct that Delta and DFO

2    have resolved their issues?

3          MR. WILES:  Tentatively, Your Honor, although the

4    committee is a party to the objection to the DFO claims, and I

5    don't believe the committee has signed off on that resolution

6    yet.

7          THE COURT:  Committee?

8          MR. BOTTER:  Your Honor, it's Davit Botter of Akin

9    Gump.  I think we are actually unaware of the terms of that

10   settlement, so the answer is yes, we have not signed off on it.

11         MR. SMOLEV:  Your Honor, it's Richard Smolev.  I

12   apologize.  I was -- for notifying parties prematurely.  I was

13   under the impression that Delta had vetted its conversations

14   with us with the committee.

15         THE COURT:  Well, I guess the issue is do you -- does

16   anybody want me to deal with the DFO motion to reconsider?  I

17   would assume not.  That doesn't moot the -- necessarily --

18   unless you say it does, the Delta motion to reconsider, does

19   it, Mr. -- who is speaking?  Who is going to speak for Delta

20   here?

21         MR. WILES:  On DFO I will, Your Honor.  It's Michael

22   Wiles.

23         THE COURT:  Yes, Mr. Wiles?

24         MR. WILES:  No, it does not moot the Delta motion on

25   the Northwestern issue.  I think, in fairness to the parties, I

1   should explain.  I only heard of this settlement yesterday

2   myself.  The outside counsel were not involved and the clients

3   themselves had a conversation about it, and I'm not even in the

4   office.

5        I don't know if the settlement will be final, but it

6   does make sense to me, if a settlement has reached that stage

7   of discussion, that we discuss it with the committee, see if

8   they are on board, or if we have further proceedings on DFO.

9        MR. BOTTER:  Your Honor, this is David Botter.  It we

10   could just adjourn, for the moment, any further motions with

11   respect to DFO, that would probably make the most sense.

12        MR. WILES:  Yeah.  I agree with that.

13        THE COURT:  All right.  Except for the fact that what

14   I have to say about Delta, one way or the other, obviously

15   affects directly the DFO motion to reconsider.

16        MS. WILES:  It may well.  We understand that, Your

17   Honor, but I'm not sure how else we --

18        THE COURT:  Well, the only issue is do you want to

19   resolve whether you're settled or not before I express such

20   views as I'm prepared to express with regard to the Delta

21   motion to reconsider?

22        MR. WILES:  On behalf of Delta, I would be happy to go

23   forward.  You asked Mr. Smolev and the committee the other day,

24   and they refused.

25        MR. SMOLEV:  This is Richard Smolev.  That's fine.  I

1    mean, we will -- again, I was not aware that the settlement had

2    not been discussed.  Your Honor, the settlement was -- the

3    settlement negotiations were all on a businessperson's level,

4    and I received an e-mail yesterday that the parties had reached

5    an agreement in principle, and that's why I reached out, both

6    to the Court and to the parties and advised them.  I didn't

7    want to waste time, and I guess I did, inadvertently.  But I'm

8    certainly prepared to go forward until -- because until there's

9    a settlement, there's -- there is no settlement.

10           MR. WILES:  We agree with that, Your Honor.

11           THE COURT:  So does everybody -- is everybody prepared

12   for me to go ahead and express such thoughts as I have with

13   regard to the Delta motion to reconsider?

14           MR. WILES:  Yes, Your Honor.

15           THE COURT:  Mr. Smolev?

16           MR. SMOLEV:  Yes, sir.

17           THE COURT:  Okay.  In essence, the Delta motion to

18   reconsider says Judge, you made a mistake in ruling that the

19   term sheet does not define a payment by reference to SLV and,

20   so Delta argues, because the term sheet does define a payment,

21   or rather a claim by reference to calculation of SLV, I should

22   reverse my ruling with regard to tail number -- what is it?

23   182DN.  Is that about it, Mr. Wiles?

24           MR. GOLDSTEIN:  This is Mr. Goldstein from Stroock &

25   Stroock & Lavan, on behalf of Delta, and yes, this is -- this

1  is correct.

2          THE COURT:  That's basically your argument on the

3  motion to reconsider?

