1996 U.S. App. LEXIS 24940, *

LEXSEE


Analysis
As of: Oct 08, 2007

IN RE: ASTROLINE COMMUNICATIONS COMPANY, LIMITED PARTNER-SHIP, Debtor. MARTIN W. HOFFMAN, Trustee, Plaintiff-Appellant, - v. - ASTROLINE COMPANY, ASTROLINE COMPANY, INC., and ASTROLINE CONNECTICUT, INC., Defendants-Appellees.

No. 96-5006

UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

1996 U.S. App. LEXIS 24940

September 13, 1996, Decided

**NOTICE:** [*1] RULES OF THE SECOND CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

**SUBSEQUENT HISTORY:** Reported in Table Case Format at: 104 F.3d 350, 1996 U.S. App. LEXIS 38092.

**PRIOR HISTORY:** Appeal from the United States District Court for the District of Connecticut. (Arterton, J.). This cause came on to be heard on the transcript of record from the United States District Court for the District of Connecticut and was argued.

**DISPOSITION:** AFFIRMED.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff bankruptcy trustee sought review of the dismissal of his complaint by the United States District Court for the District of Connecticut in plaintiff's action under 11 U.S.C.S. § 554(b), seeking to avoid debtor's transfer of an option, a deposit, and the zoning rights to defendant property transferee. Plaintiff contended that the transfer was both constructively and actually fraudulent under Connecticut law.

**OVERVIEW:** Plaintiff bankruptcy trustee sought review of the dismissal of his action under 11 U.S.C.S. § 554(b), seeking to avoid debtor's transfer of an option, a deposit, and the zoning rights to defendant property purchaser. Plaintiff contended that the transfer was both constructively and actually fraudulent. The court affirmed the dismissal and held that the fact that appellees invested substantial money in debtor which could have, in turn, been used to pay creditors, was sufficient proof that defendant did not intend to defraud its creditors. Plaintiff contended that the transfer was constructively fraudulent because debtor received only a 90-day lease, with an estimated value of $ 14,000 per month, in exchange for the option, the deposit, and the zoning rights. The court could not hold that this amount was not less than "substantial consideration" for the debtor's transfer to defendant. The only reasonable interpretation of the lease was that it was for an original three-year term, and only thereafter terminable on 90 days' notice. The bankruptcy court's conclusion that defendant did not have an actual fraudulent intent was not clearly erroneous.

**OUTCOME:** The judgment of dismissal of plaintiff bankruptcy trustee's complaint seeking to avoid debtor's transfer of an option, a deposit, and the zoning rights to defendant property transferee was affirmed because the fact that defendant invested substantial money in debtor which could have, in turn, been used to pay creditors, was sufficient proof that defendant did not intend to defraud bankruptcy creditors.

**CORE TERMS:** lease, tower, deposit, fraudulent, zoning, fraudulent intent, constructively, conveyance, television broadcast, termination provision, notice, state law, applicable law, constructive fraud, actual fraud, de novo, clear error, option to purchase, put down, automatically, transferred, renewalbe, commence, invested, build, comma, site

**LexisNexis(R) Headnotes**

*Bankruptcy Law > Case Administration > Examiners, Officers & Trustees > Fraudulent Transfers > General Overview*
*Bankruptcy Law > Case Administration > Examiners, Officers & Trustees > Voidable Transfers > Unsecured Creditors*
[HN1]See 11 U.S.C.S. § 544(b).

*Bankruptcy Law > Case Administration > Examiners, Officers & Trustees > Fraudulent Transfers > General Overview*
*Real Property Law > Deeds > Enforceability*
*Torts > Business Torts > Fraud & Misrepresentation > Actual Fraud > General Overview*
[HN2]A party who seeks to set aside a conveyance as fraudulent bears the burden of proving that the conveyance was made without substantial consideration and that, as a result, the transferor was unable to meet his obligations (constructive fraud) or that the conveyance was made with fraudulent intent in which the transferee participated (actual fraud).

