**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------- x
In re:                                  :         Chapter 11
                                       :
DELTA AIR LINES, INC., et al.,       :         Case No. 05-17923 (ASH)
                                       :
             Reorganized Debtors.     :         (Jointly Administered)
------------------------------------------------------------- x
THE NORTHWESTERN MUTUAL     :
LIFE INSURANCE COMPANY       :
                                         :
                        Appellant,        :         Civil Case No. 07-CV-7745 (RB)
                                         :         (ECF Case)
             -against-               :
                                         :
DELTA AIR LINES, INC. AND THE     :
POST-EFFECTIVE DATE COMMITTEE   :
OF DELTA AIR LINES, INC.           :
                                         :
                        Appellees.        :
------------------------------------------------------------- x

### AMENDED RESPONSE BRIEF OF APPELLEES DELTA
### AIR LINES, INC. AND THE POST-EFFECTIVE DATE COMMITTEE

| | |
|---|---|
| STROOCK & STROOCK & LAVAN LLP | AKIN GUMP STRAUSS HAUER & FELD LLP |
| Lawrence M. Handelsman (LH-6957) | Daniel H. Golden (DG-5624) |
| Kristopher M. Hansen (KH-4679) | David H. Botter (DB-2300) |
| Jayme T. Goldstein (JG-9054) | Mitchell P. Hurley (MH-0740) |
| 180 Maiden Lane | 590 Madison Avenue |
| New York, New York  10038 | New York, New York 10022 |
| Telephone: (212) 806-5400 | Telephone: (212) 872-1000 |
| Facsimile: (212) 806-6006 | Facsimile: (212) 872-1002 |
| | |
| *Counsel for Delta Air Lines, Inc* | *Counsel for the Post-Effective Date Committee* |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ ii

PRELIMINARY STATEMENT ................................................................. 1

STATEMENT OF BASIS OF APPELLATE JURISDICTION ..................................... 3

STATEMENT OF ISSUES PRESENTED ..................................................... 3

APPLICABLE STANDARD OF APPELLATE REVIEW ................................... 4

STATEMENTS OF THE CASE AND FACTS ............................................. 4

    A.    Background of Leveraged Leases and the Northwestern Transactions ................ 4

    B.    TIA/SLV Objection 2 and the Decision .................................................. 5

    C.    Motions For Reconsideration and the July 18 Order ............................... 8

ARGUMENT AND ANALYSIS ................................................................. 10

I.    THE BANKRUPTCY COURT CORRECTLY DISALLOWED THE TIA
    CLAIMS BASED ON THE LANGUAGE OF THE PARTIES' CONTRACTS ............ 10

    A.    Judge Gropper's Recent Northwest Decision Supports the Bankruptcy
        Court's Decision and Ruling on the Motions For Reconsideration ...................... 10

    B.    The Bankruptcy Court Correctly Held That the Exclusion in Section 6(c)
        of the TIAs Does Not Require Payment "In Cash" ................................. 12

    C.    The Bankruptcy Court Correctly Held That the Exclusion in Section 6(c)
        of the TIAs Does Not Require Payment "In Full" .................................. 14

    D.    The Bankruptcy Court's Rulings Are Fully Consistent With Travelers ................ 16

    E.    Northwestern's Other Contract Arguments Were Not Presented to the
        Bankruptcy Court and Cannot be Raised for the First Time on Appeal, and
        in any Event are Without Merit .......................................................... 17

    F.    Claim No. 5335 was Calculated in Accordance With, and Will Receive a
        Distribution "Determined by Reference" To, SLV ................................. 18

II.    REGARDLESS OF THE CONTRACTUAL TERMS OF THE OPERATIVE
    DOCUMENTS, THE LAW REQUIRES DISALLOWANCE OF DUPLICATIVE
    CLAIMS TO THE EXTENT OF THE OVERLAP ...................................... 20

CONCLUSION ........................................................................................ 25

# TABLE OF AUTHORITIES

## CASES

425 Fifth Avenue Realty Associates v. Yeshiva University,
    228 A.D.2d 178 (1st Dep't 1996)...................................................................13

Adarand Constructors, Inc. v. Moneta,
    534 U.S. 103 (2001)...................................................................................18

In re Ames Department Stores, Inc.,
    No. 93 Civ. 4014, 1995 WL 311764 (S.D.N.Y. May 18, 1995)........................15

In re Chateaugay Corp.,
    115 B.R. 760 (Bankr. S.D.N.Y. 1990), aff'd, 130 B.R. 690 (S.D.N.Y. 1991),
    vacated by agreement of the parties, Nos. 89 Civ. 6012, 90 Civ. 6048, 1993 WL
    388809 (S.D.N.Y. June 16, 1993)...................................................................22

Diversified Graphics, Ltd. v. Groves,
    868 F.2d 293 (8th Cir. 1989) .........................................................................21

In re Drexel Burnham Lambert Group,
    138 B.R. 687 (Bankr. S.D.N.Y. 1992)............................................................15

In re Enron Corp.,
    364 B.R. 482 (S.D.N.Y. 2007)........................................................................4

In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey,
    160 B.R. 882 (Bankr. S.D.N.Y. 1993).................................................21, 22, 24

In re Fobian,
    951 F.2d 1149 (9th Cir. 1991) ......................................................................16

In the Matter of Brinke Transportation, Inc.,
    No. 87-03785, 1989 WL 233147 (Bankr. D.N.J. Jan. 23, 1989)......................22

Raleigh v. Illinois Department of Revenue,
    530 U.S. 15 (2000)...............................................................................16, 17

Schmidt v. Magnetic Head Corp.,
    97 A.D.2d 151 (2d Dep't 1983)......................................................................13

In re Simetco, Inc.,
    No. 93-61772, 1996 WL 651001 (Bankr. N.D. Ohio Feb. 15, 1996)...............22

In re T.R. Acquisition Corp.,
    309 B.R. 830 (S.D.N.Y. 2003)......................................................................23

Travelers Casualty & Surety Co. of America v. Pacific Gas & Electric Co.,

127 S. Ct. 1199 (2007)......................................................................................2, 16, 17

In re Vebeliunas,
    332 F.3d 85 (2d Cir. 2003)......................................................................................4

## STATUTES

11 U.S.C. § 101(5) ......................................................................................3, 21

11 U.S.C. § 1129 ......................................................................................15

11 U.S.C. § 1141(d) ......................................................................................15

11 U.S.C. § 502(b) ......................................................................................17

11 U.S.C. § 502(e) ......................................................................................23

11  U.S.C. § 524(a) ......................................................................................15

28 U.S.C. § 158(a)(1) ......................................................................................3

I.R.C. § 671 ......................................................................................5

Rev. Rul. 57-390, 1957-2 C.B. 326 ......................................................................................5

Rev. Rul. 85-13, 1985-1 C.B. 184 ......................................................................................5

Treas. Reg. § 1.671-3(a)(1)……………………………………………………………….…….5

## MISCELLANEOUS

BLACK'S LAW DICTIONARY 1165 (8th ed. 2004) ......................................................................................12

Jay Lawrence Westbrook, A Functional Analysis of Executory Contracts,
    74 Minn. L. Rev. 227 (1989) ......................................................................................15

Appellees Delta Air Lines, Inc. ("Delta") and the Post Effective Date Committee (the "Committee") submit this amended[1] brief (1) in response to the brief (the "NW Br.") filed by Northwestern Mutual Life Insurance Company ("Northwestern") in support of its appeal (the "Appeal") from the Order with Respect to TIA/SLV Objection 2 (the "July 18 Order") entered by the Bankruptcy Court for the Southern District of New York on July 18, 2007 [D 46],[2] and (2) in support of Appellees' cross-appeal (the "Cross-Appeal")[3] from the July 18 Order.

