# EXHIBIT 1

```
 1                      UNITED STATES BANKRUPTCY COURT
                        SOUTHERN DISTRICT OF NEW YORK
 2

 3
                                         .    Case No. 05-17930 (ALG)
 4   IN RE:                              .
                                         .    (Jointly Administered)
 5   NORTHWEST AIRLINES                  .
     CORPORATION, et al,                 .    New York, New York
 6                                       .    Friday, July 27, 2007
                                         .    3:31 p.m.
 7                 Debtors.              .
     . . . . . . . . . . . . . . . . . ..
 8
        TRANSCRIPT OF COURT DECISION ON MOTION TO APPROVE STIPULATION
 9                   REGARDING "GFCC AIRCRAFT CLAIMS"
                 BEFORE THE HONORABLE ALLAN L. GROPPER
10                    UNITED STATES BANKRUPTCY JUDGE

11   APPEARANCES:   (Via Telephone)

12   For the Debtors:              Mark C. Ellenberg, Esq.
                                   Douglas S. Mintz, Esq.
13                                 CADWALADER, WICKERSHAM
                                    & TAFT, LLP
14                                 1201 F Street N.W.
                                   Washington, D.C. 20004
15
     Counsel for General Foods
16   Corporation:                  David F. Abbott, Esq.
                                   Kenneth E. Noble, Esq.
17                                 David S. Curry, Esq.
                                   MAYER, BROWN, ROWE & MAW, LLP
18                                 1675 Broadway
                                   New York, New York 10019
19   (Appearances continued)

20   Audio Operator:               Electronically Recorded
                                   by Michelle Brown, ECRO
21
     Transcription Company:        Rand Transcript Service, Inc.
22                                 80 Broad Street, Fifth Floor
                                   New York, New York 10004
23                                 (212) 504-2919
                                   www.randtranscript.com
24
     Proceedings recorded by electronic sound recording, transcript
25   produced by transcription service.
```

```
 1  APPEARANCES:

 2  For the Post-Effective Date
    Creditors' Committee:          Lorenzo Marinuzzi, Esq.
 3                                 OTTERBOURG, STEINDLER, HOUSTON
                                    & ROSEN, P.C.
 4                                 230 Park Avenue
                                   New York, New York 10169
 5
    For the U.S. Bank National
 6  Association, as Trustee:       Jeanne P. Darcey, Esq.
                                   EDWARDS, ANGELL, PALMER
 7                                  & DODGE, LLP
                                   111 Huntington Avenue
 8                                 Boston, Massachusetts 02199

 9  For BAE Systems
    Funding, Ltd.:                 Ken Coleman, Esq.
10                                 ALLEN & OVERY, LLP
                                   1221 Avenue of the Americas
11                                 New York, New York 10020

12  For Lehman Brothers:           Shalom L. Kohn, Esq.
                                   SIDLEY AUSTIN, LLP
13                                 One South Dearborn
                                   Chicago, Illinois 60603
14
    For Philip Morris
15  Capital Corporation:           Douglas B. Levene, Esq.
                                   PHILIP MORRIS CAPITAL
16                                  CORPORATION
                                   225 High Ridge Road
17                                 Stamford, Connecticut 06905

18

19

20

21

22

23

24

25
```

1     (Proceedings commence at 3:31 p.m.)

2     (Conference call established.)

3         THE COURT:  Good afternoon.  This is Judge Gropper.
4  Who's on the line, please?  May I have appearances?  Let's
5  start with the debtors.

6     (Operator confers.)

7         MR. MINTZ:  Doug Mintz is on from Cadwalader.

8         MR. ELLENBERG:  Your Honor, this is Mark Ellenberg for
9  Cadwalader on the line, too.

10        THE COURT:  All right.  We have the debtors.

11        GFCC?

12        MR. ABBOTT:  Good afternoon, Your Honor.  This is
13 David Abbott from Mayer, Brown, Rowe & Maw, on behalf of GFCC.
14 I have in the room with me Ken Noble, also from Mayer Brown;
15 Dave Curry I believe will be joining us on the call, and Doug
16 Levene who's in-house counsel at GFCC.

