**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY, )<br><br>Appellant, )<br><br>vs. )<br><br>DELTA AIR LINES, INC. AND THE POST-EFFECTIVE DATE COMMITTEE OF DELTA AIR LINES, INC., )<br><br>Appellees/Cross-Appellants, )<br><br>THE BANK OF NEW YORK, AS INDENTURE TRUSTEE AND PASS THROUGH TRUSTEE, )<br><br>Appellee/Cross-Appellee. ) | **Case No. 07-CV-7745 (RB)**<br>(ECF Case) |

**BRIEF OF APPELLEE THE BANK OF NEW YORK, AS INDENTURE TRUSTEE AND PASS THROUGH TRUSTEE, IN RESPONSE TO THE CROSS APPEAL OF DELTA AIR LINES, INC. AND THE POST-EFFECTIVE DATE COMMITTEE**

**PILLSBURY WINTHROP SHAW PITTMAN LLP**
1540 Broadway
New York, NY 10036-4039
(212) 858-1740
Leo T. Crowley (LC-1311)
Eric Fishman (EF-9664)
Margot Erlich (ME-2117)

Attorneys for The Bank of New York, as
Indenture Trustee and Pass Through Trustee

500184407v9

**TABLE OF CONTENTS**

Page

ARGUMENT ..................................................................................................................1

    A. If the TIA Exclusion Applies, the Cross-Appeal Should Not Be Considered .........1

    B. If the TIA Claims Are Allowed, the SLV Holding Should Still Be Affirmed ........2

        1. There is No Contractual Basis for Reducing the SLV Claims ..........................2

        2. Delta's Overlap Argument Should Be Rejected ................................................5

        3. Even if the Court Reverses the Overlap Holding, It Should Affirm the Denial of the TIA/SLV Objection with Respect to the SLV Claims .................9

    C. Alternatively, if the TIA Claims Are Allowed, the Case Should Be Remanded ................................................................................................................10

CONCLUSION ...............................................................................................................10

## TABLE OF AUTHORITIES

### CASES

*Alfaro Motors, Inc. v. Ward*,
  814 F.2d 883 (2d Cir. 1987) ...................................................................................... 2

*Blackston v. Shook and Fletcher Insulation Co.*,
  764 F.2d 1480 (11th Cir. 1985) .................................................................................. 1

*Franklin Pavkov Const. Co. v. Ultra Roof, Inc.*,
  51 F. Supp. 2d 204 (N.D.N.Y. 1999) .......................................................................... 4

*Greene v. United States*,
  13 F.3d 577 (2d Cir. 1994) .......................................................................................... 6

*In re Enron Corp.*,
  354 B.R. 652 (S.D.N.Y. 2006) .................................................................................... 4

*In re Metromedia Fiber Network, Inc.*,
  335 B.R. 41 (Bankr. S.D.N.Y. 2005) .......................................................................... 4

*In re Northwest Airlines Corp.*,
  Case No. 05-17930 (Bankr. S.D.N.Y. July 27, 2007) (unreported) ........................... 10

*In re U.S. Truck Co., Inc.*,
  74 B.R. 515 (Bankr. E.D. Mich. 1987) ....................................................................... 4

*Jafari v. Wally Findlay Galleries*,
  741 F. Supp. 64 (S.D.N.Y. 1990) ................................................................................ 4

*Leasing Serv. Corp. v. Justice*,
  673 F.2d 70 (2d Cir. 1982) .......................................................................................... 6

*Michel v. I.N.S.*,
  206 F.3d 253 (2d Cir. 2000) ........................................................................................ 1

*RLI Ins. Co. v. St. Patrick's Home for the Infirm and Aged*,
  452 F. Supp. 2d 484 (S.D.N.Y. 2006) ......................................................................... 6

500184407v9

## STATUTES

11 U.S.C. § 365(g) (2007) ................................................................................................3

## OTHER AUTHORITY

Mark A. Sternberg & Ross D. Taylor, *Leveraged Leasing from a Lender's Viewpoint*,
   *in* 1 EQUIPMENT LEASING—LEVERAGED LEASING (Ian Shrank & Arnold G. Gough,
   Jr. eds., 4th ed. 2007) ..................................................................................................9

Appellee The Bank of New York, as Indenture Trustee and Pass Through Trustee ("BNY"), by its counsel, hereby submits its brief in response to the arguments on cross-appeal set forth in the Amended Response Brief of Appellees Delta Air Lines, Inc. and The Post-Effective Date Committee (collectively, "Delta"), dated November 16, 2007.[1]

## ARGUMENT

BNY is not a party to the TIAs and takes no position as to whether Delta must indemnify Northwestern Mutual for tax losses.  BNY, the holder of the N803 and N804 SLV claims, responds below only to those arguments on cross-appeal that may affect it.

