**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

In re:

**DELTA AIR LINES, INC., et al.,**

                **Debtors.**

**Chapter 11**
**Case No. 05-17923**
(Jointly Administered)

---

**THE NORTHWESTERN MUTUAL LIFE**
**INSURANCE COMPANY,**

                **Appellant**,

v.

**DELTA AIR LINES, INC. and**
**THE POST-EFFECTIVE DATE**
**COMMITTEE OF DELTA**
**AIR LINES, INC.,**

                **Appellees.**

**Case No. 07-CV-7745 (RB)**
(ECF Case)

---

## CROSS-APPELLEE BANK OF AMERICA, N.A.
## <u>RESPONSE BRIEF ON APPEAL</u>

Michael J. Edelman (ME-6476)
Vedder, Price, Kaufman & Kammholz, P.C.
1633 Broadway, 47th Floor
New York, New York 10019
Phone:  (212) 407-7700

Douglas J. Lipke
Jonathan H. Bogaard
Vedder, Price, Kaufman & Kammholz, P.C.
222 North LaSalle Street, Suite 2600
Chicago, Illinois 60601
Phone: (312) 609-7500

*Counsel for Cross-Appellee Bank of America, N.A.*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................... 1

STATEMENT OF BASIS OF APPELLATE JURISDICTION.................................... 3

STATEMENT OF THE CASE.............................................................................. 3

STATEMENT OF FACTS .................................................................................... 6

     1.    The Participants and the Operative Documents.................................... 6

     2.    The Separate TIA and SLV Claims ..................................................... 8

     3.    The Priority Position of the Loan Participant ....................................... 9

     4.    The Operative Documents Contain Numerous Protections against Adjustment of the SLV Claims.................................................................. 9

     5.    Debtor's Bankruptcy Filing Triggered Defaults under Lease and Indenture ...... 10

ARGUMENT ................................................................................................... 11

I.  AS THE BANKRUPTCY COURT HELD, AS A MATTER OF LAW,  NO "COSMIC OVERLAP" OBJECTION MAY BE SUSTAINED........................................ 11

     1.    "Cosmic Argument" Is Insufficient to Rebut Validity of Claim Under Bankruptcy Law............................................................................... 11

     2.    As a Matter of Contract Law, the Claims are Individually Enforceable ............. 12

     3.    As the Bankruptcy Court Held, the Case Law Cited by the Cross-Appellants Does Not Support the Theory of "Cosmic Overlap" ........................ 13

II.  RESERVATION OF RIGHTS REGARDING CONTRACT OVERLAP OBJECTION IF CROSS-APPELLANTS REVIVE SUCH CLAIMS IN THIS APPEAL ........................................................................................ 14

CONCLUSION................................................................................................ 15

NEWYORK/#187636.5

# TABLE OF AUTHORITIES

## CASES

*Baker v. Dorfman*, 239 F.3d 415 (2d Cir.2000)..............................................................17

*Diversified Graphics, Ltd. V. Groves*, 868 F.2d 293 (8th Cir. 1989) ...........................13

*Hanover Direct, Inc. v. T.R. Acquisition Corp. (In re T.R. Acquisition Corp.),*
309 B.R. 830, 842 (S.D.N.Y. 2003)................................................................................17

*In re Brinke Transp., Inc.,*
No. 87-03785, 1989 WL 233147 (Bankr. D.N.J. Jan. 23, 1989)....................................14

*In re Chateaugay Corp.,*
115 B.R. 760 (Bankr. S.D.N.Y. 1990)............................................................................14

*In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey,*
160 B.R. 882 (Bankr. S.D.N.Y. 1993).............................................................................14

*In re Rockefeller Center Properties, Inc.,*
272 B.R. 524 (Bankr. S.D.N.Y. 2000).............................................................................11

*In re Simetco, Inc.,*
No. 93-61772, 96 WL 651001 (Bankr. N.D. Ohio Feb. 15, 1996)................................14

*United States v. Security Indus. Bank*, 459 U.S. 70, 75 (1982) ....................................18

## STATUTES

U.S. Const. amend. V........................................................................................................18

11 U.S.C. § 502(a) ...........................................................................................................12

11 U.S.C. § 502(b)(1) .......................................................................................................12

28 U.S.C. § 158(a) .............................................................................................................3

Cross-Appellee Bank of America, N.A. (the "*BofA*"), the beneficial holder of proof of claim number 5335 to the extent such proof of claim relates to the aircraft bearing FAA registration number N182DN (the "*N182DN Aircraft*") and the leveraged lease transaction related to the N182DN Aircraft (such portion of the claim, the "*SLV Claim*"), submits this brief in response to the amended brief, dated November 16, 2008 (the "*Delta Brief*"), of Delta Air Lines, Inc. (the "*Debtor*") and the Post-Effective Date Committee (the "*Committee*", and along with Delta, the "*Cross-Appellants*") that the Cross-Appellants filed in support of their cross-appeal from the Order with Respect to TIA/SLV Objection 2, entered by the United States Bankruptcy Court for the Southern District of New York on July 18, 2007 (the "*July 18th Order*").[1]

