**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ x
In re:                                              :    Chapter 11
                                                    :
DELTA AIR LINES, INC., et al.,                      :    Case No. 05-17923 (ASH)
                                                    :
        Reorganized Debtors.           :    (Jointly Administered)
------------------------------------------------------------ x
THE NORTHWESTERN MUTUAL                             :
LIFE INSURANCE COMPANY,                             :
                                                    :
        Appellant,                     :    Civil Case No. 07-CV-7745 (RMB)
                                                    :
  -against-                                        :    (ECF Case)
                                                    :
DELTA AIR LINES, INC. and THE                       :
POST-EFFECTIVE DATE COMMITTEE                       :
OF DELTA AIR LINES, INC.,                           :
                                                    :
        Appellees.                     :
------------------------------------------------------------ x

**REPLY BRIEF OF APPELLEES DELTA AIR LINES, INC. AND THE**
**POST-EFFECTIVE DATE COMMITTEE ON THEIR CROSS-APPEAL**

| | |
|---|---|
| STROOCK & STROOCK & LAVAN LLP | AKIN GUMP STRAUSS HAUER & FELD LLP |
| Lawrence M. Handelsman (LH-6957) | Daniel H. Golden (DG-5624) |
| Kristopher M. Hansen (KH-4679) | David H. Botter (DB-2300) |
| Jayme T. Goldstein (JG-9054) | Mitchell P. Hurley (MH-0740) |
| 180 Maiden Lane | 590 Madison Avenue |
| New York, New York 10038 | New York, New York 10022 |
| Telephone: (212) 806-5400 | Telephone: (212) 872-1000 |
| Facsimile: (212) 806-6006 | Facsimile: (212) 872-1002 |
| *Counsel for Delta Air Lines, Inc.* | *Counsel for the Post-Effective Date Committee* |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... i

ARGUMENT ......................................................................................................................... 1

    I.   UNDER APPLICABLE STATE LAW, A CONTRACT PERMITTING
        DUPLICATIVE CLAIMS WOULD BE UNENFORCEABLE ........................................... 3

    II.  BANKRUPTCY LAW DOES NOT PERMIT THE ALLOWANCE OF
        MULTIPLE CLAIMS EXCEEDING THE PARTIES' OUT-OF-BANKRUPTCY
        "RIGHTS TO PAYMENT" ................................................................................................ 5

    III. PARTIES MAY NOT MULTIPLY THEIR CLAIMS BY CONTRACTING FOR
        A TRUSTEE TO HOLD A DUPLICATIVE CLAIM ........................................................ 8

CONCLUSION ..................................................................................................................... 10

## TABLE OF AUTHORITIES

### CASES

Alfaro Motors, Inc. v. Ward,
    814 F.2d 883 (2d Cir. 1987)..................................................................................................3

In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Meyerson & Casey,
    160 B.R. 882 (Bankr. S.D.N.Y. 1993)...........................................................................3, 6, 7, 8

In re Ionosphere Clubs, Inc.,
    262 B.R. 604 (Bankr. S.D.N.Y. 2001)..............................................................................1, 3

Jarro Building Industries Corp. v. Schwartz,
    54 Misc.2d 13 (2d Dep't 1967)...........................................................................................4

JMD Holding Corp. v. Congress Financial Corp.,
    4 N.Y.3d 373 (2005) ...........................................................................................................3

In re O.P.M. Leasing Services, Inc.,
    23 B.R. 104 (Bankr. S.D.N.Y. 1982)..................................................................................4

CIT Group/Commercial Services, Inc. v. Holladay-Tyler Printing Corp,
    No. 94 Civ. 6642 (HB), 94 Civ. 6645 (HB), 1995 WL 702343 (S.D.N.Y. Nov. 27,
    1995) ....................................................................................................................................4

Walter E. Heller & Co. v. American Flyers Airline Corp.,
    459 F.2d 896 (2d Cir. 1972).......................................................................................1, 3, 4

### STATUTES

11 U.S.C. § 101(5)(A)......................................................................................................................2

11 U.S.C. § 502............................................................................................................................2, 7

Delta Air Lines, Inc. ("Delta") and the Post-Effective Date Committee (the "Committee") submit this reply brief (1) in further support of their Cross-Appeal from the Bankruptcy Court's July 18 Order, and (2) in reply to the briefs filed by Appellant Northwestern Mutual Life Insurance Company ("Northwestern"), Appellee The Bank of New York ("BNY") and Appellee Bank of America, N.A. ("BofA") (respectively cited as "NW Br.," "BNY Br." and "BofA Br.").[1]

## ARGUMENT

The Bankruptcy Court correctly held in this case that the explicit language of the Operative Documents does not permit the allowance of overlapping TIA and SLV Claims. Even if this Court were to interpret the parties' contracts otherwise, however, the Bankruptcy Court's disallowance of Northwestern's TIA Claims would still have to be affirmed on the ground that allowing duplicative claims would be contrary to underlying state law and the Bankruptcy Code.