4          MR. GOLDSTEIN:  With respect to tail 182DN and your

5  2(c) argument for decision of the order?

6          THE COURT:  Yes.

7          MR. GOLDSTEIN:  That is correct.

8          THE COURT:  Okay.  Well, my view on that is that Delta

9  is correct.  I did incorrectly rule that the term sheet was not

10 predicated on a calculation based on SLV.  I agree with the

11 position of Delta on the motion to reconsider, and agreeing

12 with that, I am prepared to reverse my ruling with regard to

13 that tail, and I don't really think that there's any need for

14 any further briefing or argument on the point, although I'm

15 perfectly prepared to hear from DFO or anybody else on the

16 point.

17         The term sheet says what it says very clearly, and I

18 was simply mistaken, and I now agree with the position of Delta

19 on that issue.

20         MS. FENNING:  Your Honor, this is Lisa Fenning, on

21 behalf of Northwestern Mutual, and since our claim is at issue,

22 as we informed in our motion for reconsideration, we agreed

23 that you misconstrued our argument, and note that we were never

24 contending that the word SLV never appeared in the term sheet.

25 That was not our argument.

1          Our argument was and remains that the nature and terms

2     of the term sheet are extra contractual, that they provide for

3     results that is contrary to the terms of the various agreements

4     among the parties and, therefore, cannot nullify the TIA claim.

5     It is a different argument than you are now addressing, which

6     is to say -- you're saying that because it mentions SLV,

7     therefore, it must be a claim that nullifies the TIA.  We

8     disagree with that interpretation, and we urge Your Honor to

9     consider the arguments that we did set forth in our motion for

10    reconsideration and in our original papers, that explain why

11    that term sheet, while perfectly legal between Delta and the

12    particular creditors, is not in contemplation of the parties'

13    original deal.  It's not submitted under the term-sheet

14    agreement and, therefore, cannot nullify the rights that were

15    retained and preserved and specifically negotiated by the

16    parties under the TIA agreement.

17          THE COURT:  Okay.  Well, I have, as I said, considered

18    that on the motion to reconsider, and I disagree with it.  I

19    disagree with your position.  I did misconstrue the argument

20    that you presented previously, and I apologize for doing that,

21    but I agree with the position of Delta, as they have

22    articulated it.  And so, that's going to be my ruling on that.

23          Now, as far as the Northwestern Mutual motion to

24    reconsider, there were basically two grounds.  One was that I

25    needed to consider the impact of the <u>Travelers</u> decision by the

1    Supreme Court, and the other was that I was mistaken at Page 14

2    of the slip opinion -- the slip version of my decision.

3            MS. FENNING:  Excuse me, Your Honor.  This is Lisa

4    Fenning.  Somebody is typing, and I'm having trouble hearing.

5    Thank you.

6            THE COURT:  Lisa, I guess that's your typing, is that

7    right?

8            THE CLERK:  Yeah.

9            THE COURT:  Okay.  Well, you'll have to stop while I'm

10   -- you don't need to do it while I'm talking, do you?

11           THE CLERK:  No.  I was correcting something, but --

12           THE COURT:  I see.  All right.  I'm sorry, Ms.

13   Fenning.

14           I was saying that, as I read the Northwestern Mutual

15   motion for reconsideration, there are two fundamental grounds.

16   One ground is that I have made a ruling, which Northwestern

17   Mutual believes is inconsistent with the Supreme Court decision

18   in the Travelers case, which I guess came down very recently,

19   and the second basic argument is that I was mistaken in ruling

20   as I did at Page 14 of my decision, in which I did two things.

21   One, I referred to a quotation, a reference to bankruptcy that

22   appears in a document which was not part of the documentation

23   relating to Objection No 2, and the other is that I imported a

24   requirement of bankruptcy law into the parties' agreement.

25           I have given a great deal of thought to that position,

1    and I believe that the position is not well taken.  As to the

2    <u>Travelers</u> case, in essence, the <u>Travelers</u> case says that rights

3    and obligations of parties that are defined by contract are

4    matters for state law, and in construing those rights and

5    obligations under contract, the Court is not at liberty to vary

6    those rights and obligations based upon bankruptcy law or

7    provisions of the Bankruptcy Code.