*Bankruptcy Law > Practice & Proceedings > Appeals > Standards of Review > Clear Error Review*
*Bankruptcy Law > Practice & Proceedings > Appeals > Standards of Review > De Novo Review*
*Contracts Law > Contract Interpretation > General Overview*
[HN3]In assessing a bankruptcy court's interpretation of a contract, the appellate court reviews its textual interpretation de novo, but its findings regarding extrinsic evidence only for clear error.

*Bankruptcy Law > Practice & Proceedings > Appeals > Standards of Review > Clear Error Review*
*Civil Procedure > Appeals > Standards of Review > Clearly Erroneous Review*
[HN4]The appellate court reviews a bankruptcy court's findings regarding a party's actual fraudulent intent only for clear error.

**COUNSEL:** FOR APPELLANT: Martin W. Hoffman, Hartford, CT.

FOR APPELLEES: Robert A. Izard, Jr., Robinson & Cole, Hartford, CT.

**JUDGES:** PRESENT: HONORABLE WILFRED FEINBERG, HONORABLE RICHARD J. CARDAMONE, HONORABLE JOSEPH M. McLAUGHLIN, Circuit Judges.

**OPINION**

**SUMMARY ORDER**

ON CONSIDERATION WHEREOF, it is hereby ordered, adjudged, and decreed that the judgment of the district court be and it hereby is AFFIRMED.

Astroline Communication Company Limited Partnership ("Debtor") formerly operated a television broadcasting station in Hartford, Connecticut, and owned a television broadcast tower located on real property at 580 Deercliff Road, Avon, Connecticut ("580 Deercliff"). To increase its broadcast power, Debtor required a larger tower. When the local Zoning Board denied Debtor permission to build a larger tower at 580 Deercliff, Debtor was forced to look for an alternative site. Debtor obtained an option to purchase [*2] a ninety-acre parcel at 376 Deercliff Road, Avon and West Hartford, Connecticut ("376 Deercliff"), for $ 900,000. Debtor put down a $ 100,000 partially refundable deposit in consideration for the option, and later put down an additional $ 30,000 deposit to extend the option.

Debtor never purchased 376 Deercliff. Rather, it transferred the option to Astroline Company ("Astroline"), and Astroline purchased the property. Astroline used Debtor's $ 130,000 deposit in making the purchase. Astroline then leased the property to Debtor, so that Debtor could construct its desired television broadcast tower on the land. Also, Debtor "gave up" its zoning rights at 580 Deercliff -- completely removing its old tower from that site -- to obtain authority to build the larger tower at 376 Deercliff (which was owned by Astroline).

Thus, in the entirety of the transaction, Debtor "transferred" to Astroline: (1) the option to purchase 376 Deercliff; (2) the $ 130,000 deposit; and (3) the zoning rights to allow construction of a television broadcast tower. Astroline, in turn, gave Debtor the lease on the property. The lease states:

> The term of this Lease shall be for three (3) years, and shall [*3] commence from the date of this Lease and be automatically renewalbe [sic] for one (1) year periods thereafter unless terminated by ninety (90) days written notice by either party.

The yearly rent under the lease was $ 10. Debtor actually possessed 376 Deercliff, under the lease, for over six years.

Debtor is now the subject of Chapter 7 liquidation proceedings in the United States Bankruptcy Court for the District of Connecticut (Robert L. Krechevsky, *Chief Bankruptcy Judge*). Martin Hoffman is the bankruptcy trustee. Hoffman brought an action in the bankruptcy court, pursuant to 11 U.S.C. § 554(b), seeking to avoid Debtor's transfer of the option, the deposit, and the zoning rights to Astroline. Hoffman argued that the transfer was both constructively and actually fraudulent under Connecticut law. The bankruptcy court found that the transfer was not fraudulent, and dismissed the complaint. The United States District Court for the District of Connecticut (Janet Bond Arterton, *Judge*) affirmed. Hoffman now appeals, renewing his arguments that the transfer was constructively and actually fraudulent.