## PRELIMINARY STATEMENT

This Appeal arises out of tax-driven "leveraged lease" financings. In those financings, Delta entered into: (i) leases ("Leases") which provided for the payment of a "Stipulated Loss Value" ("SLV") if a default occurred, and (ii) tax indemnity agreements ("TIAs") under which Delta agreed to compensate Northwestern if Northwestern incurred certain tax losses.

Some events that give rise to claims under the TIAs ("TIA Claims") are also events of default under the Leases, which give rise to claims to recover SLV ("SLV Claims"). Northwestern has acknowledged that the calculation of SLV already includes an amount intended to compensate Northwestern for potential tax losses in connection with a Lease default. See "Response of The Northwestern Mutual Insurance Company To TIA/SLV Objection 2," dated March 22, 2007 at 16-17 (SLV includes an amount "sufficient to compensate it [Northwestern] for the acceleration of taxable income resulting from the early termination of the

---

[1]    This amended brief supersedes the brief filed by the Appellees on November 13, 2007, in order to comply with the "Individual Practices of Hon./ Richard M. Berman."

[2]    The notation "D" refers to Appellant's Designation of the Record and the notation "CD" refers Appellees' Designation and Counter-Designation of the Record.

[3]    Pursuant to a September 7, 2007 letter to the Clerk of the Bankruptcy Court, the Appellees formally withdrew their Notice of Appeal in lieu of maintaining their Notice of Cross-Appeal.

Lease"). In this respect, SLV Claims and TIA Claims are duplicative of each other. The Northwestern TIAs address that potential duplication by providing that Northwestern is not entitled to a TIA Claim if its tax losses arise as a result of any event whereby Delta pays SLV or "an **amount determined by reference thereto** . . .". <u>See</u> TIA at 16 (emphasis added).[4]

Northwestern pledged the rights under the Leases to an Indenture Trustee, The Bank of New York ("<u>BNY</u>"), who represented various lenders. Delta has agreed to the allowance of claims by BNY under the Leases. Those claims plainly are calculated by reference to SLV. The Bankruptcy Court (Judge Hardin) held, under the plain language of the parties' TIAs, that the SLV Claims act as a bar to Northwestern's TIA Claims.

Northwestern's arguments on Appeal are without merit. Northwestern first contends that the Bankruptcy Court allegedly used a "bankruptcy context" rule of contract interpretation, in violation of <u>Travelers Casualty & Surety Co. of America v. Pacific Gas & Elec. Co.</u>, 127 S. Ct. 1199 (2007). The Bankruptcy Court did no such thing. As the Bankruptcy Court explained in detail when it denied Northwestern's motion for reconsideration of its May 16, 2007 Decision on TIA/SLV Objections 1 and 2 (the "<u>Decision</u>"), the Decision was based on: (i) explicit provisions of the Bankruptcy Code; and (ii) ordinary rules of contract construction, and was fully consistent with <u>Travelers</u>. <u>See</u> "Transcript of Telephone Conference," July 10, 2007 [D 45] at 8-15.

Second, Northwestern argues that the Section 6(c) exclusion in its TIAs does not apply unless BNY's SLV Claims are paid "in full, in cash." In this regard, it is Northwestern who is trying to rewrite the terms of the parties' agreements, as the words "in full, in cash" do not appear in Section 6(c) of the TIAs.

---

[4]   Appellees and Appellant have agreed to use the Operative Documents (as defined herein) for Tail No. N803DE for purposes of contract references. <u>See</u> NW Br. at 2.

Third, Northwestern asserts that the SLV Claim asserted by BNY with respect to one of Northwestern's transactions (Tail No. N182DN) does not constitute a claim for SLV or an "amount determined by reference thereto" because the Lease for that transaction allegedly forbids the particular way in which the Lenders have elected to exercise remedies. Northwestern's contention is flatly contrary to the language of the parties' agreements and the terms of the settlement to which Delta has agreed.

For these reasons, and as explained further below, Northwestern's Appeal should be denied. Alternatively, Delta's and the Committee's Cross-Appeal should be granted. A single loss (*e.g.,* Northwestern's alleged tax losses) can give rise to only one "right to payment" under the Bankruptcy Code, and only a single claim can be allowed with respect to such loss. See 11 U.S.C. § 101(5) (defining a "claim" as a "right to payment"). Since the parties have admitted that SLV Claims and TIA Claims are duplicative of each other, the allowance of the SLV claims bars the duplicative TIA Claims as a matter of law.

## **STATEMENT OF BASIS OF APPELLATE JURISDICTION**

This Court has jurisdiction over the Appeal and the Cross-Appeal pursuant to 28 U.S.C. § 158(a)(1) and Rule 8001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). The July 18 Order is a final, appealable order. See 28 U.S.C. § 158(a)(1).

## **STATEMENT OF ISSUES PRESENTED**

1.        Whether the Bankruptcy Court correctly held that Northwestern's TIA Claims were barred by the terms of Northwestern's TIAs.

2.        Whether the Bankruptcy Court erred as a matter of law in failing to grant TIA/SLV Objection 2 on the ground that the TIA Claims seek recovery for losses that are

already covered by SLV Claims, and the allowance of both claims would impermissibly result in multiple claims allowances for a single loss.

## APPLICABLE STANDARD OF APPELLATE REVIEW

On appeal, a federal district court reviewing an order of the bankruptcy court accepts its factual findings unless they are clearly erroneous, pursuant to Bankruptcy Rule 8013, and reviews its conclusions of law *de novo*.  See, e.g., In re Enron Corp., 364 B.R. 482, 485 (S.D.N.Y. 2007); In re Vebeliunas, 332 F.3d 85, 90 (2d Cir. 2003).

## STATEMENTS OF THE CASE AND FACTS

### A.    *Background of Leveraged Leases and the Northwestern Transactions*

A summary of the general components of a typical leveraged lease transaction is set forth in the Decision, and a summary of the particular transactions that are the subject of this Appeal is set forth in TIA/SLV Objection 2.  [D 2].  See Decision at 3-4; TIA/SLV Objection 2.  Each transaction includes these basic features:

(a)  The parties enter into a master agreement (a "Participation Agreement") that specifies the parties' roles and identifies other agreements to be executed.