17        MR. LEVENE:  Yes, Doug Levene here.

18        THE COURT:  All right.  Good afternoon.

19        MR. ABBOTT:  Good afternoon.

20        THE COURT:  Anyone for BAE?

21        MS. INGMAN:  This is Tania Ingman for BAE.  Ken
22 Coleman is expected to join, also.

23        THE COURT:  All right.  Anyone for the indenture
24 trustee?

25        MS. DARCEY:  Yes.  Good afternoon, Your Honor.  This

1  is Jeanne Darcey from Edwards, Angell, Palmer & Dodge for the
2  trustee.
3           THE COURT:  All right.  Any other counsel who wish to
4  note their appearances?
5           MR. MARINUZZI:  Good afternoon, Your Honor.  Lorenzo
6  Marinuzzi, Otterbourg, Steindler, Houston & Rosen, on behalf of
7  the Post-Effective Date Committee.
8           MR. KOHN:  And Shalom Kohn, Sidley Austin, on behalf
9  of Lehman Brothers, Your Honor.
10          THE COURT:  All right.  Anyone else?
11     (No verbal response.)
12          THE COURT:  Very good.  Well, thank you for joining us
13 this afternoon.  I have written out my decision, and I'll read
14 it into the record as perhaps the fastest way to proceed
15 forward.
16          Who just joined us?
17          MR. CURRY:  David Curry, Mayer Brown.
18          THE COURT:  All right.  Very good.  I've taken
19 appearances, and I have appearances from the principal parties,
20 or from all of the parties.
21          This is a motion by the reorganized debtors for
22 approval of a stipulation that fixes the claims filed by the
23 holders of the debt on ten aircraft that the debtors leased
24 under leveraged lease transactions.  The leases were rejected,
25 and the aircraft were sold at a foreclosure sale at the behest

1  of the lenders, who had a security interest in the aircraft, as
2  well as the leases.  There is no dispute that the sale of the
3  aircraft, together with the proofs of claim given to the
4  lenders hereby, under the stipulation, do not pay the debt in
5  full.
6         The stipulation is supported by U.S. Bank, National
7  Association, as indenture trustee for the holders of the
8  secured debt; by BAE Systems (Funding 1 (Limited) "BAE"), a
9  lender and now the owner of the aircraft by virtue of its
10 credit bid at the foreclosure sale; and by the Post-Effective
11 Date Committee of Creditors.
12        Five of the aircraft included in the original
13 stipulation were not objected to; it was agreed at oral
14 argument that the Court would enter a separate order approving
15 the stipulations with regard to those five aircraft, and that
16 has been done today.
17        Five of the aircraft were the subject of one objection
18 filed by the equity participant in the leveraged lease
19 transactions -- in effect, the beneficial owner through a
20 trustee of the five aircraft before the foreclosure -- General
21 Foods Credit Corporation ("GFCC").  GFCC objects primarily on
22 the ground that the claims provided to the debt impair its
23 rights under a tax indemnity agreement with the debtors that is
24 the subject of its separate proofs of claim filed in these
25 Chapter 11 cases.  The tax indemnity agreement ("TIA") was the

same for the five aircraft, and only one such agreement will be dealt with in this decision.

The form of aircraft leveraged lease transaction that is at issue herein was described in a recent opinion of Judge Hardin of this Court In Re Delta Air Lines, Inc., 05-B-17923, 2007 WL 1462207 (Bankr. S.D.N.Y., May 16, 2007).

In light of the fact that that opinion comprehensively analyzes the form of transaction involved, and since all parties here endorse and rely on that opinion, the Court will not repeat all of the background set forth therein. Suffice it to say that there, as here, the crux of the dispute arose out of the fact that the operative documents gave a claim to the debt for a stipulated loss value of the aircraft under certain circumstances, such as a loss of the aircraft or certain events of default, and stipulated loss value contains a component measured by the tax losses of the equity. There, as here, the equity owner of the aircraft had a tax indemnity agreement with the lessee airline, indemnifying it for tax losses under certain circumstances.

Judge Hardin held that, under the terms of the agreements at issue in Delta, the debt held the claim for the tax loss component embedded in stipulated loss value; and, under the terms of the tax indemnity agreements at issue there, the equity was not entitled to a claim under the tax indemnity agreement.

1         In so holding, Judge Hardin rejected the debtors'
2    argument in Delta that there could not be duplicative claims
3    for tax losses by the debt and by the equity; what he called a
4    "cosmic argument against overlapping claims."  The Court there
5    held that the rights of the parties could only be determined by
6    a careful examination of the agreements that they entered into.
7         No one in this case has relied on the so-called
8    "cosmic argument."  All agree that the dispute should be
9    resolved by careful examination of the applicable agreements.
10   We, accordingly, start with the same proposition that guided
11   the Delta Court:  That the rights of the parties should be
12   determined by a painstaking analysis of the agreements at
13   issue.
14        We start that analysis with several uncontested
15   points.  As noted above, under certain circumstances, the
16   lessee (the airline) may be liable for the stipulated loss
17   value of the plane, an amount calculated by reference to the
18   cost of the aircraft multiplied by a factor set forth on a
19   schedule attached to the lease.  There is no dispute here that
20   stipulated loss value constitutes the basis for calculating the
21   claims that are fixed by the stipulation, and there is no
22   dispute that the claimants are entitled to a claim for at least
23   a portion of the stipulated loss value of the five aircraft.
24        It is also uncontested that stipulated loss value
25   ("SLV" hereafter) contains a component that includes the tax