### A.   If the TIA Exclusion Applies, the Cross-Appeal Should Not Be Considered

If this Court affirms the holding below that the TIA exclusion has been triggered, this Court need not and should not address Delta's argument that the TIA and SLV claims cannot both be paid in full.  The "doctrine of judicial restraint provides a fully adequate justification for deciding [a] case on the best and narrowest ground available.'" *Michel v. I.N.S.*, 206 F.3d 253, 260 n.4 (2d Cir. 2000) (quotation and citation omitted).  This doctrine ensures that precedents do not have unintended consequences, particularly where many other litigants or market participants not before the court could be affected by the holding.  *See, e.g.*, *Blackston v. Shook and Fletcher Insulation Co.*, 764 F.2d 1480, 1481 (11th Cir. 1985) (confronting widespread asbestos litigation and finding the law is "better served" when appellate courts decline to make "broad pronouncements of law" and instead "decide each case on the narrow ground that leads to a decision").

Judicial restraint is especially appropriate here.  To determine that the TIA and SLV payments may be netted, even in the absence of set-off provisions, would require

---

[1] All capitalized terms not otherwise defined herein are defined in accordance with the November 13, 2007 BNY Brief filed in response to the appeal of Northwestern Mutual.

1

the adoption of an entirely new contract damages doctrine.  As Judge Hardin observed, the "principle that precludes double liability for a single injury or loss has never been applied by any court to void separate *contract* obligations owed to different parties under different contracts."  NW D. 39, Decision at 7 (emphasis in original).  This stands to reason because obligees under separate contracts may have no knowledge of the contracts to which they are not parties, which is, in fact, usually the case in leveraged lease transactions where only the lessee and owner participant negotiate the confidential TIA.  There is no reason to establish a new and far-reaching damages precedent, with its unforeseeable consequences, if the decision below can be affirmed on narrower grounds.

**B.    If the TIA Claims Are Allowed, the SLV Holding Should Still Be Affirmed**

If this Court reverses and rules that Northwestern Mutual's TIA claims should be allowed, it should, nonetheless, affirm the holding denying the TIA/SLV Objection with respect to BNY's SLV claims.  An appellate court is "free to affirm" a lower court's decision "on any grounds for which there is a record sufficient to permit conclusions of law."  *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 887 (2d Cir. 1987) (citation omitted).

1.    There is No Contractual Basis for Reducing the SLV Claims

The only contractual basis for reducing SLV is set forth in the Participation Agreement, a contract between all of the transaction parties setting forth provisions of general applicability to the leveraged lease transaction.  Section 6(d) states:

> If any amount is paid by the Lessee to the Owner Participant pursuant to the [Tax] Indemnity Agreement, the amounts of Stipulated Loss Value and Termination Value set forth in Exhibit C to the Lease and Schedule 1 to the [Tax] Indemnity Agreement shall be recomputed in the manner set forth in Section 3(e) of the Lease.

NW D. 13 at Ex. 4, Participation Agreement §6(d) at 44.[2]  Section 3(e) of the Lease provides that an adjustment to SLV must be "set forth in a supplement to [the] Lease" (NW D. 13 at Ex. 2, Lease §3(e) at 18), which requires the approval of the indenture trustee.  *Id.* §22 at 66.  The SLV adjustment provision addresses circumstances where an indemnified tax loss is paid during the course of the Lease, as may happen, for example, when a lessee uses an aircraft outside of the country or subleases it to a non-US person.  *See* NW D. 39, Decision at 11 n.2 (*citing* NW D. 29, Delta Reply at 4-5).  It has no applicability to the post-default situation under consideration here.