## PRELIMINARY STATEMENT[2]

In a well-reasoned analysis of both the governing law and the operative agreements at issue, Judge Hardin held that TIA/SLV Objection 2 should be overruled as to any claims filed by holders of SLV claims. *See* Ex. D-39. In the proceedings before the United States Bankruptcy Court for the Southern District of New York (the "*Bankruptcy Court*"), the Cross-Appellants raised two objections to the full allowance of SLV claims. *See* Ex. D-2. First, the Cross-Appellants contended that SLV claims "overlap" with TIA claims, and that such overlap is impermissible as a matter of law (the "*Generalized Overlap Objection*"). *See* Ex. D-2, at 9-14. In its Decision, the Bankruptcy Court overruled the Generalized Overlap Objection,

---

[1] References to Exhibits refer to the items contained in the Appellant's Designation of the Record (referenced as "Ex. D-[__]") and to the Cross-Appellants' Designation and Counter-Designation of the Record (referenced as "Ex. CD-[__]"). A copy of the July 18th Order is attached as Ex. D-46.

[2] Capitalized terms not otherwise defined in this Preliminary Statement shall have the meanings ascribed to such terms hereafter in this Response Brief.

NEWYORK/#187636.5

holding that there is no legal support for the contention that a debtor may relieve itself of its prepetition contractual agreements simply because two contracts relate to the same subject matter. *See* Ex. D-39 (Decision), at 6-8. Second, the Debtors cursorily argued that if "any payment is made pursuant to a [TIA claim], [the related SLV claim] must be recomputed" (such objection, the "Contract Overlap Objection"). *See* Ex. D-2, at 15. The Bankruptcy Court also determined that the contract based overlap objection against SLV claims failed. *See* Ex. D-39, at 11.

Notwithstanding the detailed decision by Judge Hardin, followed by hearings clarifying the rulings and the court's further reconsideration of the decision by request of the Appellant and Cross-Appellants, the Cross-Appellants bring this appeal, alleging that the Bankruptcy Court erred as a matter of law when it held that the Generalized Overlap Objection lacked any basis at law.[3] The Cross-Appellants, however, fail to allege any basis to overrule the Bankruptcy Court's rulings with respect to denial of the objections to the SLV claims. Rather than citing to relevant legal authority to attack the SLV Claims, the Cross-Appellants cite to factually inapposite cases involving co-debtors, joint liability for tort claimants, and statutory joint liability. Those cases are not relevant to the instant situation where the SLV claims arise as independent, primary contractual obligations specifically agreed upon by the Debtor. The reason for this failure to cite applicable law is because no such legal basis exists to support the reduction of the SLV Claim. Accordingly, the Bankruptcy Court's properly-rendered Decision and its July 18th Order should be affirmed with respect to the denial of all objections relating to the SLV claims.

---

[3]     In their statement of issues on appeal set forth in the Delta Brief and in argument section the Delta Brief, the Cross-Appellants are not pursuing an appeal the Bankruptcy Court's ruling rejecting the Contract Overlap Objection with respect to the SLV Claims.

2

## STATEMENT OF BASIS OF APPELLATE JURISDICTION

This Court has appellate jurisdiction by reason of section 158(a) of title 28 of the United States Code, 28 U.S.C. § 158(a).

## STATEMENT OF THE CASE

In August 2006, the Bank of New York timely filed a proof of claim, later designated as claim no. 5335 in the Debtors' bankruptcy cases, which proof comprises the claims of loan participants in several leveraged-lease financings, including the financing relating to the N182DN Aircraft. BofA is the loan participant (the "*Loan Participant*") that is the beneficial holder of the SLV Claim.

On December 22, 2006, the Cross-Appellants filed their "Notice of Litigation of Designated Objection with Respect to Overlapping SLV Claims and TIA Claims", whereby they sought to have the Bankruptcy Court declare that dozens of leveraged lease financing claims should be reduced or disallowed because they were "overlapping" (the "*Initial Overlapping Objection*"). *See* Ex. D-16 (BofA Response to TIA/SLV Objection 2), at 4. On January 31, 2007, the Bankruptcy Court held a status conference concerning the Initial Overlapping Objection. *Id.* After hearing the arguments of the Debtors and several of the parties opposing the relief requested in the Initial Overlapping Objection, the Bankruptcy Court determined that it could not rule on the Debtors' objection without reviewing the underlying contracts relating to the proofs of claim to which the Debtors objected. *See* Ex. CD-1 (Transcript of January 31, 2007 Bankruptcy Court hearing). In this regard, the Bankruptcy Court requested that the Debtors file:

> one or more specific objections . . . with regard to what the debtor regards as overlapping, duplicative, conflicting claims by owner participants and indenture trustees or lenders. With regard to a particular transaction, [the Objectors should] furnish [the Court] with the actual contractual documents that govern that transaction and address . . . arguments to those contractual documents . . . .