Northwestern, BNY and BofA acknowledge that TIA Claims and SLV Claims are duplicative of each other. They contend, however, that parties to a contract can agree to any damage provisions they choose, even if it results in the allowance of multiple claims for the same loss. This proposition is simply incorrect, as a matter of state law and federal bankruptcy law.

Under New York law (which governs the Operative Documents), damage formulas are only permitted to the extent that they reasonably approximate a party's actual loss. See, e.g., Walter E. Heller & Co. v. Am. Flyers Airline Corp., 459 F.2d 896, 899 (2d Cir. 1972); In re Ionosphere Clubs, Inc., 262 B.R. 604, 614 (Bankr. S.D.N.Y. 2001). Damage provisions calling for payments that are multiples of a party's expected losses are unenforceable penalties. Id.

---

[1] As required by Bankruptcy Rule 8009(a)(3), Delta and the Committee have limited this reply brief to the Cross-Appeal issues. Capitalized terms used but not defined herein have the same meaning as set forth in Appellees' Amended Response Brief ("Appellee Br.").

New York law, which governs the parties' contracts, also does not permit parties to agree to liquidated damage formulas (e.g., the formulas used to calculate SLV Claims) and at the same time purport to retain the right to seek damages through alternative contract provisions (e.g., those located in the TIAs). Once a party agrees to a liquidated damage formula, the party must abide by that formula. That is why the Operative Documents explicitly make clear that no TIA Claims exist under circumstances in which SLV Claims are payable.

Under state law, then, the total contractual "right to payment" with respect to Northwestern's tax loss cannot exceed the compensation for the tax loss that is already embedded in the SLV calculations. Similarly, in bankruptcy, one loss can give rise to only one right to payment. An allowed bankruptcy claim must equal the out-of-bankruptcy "right to payment" of a creditor. See 11 U.S.C. §§ 101(5)(A); 502. If the out-of-bankruptcy right to payment equals $100, then the allowed bankruptcy "claim" cannot exceed $100. As such, the bankruptcy claims based on Northwestern's tax losses cannot exceed out-of-bankruptcy payments that would be due with respect to the SLV Claims.

Northwestern, BNY and BofA nevertheless contend that parties may write contracts that have the effect, in bankruptcy, of requiring the allowance of multiple claims for a loss that exceeds the amounts that would be payable under state law. Contrary to their contentions, the question of whether parties may manipulate the bankruptcy claims process in this fashion raises questions of federal bankruptcy law rather than state law. The Bankruptcy Code protects not only the interests of parties to a contract but also the interests of a debtor's other creditors, who are entitled to fair and equitable treatment of their claims. Allowing parties to contract around the *pro rata* distribution scheme to the detriment of non-consenting creditors would clearly be

"inconsistent with the letter and spirit of Title 11." In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Meyerson & Casey, 160 B.R. 882, 894 (Bankr. S.D.N.Y. 1993).

## I.    UNDER APPLICABLE STATE LAW, A CONTRACT PERMITTING DUPLICATIVE CLAIMS WOULD BE UNENFORCEABLE

Northwestern has erroneously argued that its TIA Claims must be allowed because the claims would allegedly be allowed under state law. However, under New York law and the Operative Documents, if BNY's SLV Claims were collected in full, Northwestern's TIA Claims would not even arise. Northwestern has conceded that the SLV Claims already include compensation for Northwestern's tax losses, and that the SLV Claims and TIA Claims represent "two alternative scenarios" by which Northwestern "must be paid for any tax loss it suffers." Northwestern's Response to TIA/SLV Objection 2 ("the Northwestern Response") [D 12], ¶ 31.