8         I have no problem at all with that line of reasoning

9    in the Supreme Court decision in <u>Travelers</u> which, it seems to

10   me, is very, very basic and putting aside the fact that the

11   <u>Travelers</u> case is now the law of the land, I had always thought

12   that that was the rule at all times.  I don't think it is

13   implicated here.

14        As I think is made clear in my decision, but perhaps

15   is not sufficiently clear, my ruling with regard to the issues

16   that were before me on this objection is intended to construe

17   the parties' agreement, or rather agreements plural because, as

18   is perfectly clear, each of these agreements is part of a group

19   of agreements, the participation agreement, the lease, the tax

20   indemnification agreement, all of which are interrelated.

21        The question that was raised with regard to Section

22   6(c) of the tax indemnification agreement is whether or not the

23   language, quote, "any event whereby the lessee pays stipulated

24   loss value or termination value, or an amount determined by

25   reference thereto," whether or not the work "pays" in that

1    clause is to be construed in accordance with other provisions

2    of the constituent documents, which are cited in my decision,

3    that require payment in cash, in full.

4         I said, at Page 14, in response to those arguments by

5    Northwestern Mutual, that the clause in question of the tax

6    indemnification agreement, namely Paragraph 6(c), does not

7    require payment in full, in cash.  And I pointed out that the

8    parties, when they meant payment in full, in cash, knew how to

9    spell it out in their various agreements, and they didn't do

10   that with regard to Section 6(c).

11        I also pointed out, and this may be, I think, where

12   there is some misunderstanding on the part of Northwestern

13   Mutual with regard to what I had in mind, I pointed out that

14   language used in an agreement must be construed in a manner

15   that will reflect the contemplation and understanding and,

16   therefore, intent of the parties.  That, I believe, is a

17   fundamental principle of state law in the construction of

18   contracts, and in the interpretation and implementation of

19   contractual provisions.

20        What I said was, or meant to convey in my decision,

21   was that when the parties use the phrase in Paragraph 6(c),

22   refer to an event whereby the lessee pays stipulated loss value

23   or an amount determined by reference thereto, the parties must

24   have had, in their contemplation, understanding and, therefore,

25   their intent, the self-evident postulate that stipulated loss

1   value might be required to be paid, or an amount determined by

2   reference to stipulated loss value might be required to be paid

3   in the context of bankruptcy.  And in that context, it would be

4   perfectly clear to anybody familiar with bankruptcy and

5   presumably, the lawyers and principals who were responsible for

6   this agreement, that the concept of payment in bankruptcy must

7   contemplate the possibility, indeed, the nearly certain

8   probability, that the payment would not be dollar-for-dollar in

9   cash.

10          In so ruling, I was not making a ruling that

11  bankruptcy law supervened to govern the term of this agreement

12  that we're concerned with, Section 6(c).  Rather, my point was

13  that in construing what the parties contemplated and,

14  therefore, intended in writing Section 6(c) as they did, they

15  must have contemplated the possibility, if not the likelihood,

16  of an obligation to pay SLV in the context of bankruptcy, in

17  which context it would almost certainly be impossible to pay in

18  full, in cash.

19          My attempt was not, as I said before, to impose the

20  bankruptcy rules of priorities and pro-rata payment and the

21  possibility of a plan contemplating something other than cash,

22  but rather to recognize the fact that this set of agreements

23  clearly contemplated bankruptcy as a circumstance under which

24  SLV would likely be called upon to be paid.  My conclusion, in

25  that regard, was, I believe, supported by the phraseology that

1    says, quote, "the lessee pays stipulated loss value...or an

2    amount determined by reference thereto."

3         With regard to Northwestern Mutual's point that the

4    actual language referring to bankruptcy, which I used in the

5    middle of Page 14, namely, quote, "or an amount --"  Excuse me.