[HN1]The Bankruptcy Code provides that "the trustee may avoid any transfer [*4] of an interest in property or any obligation incurred by the debtor that is voidable under applicable law . . . ." 11 U.S.C. § 544(b). Generally, "applicable law" means state law. *See Sender v. Simon*, 84 F.3d 1299, 1304 (10th Cir. 1996); *Acequia, Inc. v. Clinton (In re Acequia, Inc.)*, 34 F.3d 800, 809 (9th Cir. 1994). Under Connecticut state law:

> [HN2]A party who seeks to set aside a conveyance as fraudulent bears the burden of proving that the conveyance was made without substantial consideration and that, as a result, the transferor was unable to meet his obligations (constructive fraud) or that the conveyance was made with fraudulent intent in which the transferee participated (actual fraud).

*Tessitore v. Tessitore*, 31 Conn. App. 40, 42, 623 A.2d 496, 498 (1993), citing *Tyers v. Coma*, 214 Conn. 8, 570 A.2d 186 (1990).

*1. Constructive Fraud.* Hoffman argues that the transfer was constructively fraudulent because Debtor received only a ninety-day lease in exchange for the option, the deposit, and the zoning rights. We disagree. The only reasonable interpretation of the lease is that it was for an original three-year term, and only thereafter terminable [*5] on ninety days' notice.

[HN3]In assessing a bankruptcy court's interpretation of a contract, we review its textual interpretation *de novo*, *see Bellefonte Reinsurance Co. v. Aetna Casualty & Surety Co.*, 903 F.2d 910, 912 (2d Cir. 1990), but its findings regarding extrinsic evidence only for clear error, *see Network Publishing Corp. v. Shapiro*, 895 F.2d 97, 99 (2d Cir. 1990).

Hoffman urges that the ninety-day termination provision must apply to both the automatic renewals *and* the initial three-year period because "there is no comma or other punctuation separating the clause 'and shall commence from the date of this Lease' from 'and be automatically renewalbe [sic] for one year periods thereafter.'" However, a comma clearly separates the ninety-day termination provision from the crucial three-year term provision.

Furthermore, Debtor's managing general partner testified that the Debtor-Astroline deal "was done on the basis that [Debtor] would get a long-term favorable lease for [its] tower" as a "quid pro quo kind of exchange." The bankruptcy court did not clearly err when it found that this testimony supported Astroline's interpretation -- that the initial three-year [*6] term is unaffected by the termination provision.

Testimony established that the value of the lease was estimated at $ 14,000 per month. Over three years, then, the value to Debtor of its essentially rent-free occupancy of 376 Deercliff was over $ 500,000. Whether under a clearly erroneous or *de novo* standard of review, *see Harman v. First American Bank of Maryland (In re Jeffrey Bigelow Design Group, Inc.)*, 956 F.2d 479, 481 (4th Cir. 1992) ("in reviewing a decision concerning reasonably equivalent value for fraudulent transfers, the courts are split" as to the appropriate standard), we cannot say that this amount is less than "substantial consideration" for the Debtor's transfer of the option, deposit, and zoning rights to Astroline.

*2. Actual Fraud.* Hoffman also argues that the district court erred in finding that Astroline did not have fraudulent intent with respect to the Debtor-Astroline exchange. Again, we disagree.

[HN4]We review a bankruptcy court's findings regarding a party's actual fraudulent intent only for clear error. *See Equitable Bank v. Miller (In re Miller)*, 39 F.3d 301, 307 (11th Cir. 1994); *Acequia*, 34 F.3d at 805.

After the exchange took place, [*7] Astroline allowed Debtor to retain possession of 376 Deercliff for over six years, despite its right to terminate the lease on ninety days' notice after the initial three-year term. And, during this period, Astroline invested approximately $ 20,000,000 in Debtor. The bankruptcy court's conclusion, based upon this evidence, that Astroline did not have an actual fraudulent intent is not clearly erroneous. As the district court noted, "the fact that appellees invested [substantial] money in [Debtor] which could, in

turn, be used to pay creditors is sufficient proof that [Astroline] did not intend to defraud those creditors."

We have considered all of the arguments raised by Hoffman, and find them to be without merit.

Accordingly, the decision of the district court is AFFIRMED.