(b)  A trust (the "Owner Trust") receives (i) an equity contribution from its beneficiary (the "Owner Participant") and (ii) borrowings from one or more lenders (the "Lenders"), and uses the funds to purchase one or more aircraft.

(c)  The Owner Trust enters into a Lease with Delta; and

(d)  The Owner Trust grants a security interest in the aircraft, and in the Lease, to an indenture trustee acting for the lenders (the "Indenture Trustee").

See Decision [D 39] at 3-4.

4

Leveraged lease transactions provide significant tax benefits to Owner Participants.  The Owner Trusts are "grantor trusts" whose existence is ignored for tax purposes, so that all income and deductions are attributable to the Owner Participants.  See I.R.C. § 671; Treas. Reg. § 1.671-3(a)(1); Rev. Rul. 85-13, 1985-1 C.B. 184; Rev. Rul. 57-390, 1957-2 C.B. 326.  As a result, Owner Participants are entitled to take accelerated depreciation deductions with respect to the aircraft.  See Decision at 3-4.

Leases in leveraged lease transactions provide for the payment of SLV in the event of a default.  SLV is determined by reference to a schedule attached to the Lease that lists either dollar amounts to be paid or SLV percentages which are multiplied by a fixed number (*e.g.,* the lessor's cost).  The calculation of SLV includes compensation for the potential adverse tax consequences to the Owner Participant from a foreclosure or other event of default.  Id. at 4.

Lessees in leveraged lease transactions generally enter into TIAs with Owner Participants.  TIAs cover many events, only some of which constitute events of default under a Lease.  However, since some events that give rise to TIA Claims also are events that give rise to SLV Claims, the parties' agreements usually contain provisions which recognize and eliminate the potential overlap between the SLV Claims and TIA Claims.  Id.

**B.**    ***TIA/SLV Objection 2 and the Decision***

TIA/SLV Objection 2, which the Debtors and the Official Committee of Unsecured Creditors  (the "Official Committee")[5] filed on February 20, 2007, argued that the TIA Claims filed by Northwestern (Claim Nos. 4064, 4065 and 4078, collectively the "Northwestern TIA Claims") should be expunged for two reasons.  First, Delta and the Official Committee argued

---

[5]    Pursuant to its confirmed Joint Chapter 11 Plan of Reorganization (the "Plan"), the Committee was deemed successor-in-interest to the Official Committee.

that the TIA Claims and certain SLV claims (the "<u>BNY SLV Claims</u>") filed by BNY sought compensation for the same tax losses incurred by Northwestern; that a single loss can only give rise to a single claim in bankruptcy; and that overlapping claims could not be allowed.  <u>See</u> TIA/SLV Objection 2 at 2, 9-14.[6]  Second, Delta and the Official Committee argued that Section 6(c) of each of Northwestern's TIAs made clear that Northwestern would not be entitled to any claim in respect of any "Loss" arising out of:

> (c)  Any event whereby the Lessee pays Stipulated Loss Value or Termination Value **or an amount determined by reference thereto**, except to the extent that the calculation of Stipulated Loss Value or Termination Value does not accurately reflect the timing of any such event for federal income tax purposes.

<u>See</u> TIA at 16 (emphasis added); TIA/SLV Objection 2 at 2, 14-15.

The Bankruptcy Court heard oral argument on March 30, 2007 and issued the Decision on May 16, 2007.  The  Bankruptcy Court first overruled the Debtor's and the Official Committee's argument that a single loss could only give rise to a single claim.  The Bankruptcy Court noted that the BNY SLV Claims had been assigned to the Indenture Trustees, and held that the principle of law precluding double recovery for a single injury "has never been applied by any court to void separate *contract* obligations owed to different parties under different contracts."  <u>See</u> Decision at 7.  The Bankruptcy Court held that "[i]f Delta has contracted to pay duplicative claims, it must pay both."  <u>Id.</u> at 8.

The Bankruptcy Court also held, however, that the parties' contracts (the "<u>Operative Documents</u>") themselves recognized the duplication between TIA Claims and SLV Claims and

---

[6]    Northwestern has deliberately mischaracterized this argument, contending that Delta and the Official Committee objected "merely" because the Northwestern TIA Claims and the BNY SLV Claims arose from the same leveraged lease transactions.  NW Br. at 3.  Rather, Delta and the Official Committee objected because those claims both sought recovery for Northwestern's tax losses and were therefore duplicative of each other.

required that two of Northwestern's TIA Claims (Claim Nos. 4064 and 4078) should be expunged. See Decision at 6-8, 12-15. The Bankruptcy Court rejected Northwestern's contention that the TIAs required that SLV must be paid "in full":

> In asserting that Section 6(c) is triggered only if Delta pays the *full amount* of SLV in *U.S. Dollars*, the owner participant ignores an important clause contained in Section 6(c) and imports into that provision conditions which are not found there . . . The disjunctive "or an amount" makes clear that the amount paid need not be the full amount of SLV, provided that it is "determined by reference" to SLV.

Id. at 14. The Bankruptcy Court also rejected Northwestern's contention that Section 6(c) would only apply if payment were made in US dollars:

> Moreover, there can be no doubt that the parties contemplated the possibility of bankruptcy on the part of the lessee, since the constituent contracting documents refer in various ways to "bankruptcy [or] other proceedings for the relief of debtors." The word "pays" and the phrase "or an amount determined by reference thereto" must be construed in such a manner as to comport with the meaning of payment in the context of bankruptcy, which the parties expressly contemplated in the TIA, as well as in the other agreements. There is rarely likely to be full payment of claims in bankruptcy, and in the ordinary course of any Chapter 11 case payment of claims under a plan may be in cash or equity or debt securities of the debtor or a combination of cash and securities.

Id. Judge Hardin also observed that:

> [t]he fact that Section 3(d) of the Lease expressly requires payment in U.S. dollars certainly demonstrates that the parties knew how to expressly provide for payment in U.S. dollars when that is what they intended. But it does not support the argument that this provision should be imported to Section 6(c) of the TIA . . . .

Id. Consequently, the Bankruptcy Court determined that when Delta makes a distribution on the BNY SLV Claims (in stock in the Reorganized Debtors pursuant to its Plan) with respect to Tail Nos. N803DE and N804DE, those claims will have been paid "in 'an amount determined by reference' to SLV within the meaning of Section 6(c) and in an amount and manner contemplated by the parties in the context of a bankruptcy." Id. at 15.

With respect to Claim No. 4065, pertaining to Tail No. N182DN, however, the Bankruptcy Court overruled TIA/SLV Objection 2. The Bankruptcy Court reviewed the modified restructuring term sheet dated February 15, 2006 (the "Bingham Term Sheet")[7] – which describes, among other things, the deficiency claim to be allowed in favor of the Indenture Trustee – and held that the Bingham Term Sheet (and Claim No. 5335, BNY's deficiency claim) did not include a reference to SLV. Id.