1  losses that have been or will be suffered by the equity (GFCC)
2  as a result *inter alia* of the defaults under the lease and the
3  subsequent foreclosures.  The crux of the parties' dispute
4  relates to this component of SLV, the portion of stipulated
5  loss value represented by the tax losses, because in Judge
6  Hardin's words:
7      "A component of SLV is an amount designed to
8      compensate for the same tax consequences triggered by
9      an early termination of the leases as that covered by
10     the TIAs."
11     GFCC claims that it, rather than the debt, is entitled
12 to a claim for the tax component of SLV, based on the
13 documents, and that is the crux of its objection.  It starts
14 with the argument that the definition of "stipulated loss
15 value" in the leases, which defines SLV by reference to the
16 cost of the aircraft multiplied by a percentage listed on the
17 applicable exhibit, and then contains an adjustment providing
18 *inter alia* that SLV shall be the amount so determined:
19     "-- as may be adjusted from time to time, as provided
20     in ... Section 7 of the tax indemnity agreement."
21     Section 7 of the tax indemnity agreement -- or TIA --
22 provides for an adjustment to SLV under certain circumstances.
23 It reads as follows:
24     "If any amount is required to be paid by lessee under
25     Section 4 hereof, owner-participant will compute the

1              stipulated loss value percentages and termination
2              value percentages and special purchase price with
3              respect to the aircraft, to reflect such payment in
4              accordance with the manner in which such values were
5              originally computed, or adjusted pursuant to Section 3
6              of the lease, by owner-participant, and shall certify
7              to lessee either that such values as set forth in the
8              lease do not require change or, as the case may be,
9              the new values necessary to reflect the foregoing
10             recomputation, describing in reasonable detail the
11             basis for computing such new values, and upon such
12             certification, such new values shall be substituted
13             for the values appearing in the lease."
14        GFCC's argument in substance is that an amount is
15   "required to be paid" to it under the TIA, that SLV payable
16   under the leases must be adjusted, and the claim provided to
17   the debt is overstated by the unadjusted tax component thereof.
18        The debtors' principal response is that no amount in
19   respect to the tax component is required to be paid to GFCC
20   under the TIA by virtue of an exclusion therein.  That
21   exclusion appears in Section 5 of the TIA, providing that:
22             "Notwithstanding anything to the contrary in this
23             agreement, lessee shall not be required to indemnify
24             owner-participant with respect to a loss or foreign
25             tax credit loss to the extent such loss or foreign tax

Case 1:07-cv-07745-RMB    Document 26-2    Filed 11/16/2007    Page 11 of 19

10

1           credit loss occurs as a direct result of one or more
2           of the following events ..."
3       There follow certain events.  The debtors rely in the
4   event in Section 5(c), which is:
5           "Any event as a result of which lessee or any other
6           person has paid stipulated loss value or termination
7           value, or paid the amount required to be the greater
8           of the fair market value of the aircraft and
9           stipulated loss value or termination value in
10          accordance with the provisions of the operative
11          documents, except to the extent that such payment does
12          not reflect the timing of the occurrence for federal
13          income tax purposes;"
14      As all parties agreed at oral argument, the meaning of
15  this section is critical to the resolution of the instant
16  dispute.  GFCC also agreed that the TIA must be read as a
17  whole.  Therefore, if Section 5(c) relieves the debtor from an
18  obligation to indemnify GFCC as owner-participant, then no
19  amount is required to be paid to it in respect of the tax
20  component of the SLV in Section 7 is not applicable.
21      The debtors argue that Section 5(c) governs because
22  the "event" has taken place, as a direct result of which the
23  debtors will have paid stipulated loss value; that is, the
24  debtors' bankruptcy filing and default under the lease.
25      GFCC responds with two points:

1  First, GFCC points to the word "paid" in Section 5(c)
2  and contrasts it to the clause "required to be paid" in Section
3  7, and it contends while Section 5(c) requires actual payment,
4  Section 7 only mandates "required to be paid."  It argues, in
5  effect, that it is "required to be paid" under the TIA because,
6  as of today, the debt has not been "paid."
7  Notwithstanding the difference in wording, Section 5
8  generally applies "notwithstanding anything to the contrary" in
9  the TIA, indicating that Section 5 events must be considered
10 when determining the applicability of Section 7.  The operative
11 event for purposes of Section 5 and Section 5(c), the
12 bankruptcy and default, has already taken place, and SLV will
13 have been paid once the stipulation is approved and payment is
14 made on the relevant proofs of claim.
15 Moreover, the proposition that Section 7 trumps
16 Section 5(c), and that the language in Section 7, "required to
17 be paid," means that an obligation to make a Section 5(c)
18 payment could never be made without first making a required
19 payment under Section 7 stretches the language "required to be
20 paid" beyond the breaking point.  Section 7 does not, for
21 example, provide for an adjustment of SLV when an amount shall
22 first become payable or contain any similar language.  An
23 amount is not "required to be paid" for purposes of Section 7
24 if it is not payable under the TIA, read as a whole, and that
25 includes Section 5(c), which, as noted, applies

1  "notwithstanding anything to the contrary in the agreement."

2  Moreover, it would lead to a result that is at odds
3  with the basic structure of the transaction.  Under the
4  operative documents, stipulated loss value, including the tax
5  component, is part of a package of security assigned to the
6  indenture trustee for the benefit of the debt.  One of the
7  operative documents, the trust indenture and security
8  agreement, contains a waterfall directing payments in respect
9  of the collateral after an event of default.  As should not be
10 surprising, in light of the fact that debt usually comes before
11 equity, the waterfall contains provisions for payments to the
12 debt before payments to the equity.  Payments to the owner-
13 trustee for any tax, expenses, or other losses come forth in
14 line after payment to the debt holders to make them whole.
15 There is no dispute that the claims granted to the debt
16 pursuant to the stipulation, together with the fair market
17 value of the aircraft as per the foreclosure sale, will not
18 make the debt whole.  It cannot be assumed that an amount to be
19 paid to the debt should be reduced on account of a claim by
20 equity, and an intention to do so would have to be clearly
21 expressed in the applicable contracts.

22  GFCC responds that the security granted to the
23 indenture trustee does not include:

24  "All payments required to be made under the tax
25  indemnity agreement by lessee, and all payments of

1            supplemental rent by lessee in respect of any amounts
2            payable under the tax indemnity agreement."
3       See Page 6 of the trustee indenture and security
4  agreement.
5       But this exclusion is only applicable for payments
6  required to be made or amounts payable under the TIA.  As
7  stated earlier, amounts are not payable or required to be paid
8  under the TIA if they are within the exclusion in Section 5(c).
9       GFCC's further argument is that Section 5(c) does not
10 apply because, even after allowance and payment of the proofs
11 of claim, the debt will not have been "paid" SLV because it
12 will not have been paid in full, in cash.
13      Judge Hardin rejected a similar contention in
14 connection with the Delta case.  Although the documents that
15 Judge Hardin dealt with were slightly different from those
16 before this Court, his alternative holding in connection with
17 what he called the "second Delta objection" was that the word
18 "pays" does not mean "paid in cash."  The term instead, in the
19 words of the Delta Court:
20           "-- must be construed in such a manner as to comport
21           with the meaning of payment in the context of
22           bankruptcy, which the parties expressly contemplated
23           in the TIA, as well as in the other agreements.  There
24           is rarely likely to be full payment of claims in
25           bankruptcy; and, in the ordinary course of any Chapter

1                11 case, payment of claims under a plan may be in cash
2                or equity or debt securities of the debtor, or a
3                combination of cash and securities."
4          Judge Hardin went on to contrast the language of the
5   TIA in <u>Delta</u> to the requirement in the lease there that lease
6   payments be made in U.S. Dollars, and he noted that the TIA
7   there could have required payment in cash, but it did not.
8          The TIA here does not require payment in cash.  GFCC
9   attempts to bolster its "paid in full, in cash argument" by
10  reference to a clause in Section 5(c) of the TIA in this case
11  that provides that payment must be made "in accordance with the
12  provisions of the operative documents ..."
13         At the outset, it is not clear that this clause
14  modifies the word "paid."  There is a comma in Section 5(c)
15  setting off the words "paid stipulated loss value or
16  termination value," from the remainder of the section.  The
17  plainest reading of the section is to give effect to the comma
18  and conclude that the words "in accordance with the provisions
19  of the operative documents" do not modify the term "SLV."  See
20  generally <u>In Re Ron Pair Enterprises</u>, 489 U.S. 235, 242 (1989).
21         Beyond this, GFCC's construction misconstrues the
22  words "in accordance with the provisions of the operative
23  documents."  The term "operative documents" is defined in
24  Section 1(j) of the TIA by reference to the definition in the
25  lease, and the lease defines "operative documents" as including