As an initial matter, Northwestern Mutual's TIA claims have not been "paid," which is a condition precedent to Delta invoking the SLV adjustment mechanism.  That said, because the claims administration process delays the payment of all claims in bankruptcy, Section 6(d) really needs to be further analyzed in terms of when the parties' respective rights to payment accrued, not the happenstance of when payment occurs.  Here, BNY's N803 and N804 SLV claims ripened no later than rejection of the applicable Leases.  The rejection of an agreement is deemed to constitute a material breach immediately prior to the petition date, 11 U.S.C. § 365(g) (2007), which is here September 14, 2005.  Such rejection, as well as other Events of Default under the Leases, gave BNY the immediate right to demand SLV.  NW D. 13 at Ex. 2, Lease §§14-15.

Northwestern Mutual's N803 and N804 tax indemnification claims, by contrast, accrued on December 27, 2005, when BNY foreclosed upon the collateral.  As explained in BNY's initial brief, that is when Northwestern Mutual recognized taxable income on an accelerated basis.  BNY Br. at 9-10.  Given this sequencing, the TIA claim was not

---

[2]  There is a comparable provision in Section 8 of the TIA, but it is not relevant here insofar as the TIA is between Delta and Northwestern Mutual and is thus not binding upon BNY.

"paid," indeed, it had not even accrued, when BNY's SLV claims accrued.  Accordingly, the SLV adjustment provision – which requires accrual and payment of a TIA claim before an SLV claim -- simply has no application to the undisputed facts of this case.

In fact, the SLV adjustment provision cannot even be invoked.  Delta rejected the Leases for N803 and N804 shortly after the petition date (BNY D. 1, Final Order Authorizing Debtors to Reject Certain Aircraft), and rejected the applicable Participation Agreements upon confirmation of the Plan.  BNY D. 3, Plan Schedule 10.2(b); BNY D. 4, Order Confirming Debtors' Joint Plan of Reorganization.  Once rejection occurs, courts must look to ordinary state contract law principles to determine the effect of the material breach on the non-breaching party.  *In re Enron Corp.*, 354 B.R. 652, 659 (S.D.N.Y. 2006).  When one party materially breaches an agreement, *i.e.*, when it will no longer "substantially perform the contract," the non-breaching party "is discharged from performing his obligation."  *Jafari v. Wally Findlay Galleries*, 741 F. Supp. 64, 68 (S.D.N.Y. 1990).  Non-payment under a contract is a material breach, *Franklin Pavkov Const. Co. v. Ultra Roof, Inc.*, 51 F. Supp. 2d 204, 215 (N.D.N.Y. 1999), as is a failure to perform other core lease obligations, *In re Metromedia Fiber Network, Inc.*, 335 B.R. 41, 64-65 (Bankr. S.D.N.Y. 2005).  Here, upon Delta's material breach of both the Participation Agreement and Lease, BNY was discharged of any obligations it had under those agreements.  Delta thus cannot require BNY to enter into or approve a "supplement to [the] Lease" for the purpose of amending the SLV schedules.  *See In re U.S. Truck Co., Inc.*, 74 B.R. 515, 528 (Bankr. E.D. Mich. 1987) (finding that rejected agreement could not be modified).

The SLV adjustment provision is a clause requiring execution of a contract supplement and, perforce, assumes a situation where the non-breaching party has extant contract obligations.  Indeed, the very fact that the operative documents require an amendment of all the "amounts" (plural) set forth in the entire SLV schedule confirms that the adjustment provision contemplates a circumstance in which the Lease is ongoing.  Otherwise, there would be no reason to require a recalculation of all the scheduled SLV payments that could be due in the future.  No matter how the Lease concludes – whether its term expires, whether Delta exercises a right to purchase the aircraft, whether Delta materially breaches or otherwise – the opportunity for Delta to require a Lease amendment no longer then exists.  Consequently, post-rejection, the SLV amount cannot be adjusted; it was fixed at the time of the material breach, *i.e.,* immediately before the petition date.

2.  Delta's Overlap Argument Should Be Rejected

The only other potential ground for reducing the SLV is Delta's contention that when contract claims seek compensation for the same loss, one must be disallowed to the extent of the overlap, even if no contractual provision provides for such a set-off.  Delta Br. at 20.  BNY submits that Delta's "cosmic overlap" argument should be rejected for the reasons set forth in Judge Hardin's decision.  NW D. 39, Decision at 7-8.  Sophisticated parties, to secure financing, may agree both to indemnify equity investors for tax losses and to pay debt investors reasonable liquidated damages upon default.  "If a component of the SLV claim under the Lease is calculated by reference to the owner participant's tax consequences which are indemnified under the TIA (the 'overlap' Delta

objects to), so be it. That is what Delta agreed to and what both the owner participant and the indenture trustee relied upon in negotiating the agreements." *Id.* at 8.