*Id.,* at 95-96.

On February 20, 2007, in accordance with the Bankruptcy Court's request, the Debtors filed, *inter alia*, "TIA/SLV Objection 2:  Objection by Delta Air Lines, Inc. and the Official Committee of Unsecured Creditors to Certain Claims Filed by Northwestern Mutual Life Insurance Company and the Bank of New York for Tax Indemnities and Stipulated Loess Values" ("*TIA/SLV Objection 2*"), seeking to disallow the TIA claims relating to certain aircraft financings or, alternatively, to disallow such portions of the SLV claims (and, with respect to the N182DN Aircraft transaction, the SLV Claim) that allegedly "overlapped" therewith.  *See* Ex. D-2 (TIA/SLV Objection 2).

On March 30, 2007, the Bankruptcy Court held a hearing concerning, *inter alia*, TIA/SLV Objection 2, and, on May 16, 2007, issued its Decision on TIA/SLV Objections 1 and 2 (the "*Decision*").  *See* Ex. D-39.  In the Decision, the Bankruptcy Court rejected the Generalized Overlap Objection – what if referred to as the "cosmic" argument, stating that:

> Delta cannot now avoid its contractual obligations either to the owner participants for TIA or to the indenture trustee for SLV under the Lease by resort to a general rule of law which has never been applied to impair contract rights.

*See* Ex. D-39 (Decision), at 8.  Rather, the Bankruptcy Court determined that it is necessary to review the operative agreements themselves before determining the parties' rights and obligations in the context of bankruptcy.  *Id.,* at 8.  The Bankruptcy Court then held that the specific language of the participation agreements in question, coupled with the absence of any demand for payment or payment of tax indemnity before the Debtor's Petition Date, precluded the disallowance of any portion of the SLV claims on the basis of the tax indemnity claim.  *Id., at 11*.  As the Bankruptcy Court noted:

> [T]he fact that SLV payments can be reduced under Section 8(c) of the Participation Agreement as a consequence of payments to the owner participant under the TIA is not relevant in this case because there have not been any payments by Delta to the owner participant under the TIA."

*See* Ex. D-39 (Decision), at 11.  The Bankruptcy Court also noted that a reduction of the SLV claims was inappropriate here because "prior to bankruptcy the owner participant did not demand payment under the TIA."  *Id.*  In contrast, and as the Bankruptcy Court also noted, Delta's commencement of its bankruptcy case triggered the Debtor's SLV claim obligation (which claims are held by the Indenture trustee).  *Id.*, at 8-9.  Accordingly, the objections of the Debtor to the SLV claims (including the BofA's SLV Claim) were denied in all respects in the July 18th Order.  *See* Ex. D-46, at 2.

On May 21, 2007, the Bankruptcy Court held a telephonic conference (the "*May 21 Hearing*") concerning its determinations as set forth in the Decision and steps going forward, during which conference the Appellant and Cross-Appellants noted that they would file motions for reconsideration of the Decision.  On June 1, 2007, the Appellant and Cross-Appellants each filed a motion for reconsideration (together, the "*Reconsideration Motions*"). *See* Ex. D-43 & D-44.  After reviewing the Reconsideration Motions, the Bankruptcy Court held a telephonic hearing on July 10, 2007 (the "*July 10 Hearing*") concerning the Reconsideration Motions.  After hearing the parties on the matters at issue, the Bankruptcy Court entered the July 18th Order that:  (i) granted the Cross-Appellants' reconsideration motion, (ii) denied the Appellant's reconsideration motion, (iii) disallowed and expunged the TIA claims and (iv) overruled the Cross-Appellants' objection to the SLV claims (including BofA's SLV Claim). *See* Ex. D-46 (July 18th Order).[4]

---

[4] The Order incorporates by reference the transcripts of the May 21 Hearing and the July 10 Hearing.

In their cross-appeal, the Cross-Appellants argue that this Court should reverse the Bankruptcy Court's determination of law as to the Debtors' "cosmic overlap" theory.  As set forth below, however, the Bankruptcy Court's Decision and July 18th Order are each unassailable as a matter of law, and should be affirmed with respect to the SLV claims.

## STATEMENT OF FACTS

Prior to its bankruptcy petition filing, the Debtor (and along with its affiliated debtor entities, the "*Debtors*") entered into numerous multi-party transactions to finance its aircraft fleet through secured lease financing transactions.  By structuring these transactions to provide beneficial tax and collateral protection attributes, the Debtor obtained a low-cost means to finance its aircraft fleet.