It is plainly impermissible, under New York law, to enforce damage provisions that call for multiple compensation for a single loss. See JMD Holding Corp. v. Cong. Fin. Corp., 4 N.Y.3d 373, 380 (2005). Liquidated damages provisions are unenforceable unless they are reasonable approximations of actual losses. See, e.g., Walter E. Heller & Co., 459 F.2d at 899; In re Ionosphere Clubs, Inc., 262 B.R. at 614. Contract provisions that purportedly require multiple payments for one loss are, by definition, unenforceable penalties. Id.; see also Appellee Br. at 23.[2]

---

[2]  BNY's contention that Delta and the Committee have "waived" their right to raise this argument borders on frivolous. See BNY Br. at 6. The penalty issue was injected into the case by the Bankruptcy Court's Decision, which recognized that duplicative claims are not allowed but which held that a separate rule should be applied when the duplicative claims arise under contracts. See Decision at 7-8. In addition, Delta and the Committee did raise the penalty issue in the Bankruptcy Court. See Transcript of March 30, 2007 Hearing [D 35] at 112-115. In any event, as BNY itself points out, this Court is "free to affirm" the result reached by the Bankruptcy Court on any grounds supported by the record. Id. at 2 (quoting Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 887 (2d Cir. 1987)).

In addition, once parties have agreed to a liquidated damage formula, New York law requires those parties to abide by the liquidated damage estimate. New York law does not permit a party to agree to a liquidated damage formula (e.g., the SLV calculations) and at the same time purport to retain rights to collect the same damages through other means (such as TIA Claims). See Jarro Bdg. Indus. Corp. v. Schwartz, 54 Misc.2d 13, 19 (2d Dep't 1967) (contract that provided plaintiff with "option to disregard the liquidated damages specified if the actual damages exceed the amount stipulated" rendered liquidated damages clause penal and therefore unenforceable); CIT Group/Commercial Servs., Inc. v. Holladay-Tyler Printing Corp., No. 94 Civ. 6642 (HB), 94 Civ. 6645 (HB), 1995 WL 702343, *3 (S.D.N.Y. Nov. 27, 1995) ("liquidated damages clauses are unenforceable where they permit the aggrieved party to choose between pursuing actual or liquidated damages. This is because such liquidated damages clauses would simply serve as a mechanism for providing a guaranteed minimum recovery while allowing for the pursuit of actual damages . . . ."); In re O.P.M. Leasing Servs., Inc., 23 B.R. 104, 112 (Bankr. S.D.N.Y. 1982) (cumulation of remedies involving actual and liquidated damages provisions render the liquidated damages provisions unenforceable); Walter E. Heller & Co., Inc., 459 F.2d at 900 (contracts providing for liquidated damages but also allowing suit for actual damages, therefore guaranteeing a minimum recovery, are invalid under New York law).

The foregoing rule is a matter of state contract law that parties are not free to alter. In the case at bar, the Operative Documents give precedence to the SLV damage formulas by providing that Northwestern may not pursue its TIA Claims if its tax losses arise from events that also give rise to the obligation to pay SLV. See TIA § 6, at 17. That agreement was necessary in order to make the SLV Claims enforceable in the first place. To the extent that the SLV Claims include

compensation for Northwestern's tax losses (as the parties admit they do), Northwestern must pursue recovery for those losses solely through the SLV Claims.

Northwestern is incorrect, then, in contending that New York law permits the separate enforcement of TIA Claims notwithstanding the existence and enforceability of SLV Claims covering the same losses. If the SLV Claims were not paid in full in the event of an out-of-bankruptcy default, Northwestern's option would be to enforce the remainder of the SLV Claim – not pursue a separate TIA Claim. Here, Northwestern assigned the SLV Claims to BNY, and as a result, BNY (not Northwestern) has the right to enforce the liquidated damage claim and receive any and all recoveries attributable to Northwestern's tax losses.

## II. BANKRUPTCY LAW DOES NOT PERMIT THE ALLOWANCE OF MULTIPLE CLAIMS EXCEEDING THE PARTIES' OUT-OF-BANKRUPTCY "RIGHTS TO PAYMENT"

As set forth above, Northwestern is incorrect in asserting that state law would permit the simultaneous enforcement of both TIA Claims and SLV Claims. Even if Northwestern were correct, however, and even if Northwestern could pursue recoveries through either of the two contracts, the state law "right to payment" with respect to Northwestern's tax losses could never exceed the actual amount of those losses. As a result, the "allowed claims" in Delta's bankruptcy case similarly cannot exceed the amount of those losses.