6    Now where is it?  Oh, I'm sorry.  The quoted reference to an

7    agreement was, quote, "Bankruptcy [or other proceedings for the

8    relief of debtors.]"  And in the footnote I pointed out that

9    that was not a quote from one of the constituent documents in

10   Objection 2, and Northwestern Mutual pointed that out, and

11   pointed out that there is no reference in their tax

12   indemnification agreement to bankruptcy, and I guess that's

13   true.

14        However, there are quite a few references to

15   bankruptcy in the constituent documents constituting Objection

16   No. 2.  For example, the lease agreement contains references to

17   bankruptcy at Page 2, several references on Page 58 and 59.

18   The trust indenture contains references to bankruptcy at Pages

19   48 and 49, Page 52.  The participation agreement contains

20   references to bankruptcy at Page 2, Page 23, Page 31, Page 42,

21   Page 53, Page 68, Page 78, Page 81 and Page 85.  Did I cover

22   the lease agreement?  I think I did, but if I didn't, Pages 2,

23   58 and 59.  And the tax indemnification agreement itself

24   contains, as one would expect, countless references to the

25   other constituent documents.

1          The point simply is that bankruptcy was very much

2   contemplated the parties to these various structured finance

3   agreements relating to aircraft.  SLV would, in many cases, if

4   not most cases, become payable in the context of bankruptcy.

5   Those facts being facts, when the parties used the phrase, in

6   Paragraph 6(c), "An event whereby lessee pays stipulated loss

7   value or an amount determined by reference thereto," it must be

8   concluded that the parties contemplated payment or discharge of

9   SLV, of the SLV obligation in the context of bankruptcy, and

10  that they, therefore, contemplated -- had to contemplate that

11  such payment or payment of amount calculated by reference to

12  SLV, would be in an amount not dollar-for-dollar what would be

13  owed under the calculation, and not necessarily even payment in

14  cash.

15          I think that constitutes my ruling with regard to the

16  motion for reconsideration by Northwestern Mutual.  I have

17  reconsidered, and upon reconsideration, I reached the same

18  conclusion as I did in my written decision, amplified by what I

19  have just said here today.

20          Now, does that cover both the Delta and the

21  Northwestern Mutual motions for reconsideration?

22          MR. WILES:  I believe it does, Your Honor.

23          THE COURT:  Okay.

24          MS. FENNING:  A point of clarification, Your Honor?

25          THE COURT:  Yes?

1          MS. FENNING:  Do you intend to issue a revised ruling,

2   or let the original ruling stand, subject to the comments of

3   this transcript?

4          THE COURT:  Well, I don't know that it's necessary to

5   issue a revised ruling, but I'd be happy to be guided by

6   whatever anybody wishes in that regard.

7          MS. FENNING:  Your Honor, this is Lisa Fenning.  I'm

8   not suggesting that one is necessary, per se.  I was just

9   seeking clarification as to your intention.

10          THE COURT:  Yes.  Well, does anybody wish me to issue

11   a revised, typewritten ruling for ECF purposes, or is the

12   transcript of this hearing sufficient to do the trick?

13          MR. WILES:  I believe today's transcript should be

14   fine, from Delta's point of view, Your Honor.

15          THE COURT:  Okay.

16          MR. EDELMAN:  Your Honor, this is Michael Edelman from

17   Vedder Price, on behalf of SLV claimants and both objections.

18   I think that today's transcript would be fine, but you also

19   made some clarification at the last hearing.  I think both

20   transcripts should be incorporated.

21          THE COURT:  Oh, sure.  Yes.  They should both be --

22   they should be transcribed.  Both hearings should be

23   transcribed, and the hearings recorded on ECF.  I quite agree.

24          Now where does that leave us with regard to orders?

25   May I seek Delta's view first?

1          MR. WILES:  Your Honor, I think we should give a few

2   days to see if the DFO issue is resolved or not and tailor the

3   order accordingly.

4          THE COURT:  Okay.  That's what I think, and what I

5   would like is if -- I guess if Delta could draft up the

6   appropriate order and circulate it around so that there is not

7   any controversy as to the form of the order without, of course,

8   waiving anybody's right to appeal from or seek review of the

9   substance of the order.  Would that be alright?