### C. *Motions For Reconsideration and the July 18 Order*

After a telephonic conference held by the Bankruptcy Court on May 21, 2007,[8] Delta and the Committee, and Northwestern, each filed motions for reconsideration (the "Motions for Reconsideration"). Delta and the Committee asked for reconsideration of the Decision as it related to Tail No. N182DN, suggesting that the Bankruptcy Court had overlooked the explicit reference to SLV in the Bingham Term Sheet. [D 43].

Northwestern sought reconsideration of the Decision as to Tail Nos. N803DE and N804DE, rehashing its arguments that Section 6(c) should not bar the Northwestern TIA Claims for those tails unless the BNY SLV Claims were paid "in full, in cash" and alleging (for the first time) that the Bankruptcy Court used "bankruptcy-specific" rules of contract interpretation in violation of Travelers, which Northwestern had not previously cited. [D 44].

---

[7]    The Bingham Term Sheet was approved pursuant to the Bankruptcy Court's February 15, 2006 Order Approving a Modified Term Sheet and an Extension of Section 1110 Deadlines, and Authorizing Agreements to Restructure Transactions Affecting Eighty-Eight Aircraft and Associated Engines, Equipment and Documents (the "Term Sheet Order"). [CD 1].

[8]    Northwestern incorrectly alleges that the Bankruptcy Court convened that conference because the Court had "second thoughts" about the Decision. See NW Br. at 9. However, as the transcript of the conference plainly shows, the conference was convened for the purpose of discussing "test case" issues. See May 21, 2007 Transcript, [D 41], at 6-8.

On July 10, 2007, the Bankruptcy Court held a telephonic conference to announce its ruling on the Motions for Reconsideration. First, the Bankruptcy Court granted the motion filed by Delta and the Committee and reversed its ruling with respect to Tail No. N182DN, with the effect being that all three of the Northwestern TIA Claims would be expunged. See July 10 Transcript at 8. Specifically, the Bankruptcy Court held that:

> Well, my view on that is that Delta is correct. I did incorrectly rule that the term sheet was not predicated on a calculation based on SLV. . . . The term sheet says what it says very clearly.

Id. Northwestern's counsel argued again during this conference that the remedies set forth in the Bingham Term Sheet were in violation of the Leases because they permitted Delta to re-lease the aircraft, and the Bankruptcy Court noted that "I have, as I said, considered that on the motion to reconsider, and I disagree with it. I disagree with your position." Id. at 9.

The Bankruptcy Court next observed that its ruling in the Decision did not apply a special "bankruptcy" rule of contract interpretation and did not offend the Travelers decision:

> . . . in essence, the Travelers case says that rights and obligations of parties that are defined by contract are matters for state law, and in construing those rights and obligations under contract, the Court is not at liberty to vary those rights and obligations based upon bankruptcy law or provisions of the Bankruptcy Code. I have no problem at all with that line of reasoning in the Supreme Court decision in Travelers which, it seems to me, is very, very basic and putting aside the fact that the Travelers case is now the law of the land, I had always thought that that was the rule at all times. I don't think it is implicated here.

Id. at 11. Contrary to Northwestern's mischaracterization of the Bankruptcy Court's holding below on this point, the Bankruptcy Court made clear that its ruling was based on ordinary principles of contract interpretation:

> I also pointed out, and this may be, I think, where there is some misunderstanding on the part of Northwestern Mutual with regard to what I had in mind, I pointed out that language used in an agreement must be construed in a manner that will reflect the contemplation and understanding and, therefore, intent of the parties. That, I

9

believe, is a fundamental principle of state law in the construction of contracts, and in the interpretation of contractual provisions.

What I said was, or meant to convey in my opinion, was that when the parties use the phrase in Paragraph 6(c), refer to an event whereby the lessee pays stipulated loss value or an amount determined by reference thereto, the parties must have had, in their contemplation, understanding and, therefore, their intent, the self-evident postulate that stipulated loss value might be required to be paid, or an amount determined by reference to stipulated loss value might be required to be paid in the context of bankruptcy. And in that context, it would be perfectly clear to anybody familiar with bankruptcy and presumably, the lawyers and principals who were responsible for this agreement, that the concept of payment in bankruptcy must contemplate the possibility, indeed, the nearly certain probability, that the payment would not be dollar-for-dollar in cash.

In so ruling, I was not making a ruling that bankruptcy law supervened to govern the terms of this agreement that we're concerned with, Section 6(c). Rather, my point was that in construing what the parties contemplated and, therefore, intended in writing Section 6(c) as they did, they must have contemplated the possibility, if not the likelihood, of an obligation to pay SLV in the context of bankruptcy . . . .

Id. at 12-13. Finally, with respect to Northwestern's contention that the TIAs did not refer to

bankruptcy, the Bankruptcy Court cited numerous other provisions in the Operative Documents

which referred to bankruptcy. Id. at 14-15.[9] The July 18 Order reflected these rulings.

## ARGUMENT AND ANALYSIS

I.  **THE BANKRUPTCY COURT CORRECTLY DISALLOWED THE TIA CLAIMS BASED ON THE LANGUAGE OF THE PARTIES' CONTRACTS**

A.  *Judge Gropper's Recent Northwest Decision Supports the Bankruptcy Court's Decision and Ruling on the Motions For Reconsideration*

A recent unreported decision by Judge Allan L. Gropper in the Bankruptcy Court,

attached hereto as Exhibit 1,  involves the interpretation of TIA and SLV contract provisions

---

[9]  Northwestern attempts to create the impression that the Bankruptcy Court never considered the actual terms of Northwestern's Operative Documents. See NW Br. at 5, 10. This argument is both insulting to the Bankruptcy Court and contrary to the multitude of references to the terms of those documents in the Decision and the July 10 Transcript.

relevant to those at issue in this Appeal and addresses a number of the arguments that have been raised by Northwestern.  See In re Northwest Airlines Corp., Case No. 05-17930 (Bankr. S.D.N.Y. July 27, 2007).

Northwest Airlines was a party to leveraged leases governing ten aircraft.  The leases were rejected, and the aircraft were sold through a foreclosure process.  Northwest then settled the lenders' SLV Claims, and filed a motion seeking approval of the settlement.  Objections were filed by General Foods Credit Corporation ("GFCC"), the owner participant in the underlying leveraged leases for five of the aircraft.  See Northwest Decision at 5.

GFCC's TIAs included an exclusion for tax losses that occurred "as a direct result" of various events.  Section 5(c) provided that no TIA Claim would exist if a loss resulted from:

> [a]ny event as a result of which lessee or any other person has paid stipulated loss value or termination value, or paid the amount required to be the greater of the fair market value of the aircraft and stipulated loss value or termination value in accordance with the provisions of the operative documents, except to the extent that such payment does not reflect the timing of the occurrence for federal income tax purposes; . . .