1   at least fifteen separate documents; including the lease, the
2   TIA, and the trust indenture and security agreement.  These
3   documents relied, among many other things, for events of
4   default, foreclosure, and remedies and rights on the part of
5   the debt and the owner-participant.  The operative documents do
6   not require payment in all cases in cash, in full, and the
7   words "in accordance with the provisions of the operative
8   documents" cannot be limited to this meaning.
9        The proofs of claim that have been accorded to BAE and
10  the indenture trustee are "in accordance with the provisions of
11  the operative documents."  The Court, thus, concludes that
12  based on the plain meaning of the parties' agreements, GFCC's
13  objections to the stipulation relating to the remaining five
14  aircraft must be overruled.
15       GFCC further objects to some of the language of the
16  stipulation, and it has suggested some further language.  It
17  objects to Paragraph 2, which provides as follows:
18          "The aggregate amount of the allowed claims was
19          calculated by reference to the stipulated loss value
20          ("SLV") in accordance with each pre-petition lease.
21          Allowance of the allowed claims plus the fair market
22          value with respect to each relevant aircraft
23          constitutes full payment and discharge of stipulated
24          loss value with respect to each pre-petition lease as
25          required pursuant to the relevant pre-petition leases

1        and the other operative documents."

2        The Court finds that this paragraph, settling any
3 possible claims against the debtors from the debt, is
4 consistent with its ruling as set forth above, that SLV does
5 not have to be reduced by virtue of the provisions of Section 7
6 of the TIA and the applicable definition of "SLV" in the lease.

7        GFCC also seeks to add a paragraph that the
8 stipulation shall have no effect whatsoever, whether legal or
9 factual, on GFCC's claims under the TIA; and that all of GFCC's
10 rights and claims against the indenture trustee, BAE, and the
11 other parties to the operative documents and their successors
12 and assigneds are fully preserved.  This contention requires
13 consideration of the procedural posture of this matter, and
14 also of the scope of the stipulation.

15        As to the procedural posture, GFCC has filed proofs of
16 claim based on its construction of the TIA, and the debtors
17 have not yet objected to the claim, and their time to do so has
18 not yet elapsed.  It is not appropriate for the debtors to
19 contend that a decision on this motion will invalidate GFCC's
20 proofs of claim.  There may be elements to its claim that do
21 not include those tax losses that are a component of SLV, and
22 thus included in the claims being allowed hereby to others.

23        In any event, while the decision today may be highly
24 persuasive in the future, the Court cannot deal directly with
25 GFCC's proof of claim, and the parties are free to argue as to

1  the effect of this decision on such proof or proofs of claim.
2  The debtors say that they do not want any risk of duplicative
3  liability, but they move for court approval of the stipulation
4  before dealing with the GFCC proofs of claim.  Moreover, the
5  TIA ultimately requires in Section 5(c) that a claim be "paid."
6  Thus, the stipulation should be approved as written with
7  respect to the debtors.
8          With respect to the third parties and GFCC's alleged
9  possible claims against BAE, the indenture trustee, and others,
10 GFCC argues that the Court does not have jurisdiction to bar
11 such claims.  There is nothing in the stipulation that purports
12 to bar any claims or constitute an injunction; and, in view
13 thereof, the provision suggested by GFCC is unnecessary, as
14 well as inappropriate, especially if there were some
15 implication that GFCC might have a claim against any other
16 party to these proceedings for amounts received under the
17 stipulation with the debtors.  The Court cannot conceive on
18 what legal theory there might be such a claim, but will leave
19 the issue to another Court to deal with at another time, if
20 necessary.
21         In sum, the Court will so order the proposed
22 stipulation with regard to the remaining five aircraft, and the
23 debtors should submit an appropriate stipulation for signing.
24         I thank all of the parties for excellent argument and
25 briefs, and I think that concludes the proceedings this

18

1  afternoon.  Thank you very much.

2           COUNSEL:  Thank you for your time.  Thank you.

3           THE COURT:  Good afternoon.

4           COUNSEL:  Thank you.

5           THE COURT:  All right.

6      (Court and court personnel confer.)

7      (Proceedings concluded at 4:02 p.m.)

8                         <u>CERTIFICATION</u>

9           I certify that the foregoing is a correct transcript

10 from the electronic sound recording of the proceedings in the

11 above-entitled matter to the best of my knowledge and ability.

12

13  *[signature: Coleen Rand]*

14
   _____          July 28, 2007
15 Coleen Rand, AAERT Cert. No. 341
   Certified Court Transcriptionist
16 Rand Transcript Service, Inc.

17

18

19

20

21

22

23

24

25