Delta contends that this holding was in error because having to pay both SLV and TIA in full would be a penalty. Delta Br. at 23. This theory was not litigated below and was therefore waived. "[I]t is a well-established general rule that an appellate court will not consider an issue raised for the first time on appeal," unless the court finds either that (i) consideration is "necessary to remedy an obvious injustice" or (ii) "the elements of the claim were fully set forth and there is no need for additional fact finding." *Greene v. United States*, 13 F.3d 577, 586 (2d Cir. 1994). Here, while Delta argued below that having to pay both TIA and SLV claims in full would result in those claim holders receiving an "inequitable distribution" relative to other creditors, NW D. 1, TIA/SLV Objection ¶23 at 13, Delta never argued that such payments would be a penalty. Indeed, the word "penalty" was not even mentioned in Delta's briefs or at oral argument.

Delta's failure to litigate this theory below leaves this Court without a record sufficient to consider this issue. To invalidate a liquidated damages clause, one must show that "the amount fixed by contract is plainly or grossly disproportionate to the probable loss." *Leasing Serv. Corp. v. Justice*, 673 F.2d 70, 73 (2d Cir. 1982). Thus, mere "overlap" is insufficient; grossly disproportionate damages must be established. The "burden is on the party seeking to avoid liquidated damages ... to show that the stated liquidated damages are, in fact, a penalty." *RLI Ins. Co. v. St. Patrick's Home for the Infirm and Aged*, 452 F. Supp. 2d 484, 489 (S.D.N.Y. 2006) (quoted citation omitted).

Here, Delta contends that "the parties have admitted that SLV Claims and TIA Claims are duplicative of each other." Delta Br. at 3. That is incorrect. BNY argued

below that the "Lease is silent as to the components of SLV" (NW D. 25, BNY Response ¶6 at 3) and that "Delta cannot premise its Objection upon an overlap in the TIA Claim and [SLV] Claim because it has offered no evidence of any such overlap" (*id.* ¶15 at 5). In its decision, the Bankruptcy Court "assumed (*without deciding*) that the SLV claims include the calculations representing the tax consequence components which are equivalent to the TIA claims in amount." NW D. 39, Decision at 5 (emphasis added). Accordingly, neither the fact nor the extent of any overlap was established below.

The latter point is critical. Assume that SLV, as Delta argues, is intended to make both the debt and equity investors whole (even though the contracts do not say that). Thus, the SLV should be comprised of amounts sufficient to pay the debt holders any outstanding principal and interest, plus future interest that would have been earned, plus any damages for having to redeploy funds at a date before loan maturity. Additionally, the SLV should compensate the equity investors for their lost investment, plus their foregone return, plus any tax losses, plus the lost residual value of the aircraft, plus the costs of early redeployment of invested capital. What percentage, if any, of this SLV "package" is the tax component? And might not that tax component be included to offset the risk of another SLV component not turning out as projected (such as the residual value of the aircraft)? Delta has assumed that any overlap must be eliminated, but the law is clear that only liquidated damages "plainly or grossly disproportionate" to expected damages can be voided. Because Delta failed to raise its penalty argument and the facts needed to consider it are not in the record, the argument was waived.

Even if considered, however, Delta's penalty argument should be rejected. No authority holds that damages payable to different parties under different contracts -- one

of which does not contain a liquidated damages clause – can be voided if, when added together, such damages are grossly disproportionate to expected damages.  This is because a contract obligee cannot be presumed to have knowledge of, or to be bound by, terms in an agreement that it did not negotiate and to which it is not a party.

Presumably aware of this, Delta attempts on appeal to collapse the lessor/owner trustee (Wilmington Trust Company) and the owner participant (Northwestern Mutual), arguing that "[f]or purposes of tax losses, Northwestern and the Owner Trustee are not separate parties, and the BNY SLV Claims and the Northwestern TIA Claims provide different legal theories under which a single loss (Northwestern's tax loss) may be recovered by a single party (Northwestern)."  Delta Br. at 23-24.  This is incorrect.  Whether or not the SLV contains a tax loss component, BNY's SLV claim does not seek redress for Northwestern Mutual's tax losses.  As explained in BNY's initial brief on appeal, BNY Br. at 9-10, no part of any SLV payment will be distributed to Northwestern Mutual.  The entire SLV payment is owned outright by BNY.