### 1.    The Participants and the Operative Documents

There are five participants involved in the leveraged lease financing for aircraft such as the one involving the N182DN Aircraft.  These participants are:

(i)     "*Lessee*":  the Lessee of the aircraft; in this case, the Debtor;

(ii)    "*Lessor*" or "*Owner Trust*":   (x) the owner of the aircraft; generally, a Delaware grantor trust administered by a trustee (the "*Owner Trustee*"), and, in this case, Wilmington Trust Company, and (y) the party that leases the aircraft under the aircraft lease;

(iii)   "*Indenture Trustee*":  the lenders' trustee, employed under the terms of a trust indenture agreement (the "Indenture") pursuant to which the lenders make loans to the Owner Trust to fund its purchase of the aircraft;

(iv)   "*Owner Participant*":   the entity that holds the beneficial ownership interest in the Owner Trust relating to the aircraft; here, Appellant; and

(v) "*Loan Participant*":  the lenders who fund the Owner Trust's purchase of the aircraft; here, with respect to the N182DN Aircraft, BofA.

*See* Ex. D-16 (BofA Response to TIA/SLV Objection 2), at 6; D-39 (Decision), at 3-4.

In the leveraged lease transaction at issue relating to the N182DN Aircraft, the following are the material operative agreements that set forth the various rights, interests and claims that each of the above parties possesses in the transaction (collectively, the "*Operative Documents*"):

(i) "*Lease*":  the agreement between the Lessee (the Debtor) and the Lessor (the Owner Trustee) setting forth the terms pursuant to which the Debtor leased the N182DN Aircraft from the Owner Trustee.   Under the terms of the Lease and the Participation Agreement, the Debtor, as lessee, expressly acknowledges (in the first instance, on the top of the cover page to the Lease) that the Lessor's rights under the Lease and all rights to rent, supplemental rent and the SLV Claim against Lessee are assigned by Lessor to the Indenture Trustee.   Lessee agrees to directly pay all such amounts otherwise payable to the Lessor directly to the Indenture Trustee under the terms of the Lease;

(ii) "*Participation Agreement*": the agreement setting forth certain basic agreements of the parties to the leveraged lease financing transaction and establishing the identities of the Lessee, the Owner Trustee, the Indenture Trustee, the Owner Participant, and the Loan Participant involved with respect to the N182DN Aircraft;

(iii) "*Indenture*": the agreement between the Owner Trustee and the Indenture Trustee pursuant to which the Loan Participant loaned funds to the Owner Trustee and pursuant to which the Indenture Trustee is assigned, *inter alia*, the following assets of the Lessor as security for such loans:  (a) the Lessor's ownership interest in the N182DN Aircraft, and (b) all of Lessor's rights under the related Lease, including all rights to rent, supplemental rent and the SLV Claim against Lessee; and

7

(iv) "*Indemnity Agreement*" or "*TIA*": the separate, independent Tax Indemnity Agreement between the Debtor and the Owner Participant by which Debtor agreed to indemnify Owner Participant for certain tax losses suffered by the Owner Participant. Other than Lessee and Owner Participant, no other entities are party to the TIA, and the TIA is generally not shared with the other parties to the transaction documents. Lessee agrees to pay amounts due under the terms of the TIA directly to the Owner Participant.

*See* Ex. D-16 (BofA Response to TIA/SLV Objection 2), at 7; D-39 (Decision), at 3-4. Copies of the relevant portions of these agreements as they relate to the N182DN Aircraft transaction are annexed to the Declaration of Michael J. Edelman, dated March 22, 2007. *See* Ex. CD-5.

2.   **The Separate TIA and SLV Claims**

It is undisputed by the parties that, under the Operative Documents, the Lessor does not assign to the Indenture Trustee rights under the TIA. In fact, the Lessor cannot assign any rights under the TIA because the Lessor is not a party to, and has no rights under, the TIA. Rather, as set forth above, the TIA is an agreement between Lessee and the Owner Participant. *See* Ex. D-39 (Decision), at 4.

The SLV Claim and the TIA Claim relating to this leveraged lease transaction are two distinct claims, held by different parties and arising out of different agreements:

(i) *SLV Claim*: Claims arising under the terms of the Lease between the Lessor and the Lessee. Under the Operative Documents, the Lessee and each of the other parties specifically acknowledges that the SLV Claim is assigned to the Indenture Trustee as security for the payment in full of the loan amounts owed by the Lessor to the Loan Participant under the terms of the Indenture. After the debt under the Indenture is paid in full, any excess proceeds are turned over to the Lessor. Other than holding a beneficial interest in the Lessor, the Owner Participant has no right, at any time, to any portion of the SLV Claim. *See* Ex. D-39 (Decision), at 4; D-16 (BofA Response to TIA/SLV Objection 2), at 8; and

(ii) *TIA Claim*:  Claims arising under the terms of the TIA between the Owner Participant and the Lessee.  Neither the Owner Participant nor the Lessee shared the terms of the TIA with the Indenture Trustee or the Loan Participant – and, accordingly, such parties do not have knowledge of the terms thereof.  None of the Owner Trustee, the Indenture Trustee or the Loan Participant has any interest in the amounts, if any, payable to Owner Participant under the TIA.  *See* Ex. D-39 (Decision), at 4; D-16 (BofA Response to TIA/SLV Objection 2), at 8.