BNY, for example, is an Indenture Trustee who claims the right (by contract) to obtain recovery for attorneys' fees incurred in connection with the prosecution of its SLV Claims. BNY's SLV Claims are covered by three separate sets of contracts and therefore three separate attorneys' fees provisions. Plainly, however, BNY has only one "right to payment" for attorneys' fees and only one such claim could be allowed in Delta's bankruptcy case – no matter how many contracts allegedly permit BNY to assert such a claim.

5

The same is true with respect to Northwestern's tax losses. There is only one out-of-bankruptcy "right to payment" with respect to those tax losses, and accordingly only one bankruptcy claim can be allowed with respect to those losses – no matter how many contracts purport to cover the losses, and no matter how many separate contracts purport to underlie the single "right to payment" that exists.

It is only because of the bankruptcy treatment of the SLV Claims – namely, that bankruptcy law permits the full discharge of those claims even though the values of the distributions to be made will not equal the allowed amounts of those claims – that Northwestern argues that it is entitled to the TIA Claims. As Finley and the other cases cited by Delta recognized, the Bankruptcy Code does not permit allowance of duplicative claims for the same loss, regardless of how many contracts allegedly cover that loss. See Appellee Br. at 21-22.[3]

In each of the cases cited by Delta and the Committee, the court recognized that a party may not assert a claim against a debtor that normally would be compensated for by the payment of a claim asserted by a different party, where the reason that the payment to the other party is insufficient is that the debtor cannot pay its creditors 100 cents on the dollar. Here, too, Northwestern's assertion that it has suffered a loss compensable under the TIAs – despite the fact that BNY's allowed SLV Claims include compensation for Northwestern's loss – is effectively a claim that Northwestern was injured by reason of the *pro rata* distribution of available assets in Delta's bankruptcy. See id. at 24-25. Put another way: Northwestern acknowledges that the SLV Claims include compensation for tax losses; the only reasons why Northwestern will not

---

[3] Seeking to distinguish Finley and other cases, Northwestern, BNY and BofA reiterate the Bankruptcy Court's statement that those cases did not involve claims under two separate contracts. As Delta and the Committee have already explained, however, the principles articulated in Finley and the other cited cases fully apply to this situation, no matter how many contracts are at issue. See Appellee Br. at 22-23.

6

receive that portion of SLV are that (a) Northwestern pledged the SLV Claims to BNY, and (b) bankruptcy law permits the discharge of the SLV Claims, even if the property distributed to the SLV claimant is not equal in value to the full allowed amount of the SLV Claims.

Northwestern is therefore asserting TIA Claims which arise due to the fact that payment *pro rata* of SLV Claims under the Bankruptcy Code has prevented Northwestern from getting full compensation for its losses. It is self-evident that a party would not be allowed to evade the operation of the Bankruptcy Code by stating, in a single contract, that the party is entitled to assert its contract claim twice in the event that a bankruptcy occurs. A party similarly cannot produce multiple bankruptcy claims simply by signing multiple contracts that apply to a single loss and a single right to payment.

Allowing multiple claims would itself be inconsistent with the policy of *pro rata* distribution among creditors. See id. at 23-25. Just as a creditor and a guarantor cannot both recover from a debtor on the same debt, see 11 U.S.C. § 502(e), Northwestern cannot recover on TIA Claims already encompassed in BNY's SLV claims.

The contrary arguments made by Northwestern, BNY and BofA fail even to distinguish Finley on its own terms. In particular, they overlook the fact that one of the claims in Finley was a contractual claim. If, as Northwestern, BNY and BofA argue, parties were free to contract for a claim that duplicates another contract claim, then for that same reason parties should also be free to contract for a claim that duplicates a statutory or tort claim. But that result would be inconsistent with Finley and the other cases cited by Delta and the Committee, which held that only one claim – whether contractual, statutory or tort – may be allowed for one loss.

Northwestern argues that BNY should be entitled to assert the full SLV Claims – which include compensation for Northwestern's tax losses – and that Northwestern should also be

7

permitted to file TIA Claims seeking compensation for that same loss. However, that result would permit two claimants to recover for a single loss and it would mean that the allowed claims in Delta's bankruptcy case would <u>not</u> equal (and would be multiples of) the "right to payment" existing outside of bankruptcy.

Northwestern further attempts to distinguish <u>Finley</u> and similar cases on the basis that the parties there "conceded" the duplicative nature of the claims. <u>See</u> NW Br. at 9. Again, that argument fails to distinguish those cases because Northwestern also conceded that its TIA Claims and a portion of the SLV Claims seek compensation for the same loss.[4] <u>See</u> Northwestern Response at ¶ 31.