10          MR. CROWLEY:  Your Honor, Leo Crowley, on behalf of

11   the Bank of New York, on Objection No. 2.  We would just as

12   soon, to the one, since it's a separate objection, have an

13   order entered on that one right now.  I don't see why that

14   should be held up, pending whatever it's going to take with

15   respect to the DFO issue.

16          THE COURT:  DFO is only involved in Objection 1?

17          MR. CROWLEY:  Correct.

18          THE COURT:  Okay.  Well, Mr. Wiles, could you

19   circulate an order now with regard to Objection 2?

20          MR. WILES:  Yes.  I'll do that.  Thank you.

21          THE COURT:  Okay.  Where do we go from here with

22   regard to other potential objections?

23          MR. WILES:  Your Honor, I believe the procedure we

24   contemplated some time ago, we told everybody that once we had

25   final rulings on these two, that we would have a conference

1    with the Court, a pretrial conference, to discuss what to do

2    next.

3              THE COURT:  Okay.

4              MR. WILES:  I have my own ideas on that, but I suspect

5    not everybody is going to agree with them.  And so, I think

6    what we ought to do next is try to schedule that conference.

7              THE COURT:  Okay.  May I suggest that you all try to

8    work out a schedule for that conference that works with you.  I

9    will be away for a period of time in August.  Let me look at

10   the right calendar here.  I may be here on July 30, perhaps

11   July 31.  Right now I'm hoping not to be, but I will probably

12   be away August 1, returning to the Court on the 20th, which is

13   Monday.  I have a hearing scheduled, I guess an omnibus in the

14   <u>Delta</u> case Monday afternoon, the 20th.  Almost any time after

15   that, unless you can schedule the conference between now and

16   let's say the end of this month.

17             MR. WILES:  Okay.

18             THE COURT:  But I leave it to you to confer together

19   and try to get a date that works for everybody.  Maybe an

20   alternative or two.  Or, maybe the thing to do is to, after

21   this hearing, Mr. Wiles, call Lisa in my chambers.  Her

22   extension is, Lisa --

23             THE CLERK:  Four-one-five-four.

24             THE COURT:  -- and she can tell you dates that look

25   like they would not be good for me because of whatever schedule

1  I have.  I doubt that there are very many where we couldn't

2  work in the conference that you suggest.

3      MR. WILES:  That's great.  Lisa, I may ask Karen Paik

4  in my office to call you because I'm actually out of the office

5  right now.

6      THE CLERK:  Okay.

7      THE COURT:  Well, thank you all very much.  I

8  appreciate your making the time, and I'm grateful for the

9  motions for reconsideration.  As I said before, it's my

10 practice to welcome such motions because sometimes I get it

11 wrong.

12     MR. SMOLEV:  Your Honor, it's Richard Smolev.  I

13 apologize for prolonging this, but as I said, I've been having

14 terrible trouble hearing.  Did Your Honor rule with respect to

15 the DFO motion for reconsideration?

16     THE COURT:  No.

17     MR. SMOLEV:  I didn't think so.  Okay, good.  I didn't

18 think so.  I just wasn't sure.

19     THE COURT:  No.  I didn't because that one is --

20     MR. SMOLEV:  Okay, good.

21     THE COURT:  -- apparently in the process of possibly

22 being settled.  I do have some thoughts on it, obviously, but I

23 shall withhold those until you tell me it's either settled or

24 not.

25     MR. SMOLEV:  Great.

1        THE COURT:  Well, I'll withhold them entirely if it's

2   settled.  Okay, thank you all.

3        MR. SMOLEV:  Hopefully the settlement will stick.

4   Thank you, Judge.

5        THE COURT:  Good day.

6        MR. SMOLEV:  Thank you.  Bye-bye.

7      (Proceedings concluded at 1:27 p.m.)

8                          * * * * *

9                        CERTIFICATION

10       I certify that the foregoing is a correct transcript

11  from the electronic sound recording of the proceedings in the

12  above-entitled matter.

13

14

15  _____        July 18, 2007

16  Jennifer Linnartz, AAERT Cert No. 339
    Certified Court Transcriptionist
17  For Rand Transcript Service, Inc.

18

19

20

21

22

23

24

25