Id. at 10 (emphasis added).  Section 7 of the TIAs also provided that SLV would be reduced if the lessee were "required" to pay any amount under the TIAs.  Id. at 8-9.

GFCC generally argued that the operative documents required that its TIA Claims be allowed and that the SLV Claims be reduced accordingly.  Judge Gropper held, however, that because GFCC's TIA Claims were extinguished by Section 5(c), no amount was "required to be paid" under Section 7 and there was no reason to reduce the SLV Claims.  Id. at 10.

GFCC argued that Northwest was not "paying" SLV because, under Northwest's plan of reorganization, SLV would not be paid "in full, in cash."  Id. at 13.  Judge Gropper rejected this argument, holding that the word "pays" does not require SLV to be paid in cash or in full.  Instead, he held – citing Judge Hardin's Decision – that the references to payments of SLV

11

"'must be construed in such a manner as to comport with the meaning of payment in the context of bankruptcy." Id. at 13-14 (quoting the Decision). Although the leases required all payments to be made in cash, Judge Gropper declined to import that requirement into Section 5(c) of the TIAs. He also noted that the operative documents contemplated bankruptcy and did not depend on payment in all cases in cash and in full. Id. at 13-15. Judge Gropper further held that the allowance of GFCC's TIA Claims would produce results that were "at odds with the basic structure of the transaction" and that "payments to the owner-trustee for any tax, expense, or other losses come forth in line only after payment to the debt holders to make them whole." Id.

**B.** ***The Bankruptcy Court Correctly Held That the Exclusion in Section 6(c) of the TIAs Does Not Require Payment "In Cash"***

Northwestern, similarly to GFCC in the Northwest case, argues that Section 6(c) of the TIAs does not apply to bar the Northwestern TIA Claims unless SLV is paid "in cash." However, the words "in cash" do not appear in Section 6(c). Northwestern's effort to add additional words to Section 6(c) was properly rejected by the Bankruptcy Court.

Black's Law Dictionary defines "payment" as the "performance of an obligation by the delivery of money or some other valuable thing accepted in full or partial discharge of the obligation." BLACK'S LAW DICTIONARY 1165 (8th ed. 2004). Cash is one way to discharge an obligation, but it is not the only way. In fact, the Operative Documents contemplate many circumstances in which the obligation to pay SLV may be satisfied other than through payments of cash. Section 15(c) of the Leases, for example, provides that the "Fair Market Value" of the aircraft is to be treated as partial satisfaction of the obligation to pay SLV, regardless of whether a sale occurs. See Lease at 58-59. Similarly, Section 15(d) of the Leases treats "sale proceeds" as payments towards the Lessee's SLV obligation. Section 7.03(c) of the Indentures also

12

explicitly states that such sale proceeds may include forms of property other than "cash" payments:

> If an Indenture Event of Default shall have occurred and be continuing and the Indenture Trustee shall be entitled to exercise remedies hereunder, and . . . may sell, assign, transfer and deliver the whole or, from time to time, to the extent permitted by law, any part of the Indenture Estate . . . **for cash or credit or for other property**. . .

See Indenture at 43 (emphasis added).

Northwestern argues that the Leases require certain payments in cash. However, the Northwestern TIA Claims arise under the **<u>TIAs</u>**, not the Leases, and Northwestern has not cited to a single provision in the TIAs themselves that requires a cash payment of SLV. As the Bankruptcy Court held in its Decision, Section 6(c) of the TIAs "could have required payment [of SLV] in cash, but it does not." <u>See</u> Decision at 14.

Moreover, the fact that sections of the Operative Documents other than Section 6(c) of the TIAs referred to "cash" payments merely underscores the parties' ability to include such language when it was appropriate. New York state contract law is clear that this Court should not "interpret an agreement as impliedly stating something which the parties have neglected to specifically include." <u>425 Fifth Ave. Realty Assocs. v. Yeshiva Univ.</u>, 228 A.D.2d 178 (1st Dep't 1996) (quoting <u>Rowe v. Great Atl. & Pac. Tea Co.</u>, 46 N.Y.2d 62, 72 (N.Y. 1978)). <u>See also</u> <u>Schmidt v. Magnetic Head Corp.</u>, 97 A.D.2d 151, 157 (2d Dep't 1983) (holding that when a provision of a contract is clear on its face it should be respected).

Northwestern contends that interrelated contracts involved in a single transaction should be interpreted as a whole, and concludes that the "cash" payment provisions of the Leases should therefore be imported into Section 6(c) of the TIAs. <u>See</u> NW Br. at 19-21. As noted above, however, the Operative Documents specify other circumstances in which an SLV obligation is

13

satisfied without payment of cash.  Additionally, as a whole, the Operative Documents contain a host of references to bankruptcy and (as the Bankruptcy Court held) contemplated the possibility that payments would not be made in cash in a "bankruptcy context."  For example, Section 7(c)(iii) of the Participation Agreements states that the Participation Agreements, Indentures and TIAs constitute binding obligations of the Owner Participant except:

> . . . . as  may be limited by applicable **bankruptcy, insolvency, reorganization, moratorium, receivership, fraudulent conveyance or similar laws** or equitable principles affecting creditors' rights and remedies. . . .

Participation Agreement at 48 (emphasis added).[10]

Given the explicit language of the Operative Documents, the references in those documents to bankruptcy, the instances in which the documents themselves envisioned payments in property other than "cash," and the fact that Northwestern did not object to Delta's Plan (which plainly stated that claims would be paid in stock), the Bankruptcy Court correctly refused to permit Northwestern to import a "cash" payment requirement into Section 6(c) of the TIAs.

**C.    *The Bankruptcy Court Correctly Held That the Exclusion in Section 6(c) of the TIAs Does Not Require Payment "In Full"***

Northwestern also argues that Section 6(c) of the TIAs does not apply unless SLV is paid "in full."  Again, however, the words "in full" do not appear in Section 6(c).  In fact, the alleged requirement of payment "in full" is contrary to the plain language of Section 6(c), which applies if the Lessee pays SLV "***or an amount determined by reference thereto***."

---

[10]    The following are representative of the many other references to "bankruptcy" in the Operative Documents: (i) pages **39** (describing bankruptcy filing of the Trust Estate, Owner Trustee or Owner Participant) and **48** (referring to remedies and procedures after a default under the Indenture in the bankruptcy context) of the Indentures; (ii) pages **4** (addressing "Bankruptcy Default" definition in Lease) and **73** (referencing "Bankruptcy Default" in context of request by Delta to change aircraft registration) of the Participation Agreements; and (iii) pages **3** (defining "Bankruptcy Default" by Lessee as an "Event of Default") and **56** (listing Lessee's bankruptcy petition as an "Event of Default") of the Leases.