What is more, the owner trustee (WTC) and the owner participant (Northwestern Mutual) are not interchangeable entities.  Lenders often insist upon the creation of owner trusts as a condition to investing in such transactions because the juridical separateness of the owner trustee from the owner participant creates a bankruptcy-remote borrower:

> The trust is an important element in protecting the Lender
> from risks arising from the bankruptcy of a noncredit party
> to the transaction.  By interposing a special purpose entity
> such as a trust between the Owner Participant and the
> transaction, the risk of a bankruptcy of the lessor-borrower
> is reduced, as is the potential exposure of the Lender to the
> protections of the bankruptcy court during a bankruptcy
> proceeding against the Owner Participant.

Mark A. Sternberg & Ross D. Taylor, *Leveraged Leasing from a Lender's Viewpoint*, *in* 1 EQUIPMENT LEASING—LEVERAGED LEASING, §8:2 at 8-14 (Ian Shrank & Arnold G. Gough, Jr. eds., 4th ed. 2007). Delta entered the transactions at issue knowing that the owner trustee's Lease rights would be pledged to BNY and that the TIA claims would be retained by Northwestern Mutual. The TIA and the Lease are separate contracts involving, by design, separate entities, and should not all be collapsed.

Finally, Delta argues that Judge Hardin erred in denying the overlap argument because his decision violates the rule in bankruptcy that similarly-situated creditors should receive the same *pro rata* distributions. Delta Br. at 24-25. This argument assumes the correctness of the conclusion it seeks to establish. The argument starts by positing that the TIA and SLV claims should be netted and then goes on to show the disproportionate recoveries that result from a failure to net. The whole issue, of course, is whether or not such netting should occur in the first place. If not, then no disproportionate recoveries result by the allowance of both the TIA and SLV claims. As shown above, because there is no contractual or common law basis for reducing the SLV, the SLV Claims should be allowed in full under all circumstances.

      3.      Even if the Court Reverses the Overlap Holding, It Should Affirm the Denial of the TIA/SLV Objection with Respect to the SLV Claims

Delta contends that if this Court upholds its overlap argument, the reduction should be of the TIA claims, Delta Br. at 20-21, a conclusion with which BNY obviously concurs. Such a conclusion is required by Section 20 of the Lease, which provides that the lessee's obligation to pay SLV in full "shall be absolute and unconditional" and not affected by any "set-off" rights of the lessee. NW D. 13 at Ex. 2, Lease §20 at 64. Even in the absence of such a provision, the SLV claims should receive priority both because

the SLV claims accrued before the TIA claims (as shown above), and because leveraged lease transactions, like most financings, are structured to ensure that debt investors have priority over equity holders. *See In re Northwest Airlines Corp.*, Case No. 05-17930, at 12 (Bankr. S.D.N.Y. July 27, 2007) (unreported) (annexed as Ex. 1 to Delta's brief).

C.     **Alternatively, if the TIA Claims Are Allowed, the Case Should Be Remanded**

Finally, if this Court holds that Northwestern Mutual has an allowed TIA claim and that Delta may reduce either the TIA or SLV claims, but that the Court cannot determine which takes priority, then BNY submits that this matter should be remanded for further proceedings. In such proceedings, the Bankruptcy Court should determine the amount of any TIA claims, the existence and scope of any overlap, whether such overlap is penal, and, if so, which party's claims should be reduced as a result.

## CONCLUSION

This Court should affirm the holding denying the TIA/SLV Objection as to BNY's N803 and N804 SLV claims, regardless of its decision on Delta's cross-appeal. If, however, the Court concludes that the SLV claims could be reduced, BNY requests that this matter be remanded for further proceedings to address that issue.

Dated: November 27, 2007

By: s/ *Eric Fishman*
 Leo T. Crowley (LC-1311)
 Eric Fishman (EF-9664)
 Margot Erlich (ME-2117)
 PILLSBURY WINTHROP SHAW PITTMAN LLP
 1540 Broadway
 New York, NY 10036-4039
 (212) 858-1740

 Attorneys for The Bank of New York, as Indenture Trustee and Pass Through Trustee