In short, the SLV Claim is a contractually-based claim asserting primary, independent obligations against the Debtor that belong to the Loan Participant and the Indenture Trustee (together, the "*Lender Parties*") until the Indenture debt is repaid in full.  The TIA Claim is also a separate, contractually-based claim against the Debtor.

The holders of the TIA Claim and the SLV Claim have been, since the consummation of the leveraged lease transaction, and continue to be, distinct entities.  *See* Ex. D-16 (BofA Response to TIA/SLV Objection 2), at 8.

3.    <u>The Priority Position of the Loan Participant</u>

The Loan Participant is a secured debtholder.  The Loan Participant debt is secured by, among other things, the full SLV Claim – a fact recognized by all parties.  *See, e.g.,* Northwestern Mutual Life Insurance Company's Brief, dated October  2007, at 4; Delta Brief, at 2.  The parties further acknowledge that a portion of the SLV Claim ***may*** reflect certain tax elements – and, like all components of the SLV Claim, to the extent such tax elements constitute a part of the SLV Claim, they remain subject to the security interests granted to the Indenture Trustee.  *See* Ex. D-16 (BofA Response to TIA/SLV Objection 2), at 10.

In contrast, the Owner Participant is an equityholder in the Lessor (*i.e.*, it owns the beneficial interest in the Owner Trust).  By the terms of the Operative Documents, the Lessor's right to any portion of the SLV Claim is expressly made inferior to the rights of the

9

Indenture Trustee to such claims. The Owner Participant has no independent right to the SLV

Claim and is only entitled, if at all, to a portion of the proceeds of the SLV Claim after the

Indenture debt has been repaid in full. *See* Ex. D-39 (Decision), at 4.

4.    **The Operative Documents Contain Numerous Protections against Adjustment of the SLV Claims**

The senior secured position held by BofA, as the Loan Participant, and the

Indenture Trustee is recognized in numerous provisions of the operative documents, which

provisions protect against any downward adjustment of the SLV Claims. These contractual

protections include:

- Under the terms of the Indenture, the Lease and all "rights, powers or remedies on the part of the Owner Trustee" have been assigned to the Indenture Trustee under the Indenture's Granting Clause. *See* Ex. CD-5 at Ex. C (Indenture), Granting Clause § 2, at 3. (The limited carve-out to such assignment is not applicable given the existence of an Indenture event of default.)

- Section 23 of the Lease similarly provides that until the debt is repaid in full, all rights of the Owner Trustee under the Lease may be exercised only by the Indenture Trustee, as assignee of the Owner Trustee's rights under this Lease pursuant to the Indenture. *See* Ex. CD-5 at B (Lease), § 23.

- Section 22 of the Lease requires that the Indenture Trustee consent to any amendment to the Lease. *See* Ex. CD-5 at Ex. C (Indenture), Granting Clause § 2, at 3. Because any adjustment to the SLV amounts require an Lease Supplement, no such adjustments may be made without the consent of the Lender Parties. *See* Ex. CD-5 at A (Participation Agreement), § 3(e). (In the instant case, any adjustment to the SLV Claim (as sought by the Cross-Appellants) would require the express consent of the Lender Parties under the terms of sections 3(e) and 6(d) of the Participation Agreement. *See* Ex. CD-5 at A (Participation Agreement), § 3(e) & 6(d).

- In addition to granting to the Lender Parties the exclusive right to amend the Lease for any recalculation of the SLV under the Lease during an Indenture Event of Default, the operative documents also expressly prohibit any modification of the SLV amounts that may jeopardize the repayment of the full Indenture obligations owed to the Lender Parties. *See* Ex. CD-5 at Ex. B (Lease), § 23 ("Notwithstanding any other provision of this Lease or the Participation Agreement to the contrary,

10

Stipulated Loss Value, Termination Value and Early Buyout Price shall not be adjusted to be below the amounts required to pay in full, as of the date of payment thereof, the aggregate unpaid principal amount of the Certificates outstanding on such date of payment, together premium, if any, and the accrued and unpaid interest"); *see also* CD-5 at Ex. A (Participation Agreement), § 9.