### III. PARTIES MAY NOT MULTIPLY THEIR CLAIMS BY CONTRACTING FOR A TRUSTEE TO HOLD A DUPLICATIVE CLAIM

Northwestern, BNY and BofA also assert that Northwestern's TIA Claims cannot be regarded as duplicative of part of BNY's SLV Claims because they were originally owed to legally distinct entities: the TIAs were agreements with Northwestern as Owner Participant, while the Leases were agreements with the Owner Trustee. For tax purposes, however, Northwestern and the Owner Trustee are considered to be the same entity. <u>See</u> Appellee Br. at 5, 23-24. In fact, for tax purposes, the Owner Trustee has no separate existence. <u>Id.</u> Northwestern is a party to the TIAs, and the Owner Trustee is the party to the Leases (which give rise to the

---

[4] BNY's suggestion that Delta and the Committee have not proved what portion of SLV is the "tax component" included in TIA, BNY Br. at 7, is merely an attempt to create an irrelevant distraction. Northwestern has agreed that the SLV Claim computation includes the full amount of Northwestern's tax losses, and such concession is sufficient to affirm the disallowance of Northwestern's TIA Claim. <u>See</u> Northwestern Response at ¶ 13. The issue BNY seeks to raise would be irrelevant unless this Court determined that the TIA Claims should be allowed and the SLV Claims should be reduced. If that were to occur, the Bankruptcy Court could resolve any alleged factual issues as to the amount of the overlap on remand, as BNY recognizes. <u>See</u> BNY Br. at 10.

SLV Claims), but the tax losses are incurred by only one entity (Northwestern) and the rights to recover for those tax losses belong to a single entity. BNY's argument – that Northwestern should be viewed as separate from the Owner Trustee – would just mean that the SLV calculations should not have included compensation for tax losses in the first place, because the Owner Trustee has no existence for tax purposes. Yet neither BNY nor any other party urges that outcome.

Moreover, the fact that one claim is held by a trust – which exists exclusively for the benefit of Northwestern – does not permit a single claim to be converted into multiple claims. If Northwestern, BNY and BofA were correct, then any creditor could contract to increase its own recovery in bankruptcy by creating a trust. Suppose, for example, that a party were to agree to pay the same amount to a creditor and the creditor's trustee, with the proviso that the amount owed to the creditor would be reduced by the amount of any payments to the trustee. Outside of bankruptcy, this would not cost the debtor anything and would not alter the amount of the creditor's recovery (apart from payment of the trustee's fees), assuming that the trustee had agreed to forward payments to the creditor. But on the theory that Northwestern, BNY and BofA erroneously advance here, the creditor and its trustee should be treated as "different entities," NW Br. at 9, and thus both parties would be entitled to allowance of the same claim in bankruptcy. The effective (and inequitable) result would be that the creditor had artificially boosted its recovery in bankruptcy over that of other similarly situated creditors, without in any way increasing the amount of its available recovery outside of bankruptcy.

Finally, contrary to the arguments of BNY and BofA, it makes no difference that the leveraged lease transactions contemplated that the Owner Trustee would assign the Leases to BNY as security for a loan. Northwestern benefited from that assignment, as Northwestern was

9

the beneficiary of a loan that reduced the amount Northwestern needed to expend for the acquisition of the underlying aircraft. An assignee stands in the shoes of the original claimant, and Northwestern had no right to assign its claim to recover tax losses to a third party and at the same time purport to keep that same claim for itself. By the same token, that assignment could not create two claims where only one "right to payment" existed.

## CONCLUSION

For the reasons set forth above and in their Amended Response Brief, Delta and the Committee submit that the Bankruptcy Court's July 18 Order should be affirmed, either on its stated ground or the alternative ground set forth in the Cross-Appeal.

Dated:  New York, New York
        December 7, 2007

STROOCK & STROOCK & LAVAN LLP

/s/ Kristopher M. Hansen
Lawrence M. Handelsman (LH-6957)
Kristopher M. Hansen (KH-6957)
Jayme T. Goldstein (JG -9054)
180 Maiden Lane
New York, New York 10038
Telephone: (212) 806-5400

Counsel for Delta Air Lines, Inc.

AKIN GUMP STRAUSS HAUER & FELD LLP
Daniel H. Golden (DG-5624)
David H. Botter (DB-2300)
Mitchell P. Hurley (MH-0740)
590 Madison Avenue
New York, New York 10022
Telephone: (212) 872-1000

Counsel for the Post-Effective Date Committee