Northwestern's attempt to rewrite the plain language of Section 6(c) and add a requirement of payment "in full" is also contrary to federal bankruptcy law and policy. A pre-petition contractual requirement that an obligation be "paid" does not mean, in bankruptcy, that a creditor may demand full payment of the claim in U.S. dollars. Otherwise, no debtor would ever be able to confirm a plan of reorganization or obtain a discharge.

The most basic rule of bankruptcy is that all general unsecured creditors share their losses on a *pro rata* basis. Many courts in this circuit have recognized that remuneration in "tiny bankruptcy dollars" satisfies bankruptcy claims. See, e.g., In re Ames Dep't Stores, Inc., No. 93 Civ. 4014, 1995 WL 311764 at *2 (S.D.N.Y. May 18, 1995) ("[bankruptcy] law allows for compensation only in bankruptcy dollars"); In re Drexel Burnham Lambert Group, 138 B.R. 687, 709 (Bankr. S.D.N.Y. 1992) (bankrupt estates have a right to pay claims in bankruptcy dollars); see also Jay Lawrence Westbrook, A Functional Analysis of Executory Contracts, 74 Minn. L. Rev. 227, 252-53 (1989) ("The *pro rata* rule requires that unsecured creditors share proportionally in distribution, with the result that almost never are they paid in full.").

Bankruptcy law permits Delta to fully pay and discharge its SLV obligations by allowing the BNY SLV Claims and making distributions on them through stock pursuant to its Plan. Allowance of the BNY SLV Claims constitutes payment of full SLV – upon the allowance of those claims, and the discharge of Delta's obligations with respect thereto, Delta's payment obligations concerning the Northwestern Tails are discharged in full. See 11 U.S.C. § 1129; 11 U.S.C. § 524(a) (injunction against pursuing claim after discharge); 11 U.S.C. § 1141(d) (discharge from claims after confirmation of plan). That Northwestern may not recover its tax losses is simply a consequence of Delta's bankruptcy and the fact that the BNY SLV Claims were pledged to Lenders with superior rights to Northwestern's tax recoveries due to that pledge.

15

**D.**    *The Bankruptcy Court's Rulings Are Fully Consistent With Travelers*

Northwestern argues that the Bankruptcy Court acted contrary to the Supreme Court's decision in <u>Travelers Casualty & Surety Co. of America v. Pacific Gas & Elec. Co.</u>, 127 S.Ct. 1199 (2007).  This argument is not only contrary to the Bankruptcy Court's detailed explanations of its rulings, it is also based on a misinterpretation of the <u>Travelers</u> decision.

In <u>Travelers</u>, PG&E Gas & Electric Co. ("<u>PG&E</u>") filed for chapter 11 bankruptcy protection.  Travelers Casualty & Surety Co. of America ("<u>Travelers</u>"), which had previously issued a surety bond to guarantee PG&E's payment of state workers' compensation benefits, filed a claim in the bankruptcy case to protect itself should PG&E default on paying those benefits.  <u>Id.</u> at 1202.  With the bankruptcy court's approval, PG&E inserted language into its reorganization plan and disclosure statement to protect Travelers in case of such a default.  <u>Id.</u> Litigation over the negotiated language was resolved by a court-approved stipulation.  <u>Id</u>. at 1202-03.  Travelers then filed an amended claim to recover its contractually entitled attorneys fees and PG&E objected based on a rule adopted by the Ninth Circuit in its decision in <u>In re Fobian</u>, 951 F.2d 1149 (9th Cir. 1991), which held that where litigated issues involve issues peculiar to federal bankruptcy law rather than contract enforcement, attorney's fees in bankruptcy proceedings are not generally awarded.  <u>Id.</u> at 1203.  The bankruptcy court rejected Travelers' claim on that basis, and the District Court and the Ninth Circuit affirmed.  <u>Id.</u>

The Supreme Court reversed.  While the Supreme Court agreed that state law contract rights are "subject to any qualifying or contrary provisions of the Bankruptcy Code," <u>id.</u> at 1204-05 (quoting <u>Raleigh v. Ill. Dep't of Revenue</u>, 530 U.S. 15, 20 (2000) (citing <u>Butner v. United States</u>, 440 U.S. 48 at 55, 59 (1979)), it noted that the "Fobian rule" had no textual support in the Bankruptcy Code and that disallowance therefore could only occur if Travelers' claims were

16

barred under state law. Since that was not the case, the Supreme Court held that the claims should have been allowed. Id. at 1204-07; see also 11 U.S.C. § 502(b).

Northwestern argues that the Bankruptcy Court violated Travelers by imposing its own special "bankruptcy context rule of contract interpretation." That argument is clearly without merit. First, the Bankruptcy Court made abundantly clear in its ruling on the Motions for Reconsideration that the explicit language of the Operative Documents reflected the fact that the parties themselves contemplated bankruptcy, including in the very Lease "default" provisions giving rise to the BNY SLV Claims. The Bankruptcy Court therefore used ordinary rules of contract interpretation in rejecting Northwestern's argument that Section 6(c) only applies if payment "in full, in cash" is made to satisfy the BNY SLV Claims.

Second, the circumstances of this case are unlike those that the Supreme Court addressed in Travelers. In Travelers, the Bankruptcy Court attempted to override a contractual right to collect attorneys' fees, based only on vague notions of bankruptcy policy and without support from the Bankruptcy Code itself. By contrast, federal bankruptcy law permits a debtor to satisfy obligations in the manner set forth in a plan of reorganization regardless of whether "cash" payments are specified in a contract. The Supreme Court reaffirmed, in Travelers, that to the extent that the Bankruptcy Code enforces a "federal interest [that] requires a different result" from what might occur outside bankruptcy (e.g., the discharge of SLV through stock distributions rather than cash), the Bankruptcy Code takes priority. See Raleigh, 530 U.S. at 20.

**E.    *Northwestern's Other Contract Arguments Were Not Presented to the Bankruptcy Court and Cannot be Raised for the First Time on Appeal, and in any Event are Without Merit***

Regardless of the exclusionary language set forth in Section 6(c) of the TIAs, Northwestern contends that it should be able to obtain indemnification of other alleged

17

foreclosure-related Losses arising under Section 5(a)(iv).  See NW Br. at 11-12.  However, Northwestern made no such argument before the Bankruptcy Court and it is axiomatic that a party cannot challenge a decision, on appeal, based on a ground never raised before the lower court.  See, e.g., Adarand Constructors, Inc. v. Moneta, 534 U.S. 103, 109-10 (2001).

Northwestern's reading of the TIAs is also incorrect.  Section 6 states that "[n]otwithstanding any provisions to the contrary contained in Section 5 hereof, the Owner Participant shall not be entitled to any payment under Section 5 hereof in respect of **any Loss**…arising as a result of **one or more** of the following events, " including any event where the lessee pays SLV or an amount "determined by reference thereto".  TIA at 16 (emphasis added).  The "event" giving rise to the obligations to pay SLV (Delta's Lease default) is the same "event" that enabled foreclosure by the Lenders.  Consequently, Northwestern's argument that its "foreclosure Losses" can survive the Section 6(c) exclusion is utterly without merit.