• Section 20 of the Lease further provides that the Lessee's obligation to pay SLV (which is a type of Supplemental Rent (as defined in the Lease)) is not subject to "any set-off, counterclaim, recoupment, defense or other right which Lessee may have against Lessor, the Owner Participant … (whether in connection with the transaction hereunder or any other transaction) . . .". *See* Ex. CD-5 at Ex B (Lease), §20.

Each of the foregoing contract provisions, among others, provides numerous contractual protections to the rights and claims held by the Lender Parties.

## 5.    Debtor's Bankruptcy Filing Triggered Defaults under Lease and Indenture

The Debtor's commencement of its chapter 11 case on September 14, 2005 (the "*Petition Date*") triggered an "Event of Default" under the Lease. *See* Ex. CD-5 at Ex B (Lease), § 14(f).  Such Event of Default under the Lease also constituted an "Indenture Default" and "Indenture Event of Default" under the Indenture.  *See* Ex. CD-5 at Ex C (Indenture), §§ 1.01 (definitions), 7.01(a).

The Event of Default caused all principal, interest and other amounts outstanding under the Indenture to be accelerated and become due and payable as of the Petition Date.  *See* Ex. CD-5 at Ex C (Indenture), § 7.02(b).  Despite the full Indenture debt being accelerated as of the Petition Date, the Owner Trustee has failed to repay such debt.

11

**ARGUMENT**

**I.**

**AS THE BANKRUPTCY COURT HELD, AS A MATTER OF LAW,
NO "COSMIC OVERLAP" OBJECTION MAY BE SUSTAINED**

The Cross-Appellants' cross-appeal is premised upon the same theory considered and expressly rejected by the Bankruptcy Court as a matter of law: that discrete contracts entered into by a debtor prior to its bankruptcy filing may be disregarded insofar as the debtor would be required to remunerate the separate non-debtor contract parties based on a purportedly similar loss.

**1.      "Cosmic Argument" Is Insufficient to Rebut
Validity of Claim Under Bankruptcy Law**

The allowance of claims is governed by section 502 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "*Bankruptcy Code*"). *See In re Rockefeller Center Properties, Inc.*, 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000). Bankruptcy Code section 502(a) states that a filed claim is deemed allowed unless a party in interest objects. *See* 11 U.S.C. § 502(a). Under section 502(b), a bankruptcy court is required to "allow such claim in such amounts . . . except to the extent that [s]uch claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured" or is otherwise subject to disallowance under the other provisions of Bankruptcy Code section 502. *See id.*, § 502(b)(1)).

As has been acknowledged by the Cross-Appellant, the SLV Claim is a claim that is expressly provided for under the Operative Documents. *See* Delta Brief, at 12-13. The Cross-Appellants offered no evidentiary proof to the Bankruptcy Court of entitlement to reduce the

12

SLV Claim.  Accordingly, the Bankruptcy Court was required to determine whether, as a matter of applicable law, the Cross-Appellants' generalized objection to "overlap" should be sustained.

### 2.    As a Matter of Contract Law, the Claims are Individually Enforceable

The SLV Claim and TIA Claim are not duplicative – even if one assumes that some portion of the liability arises from the same triggering event.[5]  These claims:

- arise from separate contracts between distinct parties.  The SLV Claim arising under the Lease and the TIA Claim arising under the TIA.

- are held by different parties.  The SLV Claim is held by the Indenture Trustee for the benefit of the Loan Participant, whereas the TIA based claim is held by the Owner Participant.

- have never been held by the same parties.  The SLV Claim is based upon rights granted by the Lessee under the Lease to the Lessor, who immediately assigned the claim to the Indenture Trustee.  The TIA Claim has always been held by the Owner Participant.

Accordingly, any suggestion that the claims are "duplicative" and are based upon "one right to payment" ignore the fundamental and independent nature of the claims as established pursuant to the Operative Agreements.

### 3.    As the Bankruptcy Court Held, the Case Law Cited by the Cross-Appellants Does Not Support the Theory of "Cosmic Overlap"

As the Bankruptcy Court noted in the Decision, the Cross-Appellants rely on "a general principle of common law and several cases which … have no application to the facts here" to support their contention that "overlap" of contractual claims is impermissible as a matter of law.  *See* Ex. D-39 (Decision), at 6.  Indeed, as the Bankruptcy Court stated, "the general legal

---

[5]  The SLV Claim arises from Lessee's default (and ultimate rejection) of the Lease.  The TIA Claim most likely will arise from a subsequent foreclosure by the Indenture Trustee, which divests the Lessor of its ownership of the Aircraft.  Thus, technically, the claims do not arise from the same triggering event.  Although it is uncommon, an owner participant has occasionally been able to agree with the debt holder to indefinitely postpone foreclosure and thus not trigger a TIA Claim.  An owner participant could also fund the lessor, and thereby pay off its debt to avoid foreclosure.  Thus, while the default on and rejection of the Lease is likely to lead to the triggering of a TIA Claim, it is not inevitable.