Northwestern also argues that its claims should be allowed because, pursuant to Section 10 of the TIAs, Delta's obligations under the TIAs continue "until all such obligations have been met and such liabilities have been paid in full."  NW Br. at 13-14 (quoting TIA at 25).  The Bankruptcy Court correctly held however, under the plain language of Section 6(c), that Delta has no obligations to Northwestern under the TIAs.

**F.    _Claim No. 5335 was Calculated in Accordance With, and Will Receive a Distribution "Determined by Reference" To, SLV_**

Northwestern's final argument is that the Bankruptcy Court incorrectly determined that Claim No. 5335, asserted by BNY as a deficiency claim with respect to a number of aircraft, including Tail No. N182DN, in accordance with the Bingham Term Sheet, was calculated in accordance with, and will receive a distribution "determined by reference" to, SLV (thereby triggering Section 6(c) and expunging  Northwestern's TIA Claim).  See NW Br. at 23.

18

Pursuant to paragraph 8 of the Term Sheet Order, Delta is authorized "to negotiate and to enter into definitive agreements effectuating the terms set forth in the Term Sheet, without the need for further application to this Court."  Term Sheet Order at 7.  In accordance with the Term Sheet Order, Delta: (i) rejected the Lease for Tail No. N182DN [Bankruptcy Court Docket No. 6357]; (ii) entered into a Restructuring Agreement for the aircraft, dated April 30, 2007; and (iii) entered into a new lease for the aircraft.  The Restructuring Agreement described the SLV Claim to which BNY would be entitled, consistent with the Bingham Term Sheet.

In the Decision, the Bankruptcy Court initially determined that the Bingham Term Sheet did not refer to SLV.  See Decision at 15.  However, as the Bankruptcy Court eventually agreed in its ruling on the Motions for Reconsideration, the Bingham Term Sheet does expressly provide that SLV is an element of the deficiency claim of the Indenture Trustee.  See Bingham Term Sheet at 2; see also  March 30, 2007 Transcript at 94-98, 108, 110-11.  The SLV Claim for N182DN therefore was determined by: (i) starting with SLV; (ii) adding unpaid rent and, where applicable, the payable "swap breakage"; and (iii) subtracting therefrom an agreed-upon value of the new restructured deal and the present value of the residual value of the aircraft.[11]

Northwestern argues that the Bingham Term Sheet "violates the terms of the Operative Documents"  because those documents supposedly "prohibit" Delta from retaining possession of the aircraft and entering into a new Lease upon the occurrence of a default.  NW Br. at 23-24.  However, no provision of the Operative Documents prohibits Delta from entering into a new lease with respect to the relevant aircraft, and Northwestern has not purported to cite to any.

---

[11]   The Bingham Term Sheet formula is also consistent with the Leases, which make clear that the "value" of the aircraft (*e.g.,* fair market value/sales proceeds) is to be **deducted from SLV** in calculating an SLV Claim.  See Lease, §§ 15(c) and 15(d).

Section 8.01 of the Indentures states that "the Indenture Trustee shall at all times have the right, to the exclusion of the Owner Trustee and the Owner Participant, to . . . declare the Lease to be in default under Section 15 hereof." Indenture at 53. Additionally, pursuant to Section 15(g) of the Leases, after a default (e.g., Delta's bankruptcy filing), the lessor may "exercise any other right or remedy which may be available under applicable law . . ." Lease at 60. The Indenture Trustees have determined that they will cancel the existing Leases and enter into new leases with Delta. Those new leases are consistent with "applicable law" and are permissible.

Northwestern argues that the remedies listed in Sections 15(a) through 15(e), which do not mention the possibility of a new lease, should be treated as though they were the sole and exclusive remedies of the Lessor/Indenture Trustee under the Leases. See NW Br. at 23-24. However, as Section 15(g) clearly states, the Lease remedies listed in Sections 15(a) through 15(e) are not exclusive. The concluding paragraph of Section 15 of the Leases also states:

> . . . . no remedy referred to in this Section 15 is intended to be exclusive, but each shall be cumulative and in addition to any other remedy referred to above or otherwise available to Lessor at law or in equity.

Finally, Northwestern has again alleged that Claim No. 5335 is not a "SLV Claim" for purposes of applying Section 6(c) because the proof of claim did not refer to SLV on its face. See NW Br. at 23. However, Claim No. 5335 clearly requests payment of the full "net" amounts determined pursuant to the Bingham Term Sheet which, as Northwestern acknowledges, were determined with SLV as the starting point. Id. at 25.

## II. REGARDLESS OF THE CONTRACTUAL TERMS OF THE OPERATIVE DOCUMENTS, THE LAW REQUIRES DISALLOWANCE OF DUPLICATIVE CLAIMS TO THE EXTENT OF THE OVERLAP

Alternatively, even if the Operative Documents themselves did not require disallowance of the Northwestern TIA Claims, those claims would have to be disallowed on the ground that

they are encompassed within the BNY SLV Claims.  The Bankruptcy Court's conclusion that the parties are free to contract for a multiple recovery on a single loss is erroneous.

As the Bankruptcy Court recognized, a claimant often may be entitled to recover for a single injury based on multiple legal theories; yet a loss provides a claimant with only one right of payment, no matter now many separate legal theories the claimant may invoke in support of that right of payment.  See, e.g., Diversified Graphics, Ltd. v. Groves, 868 F.2d 293, 295 (8th Cir. 1989) ("Regardless of whether the harm was the result of negligence or breach of fiduciary duty or a combination of both, there is only a single injury and there may only be a single recovery.").  This rule applies in bankruptcy cases as well.  For bankruptcy purposes, a "claim" is a "right to payment."  11 U.S.C. § 101(5).  The existence of multiple theories under which recovery may be sought from a debtor does not change the fact that a single loss gives rise to a single right to payment and therefore a single "claim" against the debtor.  See, e.g., In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey, 160 B.R. 882, 894 (Bankr. S.D.N.Y. 1993) ("multiple recoveries for an identical injury are generally disallowed.").

In Finley, the debtor had failed to make required pension plan contributions, resulting in an underfunding of its pension plan.  Id. at 893.  Both the pension plan trustee (the "Trustee") and the Pension Benefit Guaranty Corporation (the "PBGC") filed claims against the debtor: (i) the Trustee, for unpaid plan contributions; and (ii) the PBGC, for unfunded benefit liabilities insured by the government.  Id.  While the claims were based on different legal theories and filed by different parties, they related to the same "loss" – the economic effect on the pension plan of the debtor's failure to make required payments.  The bankruptcy trustee objected to the claims, arguing that both claims sought recovery for an identical injury.  Id. at 893.