13

principle that precludes double liability for a single injury or loss has never been applied by any court to void separate *contract obligations* owed to different parties under different contracts." *See* Ex. D-39 (Decision), at 7 (emphasis in original). The Cross-Appellants' contention that the claims and contracts are held by the same parties are contradicted by the controlling facts outlined above. *See supra,* at 9, 13-14.

The cases cited by the Cross-Appellants are the same cases that they relied upon before the Bankruptcy Court, which cases either (a) disallow claims for "reimbursement or contribution" under Bankruptcy Code 502(e), or (b) disallow claims from two parties seeking duplicative relief on account of legal theories arising from the same injury. *See* Delta Brief, at 21-22 (citing *Diversified Graphics, Ltd. v. Groves*, 868 F.2d 293, 294-95 (8th Cir. 1989) (claimant sought multiple recoveries for damage claim against single debtor based upon separate theories); *In re Simetco, Inc.,* No. 93-61772, 96 WL 651001 (Bankr. N.D. Ohio Feb. 15, 1996) (although PBGC asserted two theories against debtor, PBGC only entitled to assert one claim); *In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey,* 160 B.R. 882, 894 (Bankr. S.D.N.Y. 1993) (statutory co-debtor case; pension plan and union assert claims arising from single pension agreement; in addition PBGC appears to be co-debtor as statutory guarantor of pension claims); *In re Chateaugay Corp.,* 115 B.R. 760, 784 (Bankr. S.D.N.Y. 1990) (although PBGC asserted two theories against debtor, PBGC only entitled to assert one claim), *aff'd*, 130 B.R. 690 (Bankr. S.D.N.Y. 1991), vacated by agreement of parties, 17 Employee Benefits Cas. (BNA) 1102 (S.D.N.Y. 1993); *In re Brinke Transp., Inc.,* No. 87-03785, 1989 WL 233147, at *3 (Bankr. D.N.J. Jan. 23, 1989) (claims based upon violation of single collective bargaining agreement brought by union and pension fund)).

As the Bankruptcy Court noted, however, these cases are not relevant to the instant objection asserted by the Cross Appellants. The recoveries owed on account of the SLV and TIA claims here do not result from a *single injury*, they result from *multiple contracts*. *See* Ex. D-39 (Decision), at 7 ("We are concerned here with contract claims by different parties based on different contracts in which [the Debtor] agreed to pay the [TIA claimant] under the TIA, and separately agreed to pay the [Loan Participant] as assignee under the lease"). The Bankruptcy Court properly held that "Delta cannot now avoid its contractual obligations either to the [TIA claimant] or to the [Loan Participant] by resort to a general rule of law which has never been applied to impair contract rights." *See* Ex. D-39 (Decision), at 8.

The Cross-Appellants' seek to evade the Bankruptcy Court's ruling denying the Generalized Objection Theory on the grounds that (a) such claims do not represent actual losses, (b) the Owner Participant and Owner Trustee are not distinct entities, and (c) such result would allow parties to receive disproportionate recoveries. *See* Delta Brief, at 22-24. These allegations, however, lack any basis. First, the SLV claims against the Debtor were granted as collateral to secure the loans actually made by the Lender Parties, which grant of collateral was expressly agreed upon by the Debtor in the Operative Documents. *See, e.g.,* Ex. CD-5 at B (Lease), § 23. With respect to the SLV claims, no party can rationally claim that the Lender Parties did not suffer "actual losses" on their loans, for which the Debtor agreed to the collateral assignment of the SLV claims. Thus, with respect to the SLV claims, such allegation lacks any basis in fact or law.[6]

---

[6]    The Cross-Appellants also allege that recognition of both TIA and SLV claims may constitute a penalty. *See* Delta's Brief at 23. Such an allegation was not raised by the Debtor before the Bankruptcy Court and, absent manifest injustice, should be disregarded by this Court. *See, e.g., Baker v. Dorfman*, 239 F.3d 415, 420 (2d Cir.2000) (appellate courts do not consider issues that were not raised before the trial court); *Hanover Direct, Inc. v.*

(cont'd)

NEWYORK/#187636.5

Second, the Cross-Appellants cite to no relevant authority for the proposition that the owner participant and the owner trustee are the same entity and that the SLV claims are owed to the same party.  *See* Delta Brief, at 23-24.  The only asserted basis for such a contention is that "for tax purposes" the Owner Participant and the Owner Trustee are considered on a consolidated basis – but that is true for any wholly-owned subsidiary and all entities within a consolidated tax group.  Legally, aside from tax purposes, the Owner Trusts and the Owner Participants are distinct entities.  More fundamentally, although the Indenture Trustee is not a party to the Lease, in the Lease itself, Delta acknowledged that all rights under the Lease and with respect to SLV claims were assigned to the Indenture Trustee.  *See* Ex. CD-5 at B (Lease), § 23.  In contrast, the TIA claim arises from the TIA, an agreement in which only the Owner Participant possesses rights.  *See supra,* at 8-9.  In sum, and notwithstanding the Cross-Appellant's unsubstantiated assertions in their brief, the TIA and SLV claims (a) arise from separate contracts between distinct parties; (b) are held by different parties; and (c) have never been held by the same parties.  *See supra,* at 14.  Accordingly, the Cross-Appellant's contention that the SLV and TIA claims are owed to the same party lacks any basis at law or in fact.