21

The Trustee and the PBGC argued that their claims arose from different legal rights and that any overlap should only be reduced to the extent that the debtor's estate actually paid the claims in "bankruptcy dollars," not to the extent the claims were allowed in pre-bankruptcy dollars. Id. The bankruptcy court rejected this position, noting that the claims sought compensation for the same loss and that the allowance of both claims, or the reduction of the claims to the extent of payment in "bankruptcy dollars," would result in a distribution regarding the loss which would exceed the ratable distribution to other unsecured creditors. Id. at 894. The court held that such an outcome would be "inconsistent with the letter and spirit of Title 11," and disallowed the claims to the extent they sought compensation for the same loss. Id.

Other cases have also reached the same conclusion. See, e.g., In re Simetco, Inc., No. 93-61772, 1996 WL 651001, at *3 (Bankr. N.D. Ohio Feb. 15, 1996) (disallowing claim to extent it related to the same loss covered by another claim); In re Chateaugay Corp., 115 B.R. 760, 784 (Bankr. S.D.N.Y. 1990), aff'd, 130 B.R. 690 (S.D.N.Y. 1991), vacated by agreement of the parties, Nos. 89 Civ. 6012, 90 Civ. 6048, 1993 WL 388809 (S.D.N.Y. June 16, 1993) (holding claims for unpaid contributions and claims for "plan insufficiency" were duplicative of each other); In the Matter of Brinke Transp., Inc., No. 87-03785, 1989 WL 233147, at *3 (Bankr. D.N.J. Jan. 23, 1989) (striking claim subsumed in other claim). Although the decision in Chateaugay was vacated by agreement, the Simetco court still found the reasoning persuasive with respect to its holding that duplicative claims should be disallowed based on bankruptcy policy. See Simetco, 1996 WL 651001, at *3 n.3.

While the Bankruptcy Court recognized the principle against double recoveries articulated in Finley, it mistakenly believed that that principle was inapplicable here. The Bankruptcy Court's decision rested on three errors of law. First, the Bankruptcy Court

22

incorrectly decided that contract claims should be treated differently from other claims, because other claims involve a right to recover for an "injury," Decision at 7, while in the Bankruptcy Court's view, parties are free to "contract[] to pay duplicative claims" if they wish, regardless of the actual loss. Id. at 8. However, even outside of bankruptcy, contract claims must be based on actual losses. A contractual agreement to pay an amount, upon default, that is not based on the other party's actual loss is contrary to public policy and void as a penalty. See, e.g., In re T.R. Acquisition Corp., 309 B.R. 830, 837-38 (S.D.N.Y. 2003) (lease provision calling for double rent if failure to vacate was disproportionate to damages suffered and an unenforceable penalty). If, as Northwestern contends, the Leases and the TIAs required Delta to compensate for the same loss twice, this would be nothing but an unenforceable penalty. See also 11 U.S.C. § 502(e) (barring creditor and guarantor from asserting duplicative claims against bankruptcy estate).

Second, the Bankruptcy Court erroneously believed that the contract obligations addressed different debts owed to "different parties" because amounts payable under the Leases are received by the Indenture Trustee (as assignee) while amounts payable under the TIAs are received by Northwestern. However, Indenture Trustees are not parties to the Leases. Instead, Delta entered into the Leases with the Owner Trusts, and the SLV specified in the Leases is calculated with respect to the interests of the Owner Trusts. The Indenture Trustees, as pledgees, merely stand in the shoes of the Owner Trustees to collect sums due under the Leases.

As described above, the Owner Trusts are "grantor trusts" that exist solely for the benefit of the Owner Participants. For tax purposes, the Owner Trustee has no separate existence; the Owner Trustee and Owner Participant are the same entity. For purposes of tax losses, Northwestern and the Owner Trustee are not separate parties, and the BNY SLV Claims and the

Northwestern TIA Claims provide different legal theories under which a single loss (Northwestern's tax loss) may be recovered by a single party (Northwestern).

Third, the Bankruptcy Court did not take account of the fact that the multiple liability would arise only if Delta was unable to pay pre-bankruptcy, and would therefore allow contracting parties such as Northwestern to manipulate the scheme of the Bankruptcy Code by giving themselves a disproportionate recovery at the expense of other creditors.

Assume, for example, that the required SLV payment was $100, of which $25 represented the "tax" component. If Delta paid that amount out of bankruptcy, the TIA Claims admittedly would be extinguished, and Delta's total payment obligation would be $100. The bankruptcy "claims" asserted by BNY and Northwestern similarly should total $100 – the amount of their collective "right to payment" outside of bankruptcy. If distributions in Delta's case were equal to 60% of allowed claims, then the total distributions would be $60.

The Bankruptcy Court's holding, however, would permit bankruptcy claims to exceed the out-of-bankruptcy "right to payment," to the disadvantage of other creditors. Both the SLV Claims ($100) and the TIA Claims ($25) would be allowed, for a total of $125. The distributions on those claims would be $75 – a total recovery of 75% when compared with the out-of-bankruptcy payment obligation, even though other unsecured creditors would receive recoveries of only 60%.

As courts have consistently found, such an inequitable distribution would be entirely "inconsistent with the letter and spirit of Title 11." Finley, 160 B.R. at 894. Given that other creditors who are affected by the inequitable distribution did not consent to this unequal treatment, it is immaterial whether Delta and Northwestern agreed to it by contract. To the extent that SLV Claims and TIA Claims (which by their nature are already included in SLV

Claims) provide compensation for the same loss incurred by the same party, they simply represent multiple legal theories upon which the same loss may be recovered.  For bankruptcy purposes, a single loss can give rise to only one "right to payment" and only one claim against the debtor, regardless of how many separate contractual theories of recovery may be asserted.  If parties could contract around the Bankruptcy Code's *pro rata* treatment of claims of the same class through the granting of duplicative claims, it would result in the substantial dilution of the interests of non-consenting creditors who are only permitted to assert one claim for their loss.

## CONCLUSION

For all of the foregoing reasons, and those stated in the Bankruptcy Court's Decision and its rulings on the Motions for Reconsideration, Delta and the Committee submit that the July 18 Order with Respect to TIA/SLV Objection 2 should be affirmed.

Dated:  New York, New York
        November 16, 2007

STROOCK & STROOCK & LAVAN LLP

/s/ Kristopher M. Hansen
Lawrence M. Handelsman (LH-6957)
Kristopher M. Hansen (KH-6957)
Jayme T. Goldstein (JG -9054)
180 Maiden Lane
New York, New York 10038
Telephone: (212) 806-5400

Counsel for Delta Air Lines, Inc.

AKIN GUMP STRAUSS HAUER & FELD LLP
Daniel H. Golden (DG-5624)
David H. Botter (DB-2300)
Mitchell P. Hurley (MH-0740)
590 Madison Avenue
New York, New York 10022
Telephone: (212) 872-1000

Counsel for the Post-Effective Date Committee