Third, the Cross-Appellants allege that the parties would be able to obtain a greater recovery than other similarly-situated creditors.  *See* Delta's Brief, at 24.  This allegation amounts to a reiteration of the Debtors' assertion that each SLV claim and TIA claim amount to a single claim.  As set forth above, there is no legal basis for such a contention.  The Cross-

---

(cont'd)

*T.R. Acquisition Corp. (In re T.R. Acquisition Corp.),* 309 B.R. 830, 842 (S.D.N.Y. 2003) (same).  Indeed, as this argument wasn't even raised before the Bankruptcy Court, the Cross-Appellants also failed to provide any evidentiary support for such contention.  Further. even if such argument was raised below, it is based upon the allegation regarding the lack of "actual loss" – which allegation has no basis with respect to the SLV claims.

16

Appellants' theory lacks any basis where, as here, such claims are based upon separate contracts with different counterparties, owed to different creditors and arise from different events.  *See supra,* at 8-9, 13 n.5.  The Lender Parties are receiving the same distribution rights on their SLV claims as any other holder of general unsecured claims in the Debtor's chapter 11 case.  There is no inequitable distribution here.[7]

In sum, because the Cross-Appellants have yet to provide any factual, contractual or case law support to bolster their Generalized Overlap Objection, the Bankruptcy Court's decision must be upheld.

## II

## RESERVATION OF RIGHTS REGARDING CONTRACT OVERLAP OBJECTION IF CROSS-APPELLANTS REVIVE SUCH CLAIMS IN THIS APPEAL

In the Cross-Appellants' Designation and Counter-Designation of Contents for Record on Appeal and Cross-Appeal and Statement of Issues, dated August 6, 2007, the Cross-Appellants indicated their intention to raise two issues in this appeal:  (a) Generalized Overlap Objection, and (b) the Contract Overlap Objection.  *See* Ex. CD-7.  In the Delta Brief, the Cross-Appellants appear to have abandoned their pursuit of the Contract Overlap Objection with respect to the SLV Claims.  Notwithstanding this apparent abandonment of this issue, and in the event that Cross-Appellants later bring this argument before this Court in subsequently-filed papers or on oral argument, the Loan Participant respectfully (a) reserves its rights to supplement this brief to address such matters, and (b) requests that this Court to reference its briefing on this

---

[7]    Indeed, if the Debtor is allowed to create new law (which is in direct contravention to existing law) in which the filing of a bankruptcy case could allow it to walk away from claims (in whole or in part) owed to different parties under separate, valid contracts relating to the similar subject matters, this would amount to a constitutionally impermissible taking of property rights.  The SLV claim was collaterally assigned to the Lender Parties.  Such rights are property rights protected by our Constitution's prohibition against takings without just compensation.  *See* U.S. Const. amend. V;  *United States v. Security Indus. Bank*, 459 U.S. 70, 75 (1982).

matter before the Bankruptcy Court as set forth in Exhibit D-16 [Docket No. 5364] and hereby

incorporates such arguments into this brief as if fully set forth herein.

## **CONCLUSION**

For the foregoing reasons, Cross-Appellee Bank of America, N.A. respectfully

requests that the Decision and July 18th Order of the Bankruptcy Court be affirmed, and that the

Cross-Appellants' cross-appeal on their theory of Generalized Overlap Objection be denied in its

entirety.

Dated: New York, New York.          Respectfully submitted,
      November 30, 2007

                                       **Vedder, Price, Kaufman & Kammholz, P.C.**

                                       By: /s/ Michael J. Edelman
                                          Michael J. Edelman (ME-6476)
                                          1633 Broadway, 47th Floor
                                          New York, New York  10019
                                          Tel:     212-407-7700
                                          Fax:     212-407-7799
                                          E-mail:  MJEdelman@VedderPrice.com

                                          Douglas J. Lipke
                                          Jonathan H. Bogaard
                                          222 North LaSalle Street, Suite 2600
                                          Chicago, Illinois 60601
                                          Phone:  (312) 609-7500
                                          E-mail:  DLipke@VedderPrice.com
                                                          JBogaard@VedderPrice.com

                                          *Counsel for Cross-Appellee*
                                          *Bank of America, N.A.*

NEWYORK/#187636.5